UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, </br></br> Plaintiff, </br></br> vs. </br></br> THE BOEING COMPANY, et al., </br></br> Defendants. | No. 1:09-cv-07143 </br></br> <u>CLASS ACTION</u> </br></br> Judge Suzanne B. Conlan |

MEMORANDUM OF LAW IN SUPPORT OF THE CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD AND LIAISON COUNSEL

220863_1

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................1

III. ARGUMENT .........................................................................................................................5

    A. The Retirement System Should Be Appointed Lead Plaintiff ................................5

        1. This Motion Is Timely ..................................................................................6

        2. The Retirement System Has the Largest Financial Interest in the Relief Sought by the Class ............................................................................6

        3. The Retirement System Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure ...............................................................................6

    B. The Court Should Approve the Retirement System's Selection of Counsel ...........8

IV. CONCLUSION ....................................................................................................................11

## TABLE OF AUTHORITIES

Page

**CASES**

*Danis v. USN Commc'ns, Inc.*,
    No. 98-C-7482 (N.D. Ill. 1998) ..................................................................................9

*De La Fuente v. Stokely-Van Camp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) .....................................................................................7

*In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*,
    No. 05-7097 (N.D. Ill. 2005) ...................................................................................10

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ......................................................................9

*In re Cardinal Health, Inc. Sec. Litig.*,
    Case No. C2-04-00575 (S.D. Ohio) ..........................................................................9

*In re Enron Corp. Sec.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) .......................................................................8

*In re Enron Corp. Sec.*,
    Case No. H-01-3624 (S.D. Tex.) ...............................................................................9

*In re Motorola Sec. Litig.*,
    2003 U.S. Dist. LEXIS 12651 (N.D. Ill. 2003) .....................................................6, 7

*In re Relafen Antitrust Litig.*,
    231 F.R.D. 52 (D. Mass. 2005) ...............................................................................10

*In re Sears, Roebuck & Co. Sec. Litig.*,
    No. 02-7527 (N.D. Ill. 2002) ...................................................................................10

*In re Telesphere Int'l Sec. Litig.*,
    753 F. Supp. 716 (N.D. Ill. 1990) ..............................................................................9

*In re UnitedHealth Group Inc. Sec. Litig.*,
    Case No. 0:06-cv-01691 (D. Minn.) ..........................................................................9

*In re VMS Litig.*,
    Case No. 89-C-9448 (N.D. Ill. 1989) ........................................................................9

*Jaffe v. Household Int'l, Inc.*,
    No. 02-5893 (N.D. Ill. 2002) ...................................................................................10

Page

*Jones v. Corus Bankshares*,
    No. 09-1538 (N.D. Ill. 2009) ...................................................................................10

*Makor Issues & Rights & Ltd. v. Tellabs, Inc.*,
    No. 02-4356 (N.D. Ill. 2002) ...................................................................................10

*Plumbers and Steamfitters Local No. 7 Pension Fund v. Walgreen Co.*,
    No. 08-2162 (N.D. Ill. 2008) ...................................................................................10

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ..................................................................................7

*Roth v. OfficeMax Inc.*,
    No. 05-236 (N.D. Ill. 2005) .....................................................................................10

*Silverman v. Motorola, Inc.*,
    No. 07-4507 (N.D. Ill. 2007) ...................................................................................10

*Takara Trust v. Molex Inc.*,
    No. 05-1245 (N.D. Ill. 2005) ...................................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .................................................................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b)..........................................................................................................................1
    §78t(a)..........................................................................................................................1
    §78u-4 ................................................................................................................. *passim*
    §78u-4(a)(1) ................................................................................................................5
    §78u-4(a)(3)(A) ..........................................................................................................6
    §78u-4(a)(3)(A)(i) ......................................................................................................5
    §78u-4(a)(3)(B)(i) ...................................................................................................1, 5
    §78u-4(a)(3)(B)(iii) .................................................................................................1, 6
    §78u-4(a)(3)(B)(iii)(I)(cc) ..........................................................................................6
    §78u-4(a)(3)(B)(iii)(II)(aa) .........................................................................................8
    §78u-4(a)(3)(B)(v) ..................................................................................................1, 8

Federal Rules of Civil Procedure
    Rule 23 ..............................................................................................................5, 6, 7, 8
    Rule 23(a)....................................................................................................................7
    Rule 23(a)(3)...............................................................................................................7
    Rule 23(a)(4)...............................................................................................................7

**Page**

17 C.F.R.
 §240.10b-5 ................................................................................................................................1

220863_1

The City of Livonia Employees' Retirement System (the "Retirement System"), respectfully submits this memorandum of law in support of its motion for: (1) appointment as lead plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (2) approval of its selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as lead counsel and Miller Law LLC as liaison counsel for the class.

