**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | Case No. 1:09-cv-07143 |
| Plaintiff, | ) ) | Judge Suzanne B. Conlon |
| v. | ) ) | |
| THE BOEING COMPANY, W. JAMES McNERNEY, JR. and SCOTT E. CARSON, | ) ) ) ) | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | ) ) ) | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS PLAINTIFF'S COMPLAINT
<u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)</u>**

Mark Filip
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois  60654
Tel.  (312) 862-2000
Fax  (312) 862-2200
mark.filip@kirkland.com

John A. Eisenberg
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Tel.  (202) 879-5000
Fax  (202) 879-5200
john.eisenberg@kirkland.com

*Attorneys for Defendants The Boeing
Company, W. James McNerney, Jr. and
Scott E. Carson*

May 10, 2010

## INTRODUCTION

Despite Plaintiff's efforts to complicate and obfuscate, the foundation of the Amended Complaint is easily stated, and the Amended Complaint is easily rejected under existing case law. Plaintiff alleges that Boeing knew in early May 2009—as opposed to shortly before June 23, 2009, when Boeing spoke to the public—that the side-of-body joint on the 787 had a problem that would risk first flight. The principal basis for that proposition is paragraph 75 of the Amended Complaint. Plaintiff alleges that, "via internal e-mails sent before May 3, 2009," Boeing "knew" of (i) poor test results from April, (ii) a "need" to re-design and re-test, and (iii) a "risk" to first flight. Amended Complaint ("AC") ¶ 75. Plaintiff offers not one particularized fact about who sent the purported emails, when or to whom they were sent, how those persons were in a position to know, or why the purported emails are worth any weight at all. Indeed, Plaintiff offers not one shred of information that would give this Court any reason to believe that Plaintiff has seen any emails of consequence, or indeed, that they even exist. Yet every accusation of fraud in the Amended Complaint depends on that single insufficient allegation. This Court must reject Plaintiff's tactic. After the Supreme Court's decision in *Tellabs*, Plaintiff cannot survive a motion to dismiss by hiding behind unspecified "confidential sources." For that reason alone, the Amended Complaint fails and should be dismissed with prejudice.

The law on "confidential sources" like those hinted at in paragraph 75 is clear in this Circuit and others. A far more detailed confidential source allegation was given virtually no weight in *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756-57 (7th Cir. 2007). To receive weight, the plaintiff must allege, for example, how the sources were "in a position to know," that the sources are "prepared to testify," and if there is other corroboration. *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 712 (7th Cir. 2008) (*Tellabs III*). Other circuits agree. *See Inst. Investors Group v. Avaya, Inc.*, 564 F.3d 242, 261-63 (3d Cir. 2009) (discussing cases from

several circuits).  Plaintiff's allegation here is grossly deficient under this clear law, and the entire Amended Complaint fails on that deficiency alone.  Nor can the deficiency be cured by Plaintiff's desperate offer of an *in camera* and *ex parte* showing.  The Private Securities Litigation Reform Act ("PSLRA") imposes a heightened pleading standard that demands particularity in the complaint itself, not the complaint plus some rump *in camera* proceeding. Without the required particularity in the complaint itself, the complaint "shall" be dismissed.  15 U.S.C. § 78u-4(b)(3)(A) (2010).

Further, and independently, the Amended Complaint fails because it does not allege particularized facts supporting the strong inference of scienter required by the PSLRA and the Supreme Court's decision in *Tellabs*; indeed, Plaintiff's core theory is implausible, at best. Plaintiff speculates that Boeing somehow covered up bad test results through all of May 2009 and most of June, while performing myriad other tests, only to announce on June 23 that first flight would be postponed, with no facially plausible facts in support of how or why Boeing would do that.  Plaintiff's theory that Boeing was trying to prevent cancellation of orders is patently deficient and frivolous.  Mem. 18-19.  What Boeing explained on June 23, 2009, is far more plausible:  There was an anomalous test result in late May; Boeing analyzed it carefully; did additional testing; when the data were understood, Boeing told the public.  Clear Seventh Circuit precedent holds that declining to speak during an investigation of a potential problem is not fraud; it is what prudent managers do.  *See Higginbotham*, 495 F.3d at 760-61.