## I.  INTRODUCTION

Presently pending in this district is a securities class action lawsuit (the "Action") on behalf of all persons who acquired The Boeing Company ("Boeing" or the "Company") common stock between May 4, 2009 and June 22, 2009 (the "Class Period"). The Action alleges that defendants violated §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5 during the Class Period.

The PSLRA requires district courts to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i). The Retirement System should be appointed as lead plaintiff because it: (1) filed the complaint and has timely filed its motion; (2) to its counsel's knowledge, has the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). In addition, the Retirement System's selection of Coughlin Stoia as lead counsel and Miller Law as liaison counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.  FACTUAL BACKGROUND

Boeing is involved in the design, development, manufacture, sale and support of commercial jetliners, military aircraft, satellites, missile defense, human space flight, and launch systems and

- 1 -


services. The Company's business is organized in five principal segments, one of which is the Commercial Airplanes segment. The Commercial Airplanes segment is involved in developing, producing and marketing commercial jet aircraft to the commercial airline industry worldwide. Boeing's newest commercial airplane in development is the 787 Dreamliner ("787"). Boeing's principal competitor is Airbus SAS which is also developing a new airplane, in competition to the 787, called the A380.

The 787 is Boeing's principal next generation commercial airplane and has been eagerly awaited by the commercial airline market and the financial market since it was first announced in 2004. Since its announcement, Boeing has made numerous announcements concerning the number of orders for the 787 it has received from commercial airlines, worldwide, the positive results of the testing process for the 787 and also the timetable for the maiden flight of the 787 and commercial delivery of the 787.

As the date for the maiden flight of the 787 approached, defendants made a series of misleading statements to the market concerning the results of the testing process for the 787 and Boeing's ability to meet the schedule for the first flight and the delivery of the 787. Defendants made these false and misleading statements in an effort to: (a) forestall further cancellations of orders for the 787, particularly as the orders for its competition, the A380, were gaining ground; (b) conceal from the market the material fact, known to defendants, that the 787 had a structural problem in its design that would prevent the first flight of the 787 by June 30, 2009, and delivery in the first quarter of 2010; and (c) enable Boeing to make a positive presentation concerning the test results for the 787 and the schedule for the first flight and delivery of the 787 at the Paris Air Show, scheduled for June 15-18, 2009, at which Boeing hoped to receive additional orders for the 787 and beat out the showing made by Airbus for its A380.

Throughout the Class Period, defendants made additional statements in various press releases that were misleading because defendants knew and failed to disclose the structural defect in the design of the 787, that is, that the wing was not properly attached to the body of the airplane. The press releases are also misleading because defendants knew that, despite the purported successful completion of the intermediate gauntlet phase of testing touted by defendants, the structural defect would cause an undeterminable delay in the schedule for the first flight of the 787 beyond June 2009 and delivery of the 787 beyond the first quarter of 2010.

Suddenly, without any warning, Boeing announced on June 23, 2009, that the "first flight of the 787 Dreamliner will be postponed due to a need to reinforce an area within the side-of-body section of the aircraft. . . . First flight and first delivery will be rescheduled following the final determination of the required modification and testing plan. It will be several weeks before the new schedule is available." Defendant Scott E. Carson ("Carson") stated that "'[s]tructural modifications like these are not uncommon in the development of new airplanes, and this is not an issue related to our choice of materials or the assembly and installation work of our team.'"

Boeing also held a conference call with analysts on June 23, 2009, to explain this dramatic disclosure. On the call, analysts peppered Carson, Vice President and General Manager of the 787 program, Scott Fancher ("Fancher"), and Boeing's 787 program Vice President, Pat Shanahan ("Shanahan") with questions, including, *inter alia*, the nature of the structural defect, the timing of the disclosure and the impact on the first flight and delivery schedules for the 787. Carson stated:

> As our release stated this morning, based on our analysis of results from tests on the static test airplane, we have determined that we need to make a modification to reinforce a limited area of structure at the side-of-the-body section of the airplane before we begin our flight test program. Following detailed analysis which was completed late last week, we decided to postpone first flight until the modification is made and our team is satisfied that we are ready for fully productive flight testing.