Finally, Plaintiff muddles and, at times, misrepresents settled rules on standing, the class period, puffery, and forward-looking statements.  In light of the fundamental flaws discussed above, the Court need not resolve these issues, which would independently require dismissal.

Plaintiff's opposition brief confirms that Plaintiff cannot begin to satisfy these requirements. In fact, Plaintiff asks this Court on *three different occasions* for leave to amend its already Amended Complaint, which itself was eight months in the making. Resp. 8 (add new plaintiff); *id.* at 9 n.2 (redefine Class Period); *id.* at 13 (add information allegedly supporting source). Plaintiff also effectively amends without permission by adding new allegations and exhibits to its brief, *id.* at 10 & n.4 (March 2010 wing test), in sharp contravention of Seventh Circuit precedent. The Court should dismiss the Amended Complaint with prejudice.

## ARGUMENT

I.  **Plaintiff's Allegation That Boeing Knew In Early May 2009 That There Were Problems From An April Test Is Deficient Under Settled Law, And The Whole Amended Complaint Fails As A Result.**

Plaintiff's entire theory of fraud rests on the allegation that Boeing knew in early May 2009, from a test in April, that the 787 would require "re-design," a "re-test," and that there was "risk" of postponing first flight, AC ¶ 75, but that Boeing concealed that information until June 23. Defending that theory, Plaintiff cites paragraph 75 repeatedly, along with other conclusory paragraphs that lack even the purported sources offered in paragraph 75. Resp. 1, 4, 7, 10 & n.3, 17. To be precise, paragraph 75 alleges that "Boeing employees and defendants knew about the poor results of this April 21 test, the need for re-design and re-testing, and the risk to the First Flight and delivery schedule *via internal e-mails sent before May 3, 2009.*" AC ¶ 75 (emphasis added). But Plaintiff alleges no particularized facts that support its essential assumption that Boeing "knew" these things before May 3. Instead, building on that bare allegation, Plaintiff condemns any statement thereafter that failed to disclose the assumed need for re-design and the risks to first flight.

If paragraph 75 (which Plaintiff cites at least 17 times) fails, the Amended Complaint fails. Indeed, Plaintiff seems to recognize as much, based on its heavy reliance on that allegation

and its peculiar request for an *in camera* hearing on the confidential sources purportedly underlying it.[1]   Resp. 20 n.13.   But under settled law, the "confidential source" allegation is deficient, and so is the Amended Complaint.

The Seventh Circuit's decision in *Higginbotham* is directly on point.   Confronted with far more detailed and specific anonymous-source allegations, the Court held that such allegations seldom show scienter because information from uncorroborated anonymous sources cannot "be deemed 'compelling.'"   *Higginbotham*, 495 F.3d at 757.   Without more detail, it is impossible for a court to know whether "confidential sources have axes to grind.   Perhaps they are lying. Perhaps they don't even exist."   *Id.*   At a minimum, bare "confidential source" allegations like those in *Higginbotham*—which were more detailed than the vague one at issue here—must be "discounted," and "[u]sually that discount will be steep."   *Id.*   That discount flows directly from the Supreme Court's decision in *Tellabs*, and the requirement that "[a] complaint will survive [a] motion to dismiss] only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."   *Id.* at 756 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (*Tellabs II*)).

After *Tellabs* and *Higginbotham*, other circuits weighed in, and the Seventh Circuit itself ruled in *Tellabs* on remand.   The rule that has emerged is clear: "confidential sources" deserve weight only if a plaintiff pleads with particularity facts showing how the source was in a position to know and why the source should be credited.   *See Tellabs III*, 513 F.3d at 712; *see also Inst. Investors Group*, 564 F.3d at 261-63 (discussing cases from several circuits).   Plaintiff fails that

---

[1] In fact, Plaintiff responds to Boeing's motion to dismiss on this point not by bolstering the credibility of its position—either in law or in fact—but by accusing Boeing of inflating what paragraph 75 says in order to set up a "straw man." Resp. 7.   Boeing has done no such thing.   The paragraph plainly alleges that defendants "knew" about poor test results in early May and "knew" then that those results meant that there was a "need for redesign and re-testing" of the wing joint on the 787, but concealed them in order to conceal the risk to first flight.

test. Regarding the purported "internal e-mails," Plaintiff offers no particularized facts regarding the people involved, how they were in a position to know, or why they should be credited at all. Indeed, Plaintiff has not alleged anything that would give this Court reason to believe that it has seen any emails of consequence, or that such emails even exist. *Higginbotham* compels dismissal of the Amended Complaint.