Shanahan elaborated, stating as follows:

> Late last month during planned 787 static testing, our team was conducting a series of tests that involved bending the wings of our full-scale test airplane. These tests are part of the normal test process on the path to achieve certification. During the test, the team identified stress in an area of the side-of-the-body structure that was in excess of expectations. Our preliminary analysis of these results indicated that we could proceed with first flight.
>
> After further testing and analysis which we finished late last week, our team concluded that a productive test flight program could not take place without structural reinforcement in limited areas with the side-of-the-body joint. We decided at that point that we should postpone first flight and make needed modifications before beginning the flight test program.
>
> I want to be very clear here, this is a structural reinforcement issue . . . .

Upon questioning by analysts, Fancher admitted that the problem concerned the critical point at which the wing is attached to the rest of the body of the airplane.

Carson admitted that they knew of the structural defect back in May 2009 but had decided not to say anything when they learned of it or even at the Paris Air Show during their public and private presentations. In response to a direct question about when defendants knew of the structural defect, Carson wiggled around the answer, as follows:

> [W]e discovered in a test condition several weeks ago an anomaly that we saw. We believed that we had a solution that would allow us to move to the flight test program. We retested and followed that retest with additional analysis late last week. As we looked at that analysis we concluded that to fly the airplane would have such a limited envelope on it that it wasn't productive for us to do that. And we chose to delay the flight and incorporate the change so we have a vigorous flight test envelope to work with.

In the aftermath of the belated disclosure and the answers received on the conference call, security analysts commented on defendants' lack of timely candor concerning their knowledge of the structural problem with the 787. JPMorgan Chase aerospace analyst Joseph Nadol stated in his research report that multiple members of Boeing management had assured him in private conversations only the week before that the 787 would meet its first flight deadline and that "[t]he structural issue that has caused the latest delay cropped up several weeks ago, but there was not a

hint of concern about it as management continually highlighted the impending first flight, including last week at the Paris Air Show both in public and in private.  Management acknowledged on the conference call that it discovered this issue last month but noted it only determined last Friday [June 23] that it would cause a delay to first flight.  We believe that had management been more up-front about this situation, perhaps the modest level of credibility on this topic it had started to reestablish over the past several months could have been sustained."

In immediate response to Boeing's belated June 23, 2009, disclosure of the structural defect in the 787 and its effect on the first flight and delivery schedules, the market price of Boeing's common stock dropped 6.5% to close at $43.87 per share, on huge volume of 27.3 million shares traded.  The next day, Boeing's common stock price dropped another 6% to close at $41.32 per share, on huge volume of 21.3 million shares.

### III.     ARGUMENT

#### A.     The Retirement System Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).  First, the pendency of the action must be publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the first complaint.  15 U.S.C. §78u-4(a)(3)(A)(i).  Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that –

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii). The Retirement System meets each of these requirements and should therefore be appointed as lead plaintiff.

### 1. This Motion Is Timely

The notice published in this action advised class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the proposed class period; and (4) the right to move the Court to be appointed as lead plaintiff within 60 days from November 13, 2009, or January 12, 2010. *See* Motion, Ex. B. The Retirement System's motion is therefore timely. 15 U.S.C. §78u-4(a)(3)(A).

In addition, the Retirement System has submitted a sworn certification confirming its willingness and ability to serve as lead plaintiff. *See* Motion, Ex. C. Thus, the Retirement System has complied with the PSLRA's procedural requirements and is entitled to be considered for appointment as lead plaintiff.

### 2. The Retirement System Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Retirement System lost approximately $37,000 due to defendants' misconduct. *See* Motion, Exs. C, D. To the best of its counsel's knowledge, there are no other applicants who have sought appointment as lead plaintiff who have a larger financial interest. Therefore, the Retirement System satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Retirement System Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). "In selecting the lead plaintiff under the PSLRA, however, typicality and adequacy of representation are the only relevant considerations." *In re Motorola Sec. Litig.*, 2003 U.S. Dist. LEXIS 12651, at *10 (N.D. Ill. 2003) (Pallmeyer, J.)

(explaining that a "wide-ranging analysis of the Rule 23 factors should be left for consideration of a motion for class certification").

Rule 23 of the Federal Rules of Civil Procedure requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4). Under Rule 23(a), claims are typical if they "'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (citation omitted). Typicality exists even if there are some factual distinctions between the claims of the named plaintiff and those of other class members. *See De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). "To meet the adequacy requirement, the plaintiff must demonstrate that (1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." *Motorola*, 2003 U.S. Dist. LEXIS 12651, at *11.