In defending paragraph 75, Plaintiff ignores *Higginbotham* and other post-*Tellabs* precedent, reaching back to a case from another circuit predating *Tellabs*: *Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000). Resp. 19. *Novak* undermines Plaintiff's position. The Second Circuit there held that unidentified confidential sources may help satisfy the PSLRA's requirement of pleading fraud with particularity only if "*[the] other facts [alleged] provide an adequate basis for believing that the defendants' statements were false*"—that is, only where the remainder of the complaint, without the confidential sources, suffices. *Id.* at 19 (quoting *Novak*, 216 F.3d at 314) (emphasis added). Plaintiff's Amended Complaint cannot begin to meet even that standard.

Aside from paragraph 75, Plaintiff makes many other conclusory allegations also based only on "information and belief" that suffer from lack of particularity. Under the PSLRA, allegations made on information and belief must be supported by particularized facts "sufficient to support a reasonable belief" that the statements were false or misleading when made. *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 595 (7th Cir. 2006) (*Tellabs I*) (citation omitted), *vacated on other grounds*, *Tellabs II*, 551 U.S. 308. As Judge Castillo recently explained, allegations based on information and belief must be supported by "documentary evidence and/or a sufficient general description of the personal sources of [plaintiff's] beliefs." *Plumbers & Pipefitters Local Union No. 630 Pension Annuity Trust Fund v. Allscripts-Misys Healthcare Solutions, Inc.*, -- F. Supp. 2d --, 2010 WL 1540125, at *8 (N.D. Ill. Apr. 13, 2010)

(citation omitted); *see also Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 147-48 (3d Cir. 2004) (affirming dismissal because neither documentary evidence nor personal sources supported factual allegations); *Teachers Ret. Sys. of La. v. Hunter*, 477 F.3d 162, 174-79 (4th Cir. 2007) (same). Plaintiff's only retort is to rely on cases not applying the PSLRA's standard for information and belief allegations. *E.g.*, Resp. 10 (relying heavily on *Jones v. Corus Bankshares, Inc.*, -- F. Supp. 2d. --, 2010 WL 1338070 (N.D. Ill. Apr. 6, 2010)).

Plaintiff can say dozens of times on information and belief that there was a serious problem with the April 2009 test that was "known" in early May, and Plaintiff can claim that "internal e-mails" said so. But unless Plaintiff offers some detail about how the alleged confidential sources might support that contention, and pleads factual support for why Plaintiff's insinuations warrant a reasonable person's belief, Plaintiff fails under the PSLRA and cannot survive a motion to dismiss. Plaintiff's only real attempt is paragraph 75, which fails under *Higginbotham* and many other cases for the reasons discussed above. Because all other allegations of fraud depend on it, the entire theory of the Amended Complaint fails.

## II.   The Theory Of Scienter In The Amended Complaint Is Not Pleaded With Particularized Facts, Is Utterly Implausible, And Cannot Overcome The Supreme Court's Decision In *Tellabs*.

Aside from Plaintiff's failure to allege fraud with particularity, the Amended Complaint fails for the independently sufficient reason that it fails to plead particularized facts creating a "strong inference" of scienter. To have a "strong inference," the complaint must allege specific facts offering a story that is "cogent" and "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs II*, 551 U.S. at 324. To apply that test, the Court must assess both Plaintiff's theory and all plausible opposing inferences. Plaintiff's allegations fail the *Tellabs* test. Mem. 16-20.