Here, the Retirement System satisfies the typicality requirement for purposes of selecting lead plaintiff because, like other class members, it (1) purchased Boeing common stock during the Class Period; (2) paid allegedly inflated prices because of claimed false and misleading statements by defendants; and (3) thereby suffered damages. Thus, the Retirement System's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

The Retirement System has prior experience serving as a plaintiff in shareholder litigation and is familiar with the obligations and fiduciary responsibilities owed to a class. *See* Motion, Ex. C. As an institutional investor with prior experience serving as a fiduciary in shareholder litigation, the

Retirement System's experience, sophistication and resources will enable the Retirement System to adequately represent the class's interests. The Retirement System's substantial loss further demonstrates that it has a sufficient interest in the outcome of the case to ensure zealous advocacy on behalf of the class. *See* Motion, Exs. C-D. Additionally, as explained below, the Retirement System's proposed lead and liaison counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. All of these factors sufficiently evidence the Retirement System's capacity and willingness to serve as lead plaintiff.

Thus, the Retirement System satisfies the requirements of Fed. R. Civ. P. 23 for the purposes of this Motion.

### B. The Court Should Approve the Retirement System's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). The Retirement System has selected Coughlin Stoia to serve as lead counsel and Miller Law LLC as liaison counsel.

Coughlin Stoia, a 185-lawyer firm with offices nationwide, is actively engaged in complex litigation, particularly securities litigation. *See* Motion, Ex. G. Coughlin Stoia's reputation for excellence has been repeatedly noted by district courts throughout the country and has resulted in the appointment of Coughlin Stoia attorneys to lead roles in hundreds of complex class action securities cases.[1] In addition, Coughlin Stoia attorneys are responsible for attaining the largest securities fraud

---

[1] Judge Melinda Harmon commented that the "experience, ability, and reputation of the attorneys of Coughlin Stoia is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country." *In re Enron Corp. Sec.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008).

class action recovery ever, as well as the largest recoveries in the Fifth, Sixth and Eighth Circuits. *See In re Enron Corp. Sec.*, Case No. H-01-3624 (S.D. Tex.) (Harmon, J.) ($7.3 billion recovery for the class is largest in U.S. history and in the 5th Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, Case No. C2-04-00575 (S.D. Ohio) (Marbley, J.) ($600 million recovery for the class was, at the time, the 10th largest in U.S. history and is still the largest recovery ever in the 6th Circuit); *In re UnitedHealth Group Inc. Sec. Litig.*, Case No. 0:06-cv-01691 (D. Minn.) (Rosenbaum, J.) ($925 million recovery for the class and the 10th largest recovery in U.S. history).

The attorneys at Miller Law, a litigation boutique law firm in Chicago, have many decades of experience in complex civil litigation, including securities class actions, in this District. *See* Motion, Ex. F; *see also In re VMS Litig.*, Case No. 89-C-9448 (N.D. Ill. 1989) (Marvin A. Miller appointed by this Court as liaison counsel); *Danis v. USN Commc'ns, Inc.*, No. 98-C-7482 (N.D. Ill. 1998) (same). The skill and experience of Miller Law's attorneys has been recognized by numerous courts which have appointed the firm to leadership positions in complex securities litigation. Almost two decades ago, Judge Milton I. Shadur of this Court commented on Marvin Miller's skills and said that he is "an experienced securities law class action litigator and who also has 20 years [now 39 years] practice under his belt. This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate." *In re Telesphere Int'l Sec. Litig.*, 753 F. Supp. 716, 719 (N.D. Ill. 1990) (Shadur, J.).

---

Similarly, Judge Algenon Marbley, in approving the $600 million recovery by Coughlin Stoia in *Cardinal Health*, noted that the "quality of representation in this case was superb." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (Lawyers with Coughlin Stoia are "nationally recognized leaders in complex securities class actions. The quality of the representation is demonstrated by the substantial benefit achieved for the Class and the efficient, effective prosecution and resolution of this action.").