Plaintiff starts with the unfounded proposition that Boeing knew in early May 2009 that

an April test showed problems requiring a re-design and a risk to first flight. Plaintiff then spins a tale of a re-test in late May, persistent concealment of a "known" problem, and allegedly fraudulent statements of hope and expectation that the 787 would fly in June. Plaintiff asserts only one motive for the purported scheme, which was to avoid cancellation of 787 orders. The allegations in support of that tale are threadbare, and the tale is implausible.

*First*, Plaintiff theorizes that a wing test in late May 2009 was really a re-test to investigate the purportedly known problem from April. Plaintiff pleads *no facts* to support that insinuation. Plaintiff just says it. But the PSLRA requires that Plaintiff "state with particularity *facts* giving rise to a *strong inference* that the defendant acted with the required" scienter. 15 U.S.C. § 78u-4(b)(2) (emphases added). Repeating an insinuation or conclusion is *not* pleading a fact. Indeed, Plaintiff waffles on the question of what the May test was. The Amended Complaint elsewhere suggests that Boeing conducted the May test for reasons unrelated to first flight. AC ¶ 13 (asserting that test revealed problems that could prevent *delivery*). Conclusory allegations, particularly ones contradicted by the Amended Complaint itself, cannot support scienter. Mem. 17; *see Tellabs II*, 551 U.S. at 323.

*Second*, Plaintiff alleges that Boeing knew the results of various tests in April and May 2009 within 10 days after the tests were run, suggesting that anything that remained undisclosed after this 10-day period constituted unlawful concealment. AC ¶ 140. Again, Plaintiff alleges no factual support for those allegations. Instead, Plaintiff points to reports of a *November 2009* test, and notes that Boeing announced a purportedly "full analysis" of *that test* in 10 days. Resp. 10 (citing AC ¶¶ 133-34).[2] From that, Plaintiff draws the sweeping conclusion that Boeing *always*

---

[2] Plaintiff also attempts to supplement its allegations with "[r]ecent" Boeing press releases not cited in the Amended Complaint. Resp. 10 n.4. Leaving aside that Plaintiff cannot amend the Amended Complaint in its opposition brief, *see Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009), the press

receives a "full analysis" of *all* wing tests in 10 days and therefore, Boeing *must have known* the final (allegedly negative) results of the April test by May 3.

Plaintiff's proposition fails the *Tellabs* test. No reasonable person would think that a "full analysis" of test results on a complex, cutting-edge aircraft structure *invariably* takes only 10 days. Engineers collect enormous amounts of data during such tests, and the analysis period depends on the nature of the test and the complexity of what is found. In November 2009—after several earlier tests and a mountain of earlier study—analysis took 10 days. Plaintiff offers no facts that would permit a reasonable person to believe that it takes 10 days to get results of *every test*, much less that different tests in April or May took 10 days. And again, the Amended Complaint itself suggests that it has taken at least three weeks for Boeing to receive "full analysis" of certain wing tests. AC ¶ 102.

*Third*, Plaintiff emphasizes that Boeing said in early May 2009 that "all the necessary structural tests required prior to first flight are now complete" and the "final test occurred April 21," but alleges that more tests in fact were necessary, and that Boeing's statement thus constitutes fraud. Resp. 9. Plaintiff alleges no facts in support of this allegation and misconstrues what was being said. First flight is only one step in a long process toward delivering an airplane. Plaintiff's allegations obscure the many different tests that are conducted both before first flight and on through the ultimate certifications for production and delivery, which are designed to ensure the plane is safe for the millions of passengers who will eventually fly on it. As even the Amended Complaint elsewhere acknowledges, an aircraft manufacturer must perform multiple types of structural wing tests before bringing a plane to market. AC ¶ 50.

The FAA regulations outline the progression. To begin flight testing (including first

releases do not help Plaintiff. Critically, they address a different wing test ("ultimate load") required for delivery, not first flight. *See* Exs. B, C to Resp.

flight), an "experimental certificate" must be obtained.   14 C.F.R. §§ 21.191, 21.193 (2010).