Those same qualities continue and have been recognized by other courts in this District and across the country.[2]

In addition to their individual accomplishments, Coughlin Stoia and Miller Law's lawyers have been appointed to serve together as lead and liaison counsel in numerous securities fraud and other complex class actions in this District and by this Court. *See, e.g., Jones v. Corus Bankshares*, No. 09-1538 (N.D. Ill. 2009) (Bucklo, J.); *Plumbers and Steamfitters Local No. 7 Pension Fund v. Walgreen Co.*, No. 08-2162 (N.D. Ill. 2008) (Gottschall, J.); *Silverman v. Motorola, Inc.*, No. 07-4507 (N.D. Ill. 2007) (St. Eve, J.); *Takara Trust v. Molex Inc.*, No. 05-1245 (N.D. Ill. 2005) (Castillo, J.); *In re Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, No. 05-7097 (N.D. Ill. 2005) (Aspen, J.); *Roth v. OfficeMax Inc.*, No. 05-236 (N.D. Ill. 2005) (Gottschall, J.); *Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill. 2002) (Guzman, J.).

*Household*, in particular, is but one example of how effectively the lawyers from Coughlin Stoia and Miller Law have successfully worked together to benefit classes of injured investors. Following Coughlin Stoia's appointment as lead counsel and Miller Law's appointment as liaison counsel, the firms defeated defendants' motions to dismiss and obtained certification of the class. For more than six years, Coughlin Stoia and Miller Law methodically prepared the *Household* case for trial, including taking more than 60 depositions and reviewing countless millions of pages of documentary evidence. In 2009, the firms' joint efforts yielded a plaintiffs' verdict. The *Household*

---

[2] *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85 (D. Mass. 2005) (in granting final approval of $75 million settlement in which Miller served as co-lead counsel, the court noted that "Class counsel here exceeded my expectations in these respects [*i.e.*, experience, competence, and vigor] in every way"); *Jaffe v. Household Int'l, Inc.*, No. 02-5893 (N.D. Ill. 2002) (Miller Law approved as liaison counsel); *Makor Issues & Rights & Ltd. v. Tellabs, Inc.*, No. 02-4356 (N.D. Ill. 2002) (same); *In re Sears, Roebuck & Co. Sec. Litig.*, No. 02-7527 (N.D. Ill. 2002) (same). Most notably, the *Makor Issues* case was argued before the United States Supreme Court and created precedent for the pleading standard in securities cases. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

trial and favorable verdict demonstrates Coughlin Stoia's and Miller Law's willingness to commit the necessary resources to protect the interests of the class.

In sum, the experience, resources and synergies which Coughlin Stoia and Miller Law will bring to this Action if appointed as lead and liaison counsel on behalf of the class will ensure the class' interests are responsibly and vigorously advanced. Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Coughlin Stoia and Miller Law LLC. *See* Motion, Exs. F & G. Accordingly, the Retirement System's selection of counsel should be approved.

## IV.   CONCLUSION

The Retirement System has satisfied each of the PSLRA's requirements for appointment as lead plaintiff. As such, the Retirement System respectfully requests that the Court appoint the Retirement System as Lead Plaintiff, approve its selection of counsel, and grant such other relief as the Court may deem just and proper.

DATED: January 12, 2010                           Respectfully submitted,

                                                  PLAINTIFF


                                                     By:  s/Marvin A. Miller
                                                        MARVIN A. MILLER

                                                  MILLER LAW LLC
                                                  115 S. LaSalle Street, Suite 2910
                                                  Chicago, IL  60603
                                                  Telephone:  312/332-3400
                                                  312/676-2676 (fax)

                                                  [Proposed] Liaison Counsel

DARREN J. ROBBINS
THOMAS E. EGLER
DANIELLE S. MYERS
COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiff

DEBORAH R. GROSS
ROBERT P. FRUTKIN
LAW OFFICES OF BERNARD M.
  GROSS, P.C.
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA 19107
Telephone: 215/561-3600
215/561-3000 (fax)

MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
VANOVERBEKE MICHAUD &
  TIMMONY, P.C.
79 Alfred Street
Detroit, MI 48201
Telephone: 313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff

CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 12, 2010.

                                            s/ MARVIN A. MILLER
                                            MARVIN A. MILLER

                                            MILLER LAW LLC
                                            115 S. LaSalle Street, Suite 2910
                                            Chicago, IL 60603
                                            Telephone: 312/332-3400
                                            312/676-2676 (fax)
                                            E-mail: mmiller@millerlawllc.com

# Mailing Information for a Case 1:09-cv-07143

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **Mark Robert Filip**
  mark.filip@kirkland.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlawllc.com

- **Lydia E Wahlke**
  lydia.wahlke@kirkland.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)