Based on the results of these and other tests, flight testing occurs.  *See id.* § 21.35(a)(4); FAA

Order 8110.4C ¶ 2-6(i) (*available at* www.faa.gov).   Next, the FAA issues a "type inspection

authorization," *id.* ¶ 2-6(r), which allows "certification flight testing," *id.* ¶ 2.6(t).   The precise

testing contours from before first flight through ultimate certification, calibrated to the specific

aircraft, are detailed in a Certification Plan, to which the applicant and the FAA agree.  *See id.*

¶ 2-3(d).  Successful completion of testing leads to issuance of a Type Certificate, *see* 14 C.F.R.

§ 21.21, and then a Production Certificate, *see id.* § 21.45, after which the aircraft can be

produced and delivered, *see* 49 U.S.C. § 44704 (2010).   The regulations, orders, and applicable

statutes, *see id.* Part 447, make clear that the FAA is heavily involved in the process and that

testing continues well past tests performed for first flight.  Plaintiff does not allege otherwise.

Boeing announced on May 3 only that the "structural tests *required prior to first flight*

are complete." AC ¶ 12.  All that meant was that Boeing had finished tests that it had planned to

complete before first flight.  Other testing for certification would go on, and Plaintiff offers *no*

facts alleging that the test conducted later in May was a re-test (it was not) or that it was not

related to certification.  Again, Plaintiff waffles by elsewhere alleging that the May test was an

"ultimate load" test, *id.* ¶ 13, which is required for delivery, not first flight, *id.* ¶ 50; *see also*

Resp. 10 n.4 (citing press releases regarding "ultimate load" testing).  The critical point here is

this: The fact that Boeing continued structural testing after the tests for first flight were complete

is simply not evidence of fraud, and Plaintiff utterly fails to allege anything suggesting that it is.

*Fourth*, Plaintiff distorts statements made on June 23, 2009, to imply that Boeing knew of

problems in May because of the April test.   Plaintiff claims Mr. Carson "admitted that

[defendants] knew of the 787 wing structural defects in May 2009." Resp. 20 (citing AC ¶ 104).

As explained in Boeing's opening brief, Mem. 5, 13, Mr. Carson actually stated (in language quoted by the Amended Complaint) that Boeing discovered an anomaly several weeks before June 23 but that Boeing believed it "had a solution." Mr. Carson noted that the testing and analysis went on until late in the week before June 23, when Boeing determined not to go forward with first flight and then promptly disclosed that decision.[3]

*Last*, but far from least, Plaintiff offers no plausible theory for *why* Boeing would recklessly or intentionally misrepresent whether the 787 would fly in June 2009. Even putting aside the stubborn fact that Boeing tested the 787 well into June preparing for first flight, Mem. 18, Plaintiff's theory as to motive, devoid of any supporting facts, falls far short of the PSLRA's requirement. Plaintiff argues that Boeing delayed disclosure to avoid cancellations at the Paris Air Show, Resp. 17-18, but offers nothing by way of facts or logic to rebut Boeing's argument that sophisticated 787 purchasers would simply cancel orders a few days later when they heard the news that first flight was delayed. Mem. 18-19. Most logically, because Boeing would not have been spared the same cancellations days later when it made the announcement, this is not a case in which "the benefits of concealment might exceed the costs." *Tellabs III*, 513 F.3d at 710. Indeed, Plaintiff's reliance in its brief upon a cancellation by Qantas *after* Boeing's June 23 announcement proves this point and supports the motion to dismiss. Resp. 19 n.18. In sum, Plaintiff's failure to advance a plausible motive for the alleged deception vitiates any inference of scienter. *See Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008).

The facts Plaintiff pleads do not give rise to any inference of scienter, much less a strong

---

[3] In arguing that a Boeing official "explained that 'further testing' occurred in May *because* the earlier [April 21] wing load stress test produced failed results," Resp. 11 (emphasis added), Plaintiff is either confused, or is misrepresenting the statement. The quotation that Plaintiff cites actually explains that, because of the *May test*, not the April test, Boeing did additional testing, and that the "further testing and analysis [was] finished late last week," *i.e.*, the week before June 23. AC ¶ 102. That statement does not discuss the April test.

inference, since the facts pled give rise to a more "plausible opposing inference[]." *Tellabs II*, 551 U.S. at 323.  The most plausible inference is that Boeing did *not* know that it would decide to postpone first flight until late in the week before the June 23 conference call, just as it disclosed.  Mem. 19.  Plaintiff cobbles together specious allegations, supported by unspecified "confidential sources," but in the end, Plaintiff simply takes the facts that Boeing postponed first flight and that its stock price dipped, and infers that Boeing must have known of the alleged risk to first flight earlier.  The Amended Complaint thus alleges only impermissible fraud-by-hindsight, and it must be dismissed with prejudice.  *See Asher v. Baxter Int'l Inc.*, 377 F.3d 727, 730 (7th Cir. 2004).[4]

## III. The Amended Complaint Has Several Additional Flaws That Independently Require Dismissal, And Plaintiff's Proposed Fixes Should Be Rejected.

Boeing's motion to dismiss discussed several additional problems with the Amended Complaint that independently compel dismissal.  Plaintiff's response offers various gambits to circumvent those problems, but each is foreclosed by settled law.  Given that the entire Amended Complaint categorically fails for the two independent reasons discussed above, the Court need not reach these remaining issues.  If it does, the end result will be only to confirm additional grounds for dismissing the Amended Complaint.

---

[4] Plaintiff's claims of scienter with respect to Defendants McNerney and Carson are still weaker.  Mem. 19-20.  Plaintiff relies upon their positions in Boeing and that they made challenged statements, Resp. 16-17, though statements by Carson were after Plaintiff purchased stock on June 5 and, as will be discussed, Plaintiff has no standing as to those statements.  But Plaintiff's theory is implausible regardless, as it is hardly "inconceivable" that the highest-ranking officers would not know the precise status of complicated, ongoing engineering tests.  *Desai v. Gen. Growth Props., Inc.*, 654. F. Supp. 2d 836, 860 (N.D. Ill. 2009); *see Tellabs III*, 513 F.3d at 711.  Further, the implication that Mr. Carson had a motive to retain his job, Resp. 19, is precisely the sort of generic, omnipresent motive that courts routinely reject under the PSLRA.  *See Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005); *see also Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 290 (5th Cir. 2006) (motivation to retain job insufficient).  In any event, because Mr. Carson made no statements before June 5, and Plaintiff cannot challenge any statements after that date, the section 10 claim against him necessarily fails.  *See, e.g., Tellabs III*, 513 F.3d at 710 (rejecting group pleading, including presumption that press releases are attributable to corporate officers).

### A.   Plaintiff has no standing to challenge many of the statements cited in the Amended Complaint.

Plaintiff disputes the Seventh Circuit's clear holding in *Roots P'Ship v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992), that "post-purchase statements cannot form the basis of Rule 10b-5 liability, because the statements could not have affected the price at which plaintiff actually purchased." Plaintiff offers numerous post-purchase statements, a frivolous distinction of *Roots*, and as a last resort, the gambit of adding a new party. All should be rejected.

Plaintiff purchased on June 5, but argues it can challenge statements after June 5 because they are "essentially identical" to prior statements, and "the mix of information defendants failed to disclose did not change." Resp. 8. Courts in this circuit "routinely reject" such attempts to evade *Roots*. *Zerger v. Midway Games, Inc.*, 2009 WL 3380653, at *4 n.1 (N.D. Ill. Oct. 19, 2009) (collecting cases). Plaintiff also suggests that *Roots* is inapplicable because its "losses" were caused by the same disclosure that caused losses suffered by later purchasers of Boeing stock. Resp. 8. *Roots*, however, makes clear that a plaintiff who lacks standing to challenge a statement cannot assert a claim on behalf of others who have standing. *See* 965 F.3d at 1420 n.6.

Plaintiff cites only one case to support its position, *Danis v. USN Commc'ns, Inc.*, 189 F.R.D. 391 (N.D. Ill. 1999), Resp. 8, but that case is not germane because it is a class certification case. *See Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 706 (N.D. Ill. 2005) (explaining *Danis* and rejecting Plaintiff's contention). As a last resort, Plaintiff requests leave to amend to add another class representative. Resp. 8. Plaintiff offers no basis for granting that request.

Plaintiff has had months to amend, when it could have added plaintiffs, and the law regarding standing is well settled. Plaintiff does not get "'leisurely repeated bites at the apple, forcing a [] judge to decide whether each successive complaint was adequate under the PSLRA,'" *Pugh*, 521 F.3d at 698 (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57

(1st Cir. 2008)), and it especially may not request leave to amend in its response to Boeing's motion to dismiss, *see Maloney v. R.R. Donnelley & Sons Co.*, 1998 WL 381973, at *3 (N.D. Ill. July 6, 1998) (Conlon, J.). In all events, as already explained, Plaintiff's challenges to the post-June 5 statements would fail because of Plaintiff's more fundamental, non-standing problems. Amending to add a party would be a waste of judicial resources and delay the inevitable dismissal of this case for failure to state a claim. *See Guise v. BWM Mortgage, LLC*, 2003 WL 22019346, at *1 (N.D. Ill. Aug. 26, 2003) (Conlon, J.).[5]

**B.   Case law clearly allows Boeing time to study a problem before speaking about it, and many—if not all—of the statements are protected by that rule.**

Plaintiff essentially argues that every time during the class period that Boeing mentioned any aspect of the 787 program, it had to disclose preliminary test results. Resp. 9-12. That argument presupposes, of course, that Boeing had identified in early May an issue that needed to be disclosed; as shown above, Plaintiff has failed to plead facts sufficient to survive a motion to dismiss on that fundamental point. *See also* Mem. 9-16. Regardless, Plaintiff cannot overcome settled law that managers may investigate a potential problem before disclosure.

The Seventh Circuit has clearly held that managers "are entitled to investigate for a reasonable time, until they have a full story to reveal." *Higginbotham*, 495 F.3d at 761; *see Pugh*, 521 F.3d at 695. Plaintiff seeks to evade *Higginbotham* and *Pugh* by insisting that in those cases, "defendants chose to remain silent during the investigation and/or never made any qualitative statements about the issue they were investigating." Resp. 12. Plaintiff is wrong. In *Pugh*, the Seventh Circuit *expressly* stated that the defendant had issued a press release noting its

---

[5] Plaintiff also impermissibly challenges statements made on May 3, *before* the start of the class period, as Boeing noted in its opening brief. Mem. 10. Plaintiff tries to overcome its clear error with two cases, Resp. 9 n.2, both of which *affirm* the general rule that "[o]nly statements made . . . during the class period [] are actionable." *In re Neopharm, Inc. Sec. Litig.*, 2003 WL 262369, at *9 (N.D. Ill. Feb. 7, 2003) (internal citations and quotations omitted); *Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 966 (N.D. Cal. 2005). *Neopharm* and *Zelman* set forth narrow exceptions, but neither applies.

subsidiary's statement denying fraud allegations during the class period—that is, defendant did *not* remain silent. 521 F.3d at 691. And in both cases, the complaints alleged that defendants had spoken about topics related to the alleged fabrications and should have disclosed information at the time they spoke. *See Pugh* Compl., 2005 WL 3612967, ¶¶ 60-125 (N.D. Ill. Nov. 15, 2005); *Higginbotham* Compl., 2005 WL 6189808, ¶¶ 60-90 (N.D. Ill. Sept. 28, 2005). Yet the Seventh Circuit affirmed dismissal of both complaints, confirming that managers need not stand utterly silent during an investigation.

Plaintiff cites no persuasive authority to support its argument that Boeing could not speak publicly about the success of other tests that it conducted on the 787. Plaintiff offers *In re Neopharm, Inc. Sec. Litig.*, 2010 WL 1335824 (N.D. Ill. Mar. 31, 2010), but that case is distinguishable. The court there denied defendant's motion for summary judgment when plaintiff established that defendant knew its product was "fundamentally flawed" yet continued to tout it for months. *Id.* at *17. The court explained that the defendant had "reached a consensus" that the product "had failed," but merely disputed the reason *why* it had failed. *Id.* at *18. Here, by contrast, Boeing was investigating to determine whether an actual problem existed that would prompt Boeing to delay first flight; meanwhile, it was continuing to perform other tests necessary to complete the path toward certification. Plaintiff cannot rely on *Neopharm* here, where it *concedes* that the Amended Complaint is "void" of any allegations that Boeing *knew* that the wing had failed and first flight would be postponed. Resp. 7.

## C.   Many of the challenged statements are puffery or forward-looking.

It should be obvious that statements like Boeing's commentary that it was making "steady progress" toward first flight are non-actionable puffery. Plaintiff nevertheless insists otherwise. Resp. 13 n.8. The critical case is *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 745 (7th Cir. 1997). It holds such statements to be non-actionable unless "the process [in this case,

progress towards first flight] has been stopped," which Plaintiff does not allege. A reference to "steady progress" is not a "prediction," as Plaintiff insists, Resp. 13 n.8; indeed, a prediction would be a protected forward-looking statement. And making such statements in a press release that investors might read, Resp. 13 n.8, does not render them actionable. *See Eisenstadt*, 113 F.3d at 741. Thus, *Eisenstadt* cannot be distinguished from this case.

Plaintiff's attacks on Boeing's forward-looking statements also fail. Plaintiff does not dispute that they were preceded by numerous, specific cautionary warnings that were meaningful when made. Resp. 15. Rather, relying on *Asher,* Plaintiff claims that Boeing's cautionary language "became not meaningful because the facts changed." *Id.* But as Judge Shadur explained in *Desai, Asher* does not "eliminate safe harbor protection for a company that clearly discloses the important risk factors but does not later update its investors in real time about its various successes and failures." 654 F. Supp. 2d at 847. Boeing's cautionary language was and remained more than adequate, Mem. 11-12; Plaintiff identifies no failure "to disclose important risk factors" but simply relies on an incorrect interpretation of law. Further, Plaintiff now disavows pleading that Boeing had "actual knowledge" that first flight would be delayed, Resp. 7, also precluding liability for forward-looking statements. 15 U.S.C. § 78-u(c)(1)(B)(ii).

## CONCLUSION

For the reasons set forth above and in the opening brief, Boeing and Messrs. McNerney and Carson respectfully request that this Court grant their motion to dismiss with prejudice.

Dated: May 10, 2010

Respectfully submitted,

/s/ Mark Filip
Mark Filip
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654

Tel.  (312) 862-2000
Fax  (312) 862-2200
mark.filip@kirkland.com

John A. Eisenberg
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Tel.  (202) 879-5000
Fax  (202) 879-5200
john.eisenberg@kirkland.com

*Attorneys for Defendants The Boeing
Company, W. James McNerney, Jr. and
Scott E. Carson*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2010, I caused a true and complete copy of **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**, to be served on counsel of record by ECF with courtesy copy via e-mail:

| | |
|---|---|
| Lori A. Fanning<br>Marvin A. Miller<br>MILLER LAW LLC<br>115 S. LaSalle Street<br>Suite 2910<br>Chicago, Illinois 60603<br>Tel. (312) 332- 3400<br>Fax. (312) 676-2676<br>lfanning@millerlawllc.com<br>mmiller@millerlawllc.com | Thomas E. Egler<br>Shannon M. Matera<br>Trig R. Smith<br>ROBBINS, GELLER<br>RUDMAN & DOWD LLP<br>655 West Broadway<br>Suite 1900<br>San Diego, California 92101-3301<br>Tel. (619) 231-1058<br>Fax. (619) 231-7423<br>tome@rgrdlaw.com<br>smatera@rgrdlaw.com<br>trigs@rgrdlaw.com |
| Deborah R. Gross<br>Robert P. Frutkin<br>LAW OFFICES OF BERNARD M.<br>GROSS, P.C.<br>Wanamaker Building<br>Suite 450<br>100 Penn Square East<br>Philadelphia, Pennsylvania 19107<br>Tel. (215) 561-3600<br>Fax. (215) 561-3000<br>debbie@bernardmgross.com<br>rpf@bernardmgross.com | Randi D. Bandman<br>52 Duane Street<br>7th Floor<br>New York, New York 10007<br>randib@rgrdlaw.com |

/s/ Mark Filip
Mark Filip