UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) | No. 1:09-cv-07143 <br><br> <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | Judge Suzanne B. Conlon |
| vs. | ) ) | |
| THE BOEING COMPANY, et al., | ) ) | |
| Defendants. | ) ) ) | |
| | ) | |

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RELIEF FROM JUDGMENT

## I.    INTRODUCTION

In their opposition, defendants mischaracterize Plaintiff's Motion for Relief from Judgment ("Motion").  It is far more narrow than they argue and, as the proposed amendment meets the standards set out in the Court's May 26, 2010 Motion to Dismiss Opinion ("Opinion"), the Motion should be granted.

## II.    DISCUSSION

Plaintiff only asks the Court to reconsider its finding of law with regard to amendment, as plaintiff's proposed amendment of the Complaint would cure the defects the Court noted, and was sought before the Court ruled on defendants' motion to dismiss.  Contrary to defendants' brief (*see, e.g.*, Defendants' Opposition to Plaintiff's "Motion for Relief from Judgment" ("Defs.' Brf.") at 2-3, 5), plaintiff does not seek reconsideration of other conclusions of law.

In sum, prior to the Court's May 26, 2010 ruling on defendants' motion to dismiss, plaintiff had submitted curative proposed amendments for three issues that the Court found dispositive in dismissing this action.  These include the first day of the Class Period, a proposed representative plaintiff for statements made after Lead Plaintiff bought Boeing shares, and further detail on defendants' scienter and the sources of information contained in the Complaint.

These proposed amendments were supplied in either Plaintiff's April 22, 2010 Opposition to Defendants' Motion to Dismiss (Dkt. No. 41) or Plaintiff's May 20, 2010 Motion to Amend (Dkt. No. 48).  Plaintiff respectfully submits that the Court of Appeal's holding in *Pugh v. Tribune Co.*, 521 F.3d 686 (7th Cir. 2008), does not support denial of leave to amend in these circumstances.

Rather, in *Pugh*, the district court had previously granted a motion "for leave to file a second amended complaint."  *Pugh*, 521 F.3d at 692.  The Court of Appeals noted that "defendants pointed out [the deficiency at issue] before the plaintiffs filed their second amended complaint, but they chose not to remedy it."  *Id.* at 698.  The Court of Appeals found that denial for leave to amend a

- 1 -

third time was appropriate, especially where the district court had ruled on defendants' motion.  As the Court of Appeals held:

> Courts have rejected the argument that the plaintiffs now make – namely, that they were entitled to wait and see what the district court said before making any changes to the complaint – because it would impose unnecessary costs and inefficiencies on both the courts and party opponents.

*Id*.

Here, plaintiff did not "wait and see what the district court said before making any changes." *Id*.  Rather, plaintiff submitted proposed amendments before the Court issued an opinion, choosing to "remedy" the Complaint based on defendants' arguments, and before this Court ruled.  *Id*.

Defendants argue that this "is exactly the type of abusive litigation tactics that the Seventh Circuit criticized in *Pugh*."  Defs.' Brf. at 4.  They are wrong, as they fail to note that in *Pugh*, the Court affirmed the denial of leave to amend in part because plaintiffs had been put on notice of "deficiencies" in the complaint by defendants and did nothing.  Here, plaintiff did not sit on its hands; it performed in compliance with the instructions of the Court of Appeals.

Indeed, for two of the three issues for which plaintiff seeks leave to amend (the one-day addition to the beginning of the Class Period and the addition of the proposed representative plaintiff), defendants tacitly admit that the amendments would cure any defects. Defs.' Brf. at 3-4. Defendants do not claim amendment would be futile for those issues.  For the remaining issues, scienter and detail, defendants argue that the amendment would be futile, but again misstate the Court's Opinion and the relevant law.

First, again, plaintiff here only seeks reconsideration of the Court's finding with regard to Leave to Amend.  Second, contrary to defendants' argument, plaintiff does not seek to "use this motion . . . to seek leave to add further 'information' about its" confidential source. Defs.' Brf. at 5.

Rather, plaintiff submitted all of the information regarding the source and the additional detail ***before***

the Court issued its May 26, 2010 Opinion.

Third, defendants are incorrect that amendment would be futile.  The proposed amendments

contain relevant information from a Confidential Source (noted as "CS") who worked at Boeing and

provide great detail as to the source's position and basis for knowledge:

> Plaintiffs' confidential source ("CS") is a former Boeing Senior Structural Analyst
> Engineer and Chief Engineer, who worked on the Mid-Body Fuselage/Wing
> Integration Team for the 787 program.  The CS's job responsibilities included stress
> and design review of the 787 wing joints, as well as performing Finite Element
> Modeling analyses for other engineers and designers working on the 787 wing
> project.  The CS reported to Larry Hall, Boeing's Vice President of the Wing-Body
> Integration Team.  As part of the CS's job, he had direct access to, as well as first-
> hand knowledge of the contents of, Boeing's 787 stress test files that memorialize the
> results of the failed 787 wing limit load test and subsequent re-test, which transpired
> on April 21, 2009 and May 17, 2009, respectively (individually referred to as a
> "Wing Test" file and collectively as the "Wing Tests" files).

Proposed Second Amended Complaint (Ex. A to Plaintiff's May 20, 2010 Motion to Amend)

("PSAC"), ¶139.[1]  This source provides the detail the Court sought in its opinion.  For example,

contrary to defendants' argument, the proposed amendment identifies who authored the e-mails,

noting that they came from the "Wing Test Integration Team," and identifying its members:

> According to the CS, the Wing Tests files include internal, contemporaneous
> communications regarding the specific results of the Wing Tests, and findings of the
> Wing Test Integration Team, which the Wing Test Integration Team sent directly to
> defendants McNerney and Carson.  According to the CS, the Wing Integration Team
> members included Larry Hall, Terry Pham (who reported directly to Larry Hall) and

---

[1]     Defendants ask the Court to discount the allegations because of the confidential nature of the source,
relying on *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 757 (7th Cir. 2007).  Defs.' Brf. at 7.  This also
must fail.  In *Higginbotham*, the Court of Appeals noted that defendants "are entitled to learn in discovery
who has relevant evidence, and to obtain that evidence.  Indeed, plaintiffs are obliged by Fed. R. Civ. P.
26(a)(1)(A) to provide defendants with the names and addresses of all persons 'likely to have discoverable
information that the disclosing party may use to support its claims or defenses.'"  *Higginbotham*, 495 F. 3d at
757.  Here, on April 22, 2010, before the Court ruled on defendants' motion to dismiss, plaintiff identified the
confidential source in their initial disclosures.

526729_1

Mike Denton (Vice President of Engineering for the 787 Program, who reported directly to defendant Carson).

PSAC, ¶140.

The proposed amendments also specifically allege that the required analysis of the Wing Stress Test was performed in a timely manner and its results known in a matter of days (confirming plaintiff's prior allegations), and make straightforward allegations about defendants' actual knowledge of "the wing stress test results" through particularized facts:

According to the first-hand knowledge of the CS, the April 21, 2009 load test file, which is in Boeing's direct control, indicates that the 787 wing structure failed at 30% below limit load.  Further, according to the CS, the April 21, 2009 Wing Test file contained copies of internal electronic communications to defendants McNerney and Carson, which were dated within a few days of April 21, 2009, informing defendants that the 787's wing had failed at limit load and, as a result of that failed test, re-testing of the 787 wing assembly would be necessary.  According to the CS, the contents of the April 21, 2009 Wing Test file, including the contemporaneous communications from the Wing Integration Team to defendants McNerney and Carson, are clear in the finding that the failed April 21, 2009 limit load test and necessary re-testing placed the plane's scheduled June 30, 2009 First Flight at risk.

According to the CS, the May 17, 2009 Wing Test file (*i.e.*, the re-test) indicates that the 787 passed the limit load test on May 17, 2009, but failed the ultimate load test at about 125% of limit load.  According to the CS, the fact that the 787 wing failed at 125% of limit load was generally known by the Wing Integration Team immediately upon completion of the May 17, 2009 test and was characterized by the Wing Test file documents as a "weight optimization issue."  Further, according to the CS, the May 17, 2009 Wing Test file contains detailed analysis evidencing that nine days after the failed May 17, 2009 test, "delamination" of the 787 wing stringers was also identified as a serious engineering issue.  According to the CS, the May 17, 2009 Wing Test file contains copies of internal electronic communications, dated around May 26, 2009, from the Wing Integration Team to defendants McNerney and Carson, which specifically informed defendants McNerney and Carson that the 787 wing failed the ultimate load test, as well as the fact that additional re-work of the wing attachment design was required to correct the delamination problem.  These late May 2009 contemporaneous communications contained in the May 17, 2009 test file, from the Wing Integration Team to defendants McNerney and Carson, clearly communicated the Wing Integration Team's conclusion that Boeing would be unable to conduct a June 30, 2009 First Flight.

*Id.*, ¶¶141-142.

These and the other proposed amendments to the allegations (which appear at ¶¶139-142 of the PSAC), along with the various admissions by defendants after the fact and other information in the Complaint, demonstrate a strong inference of scienter against defendants.  It also cures the various questions the Court asked in the May 26, 2010 Opinion.  For example, the Court noted that the prior complaint

> allege[d] the 787 "failed to meet at least the 'ultimate load' test" on April 21, 2009, and again failed the "ultimate load" test on May 17, 2009. . . .  What does that mean? The 787 was required to pass the **load limit test** (100% of the anticipated load) not the ultimate load test (150% of the anticipated load), to achieve first flight.

May 26, 2010 Opinion at 10 (emphasis in original).

As the proposed amendments allege, the 787 failed substantially below the 150% ultimate load level, and ***below even the 100% load limit level on April 21, 2009***.  PSAC, ¶¶141-142.  Further, by late May, defendants knew of failures and delamination that put not only the "First Flight" at risk, but also the key 4Q09 delivery date, after which defendants would be forced to pay late penalties to customers.  *Id*.

Again, these proposed amendments were filed with the Court after defendants made their argument, but before the Court ruled upon the motion to dismiss.  They detail and reinforce plaintiff's theory of scienter.  Defendants, tellingly, never quote or cite to the amendments – they simply deny their contents.  Plaintiff asks that the Court consider them.

## III.    CONCLUSION

Plaintiff respectfully requests the Court grant its Motion for Relief from Judgment.

DATED:  June 9, 2010                         Respectfully submitted,

                                             PLAINTIFF


                                             By:  s/Marvin A. Miller
                                             MARVIN A. MILLER

MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

Liaison Counsel

THOMAS E. EGLER
TRIG R. SMITH
SHANNON M. MATERA
ROBBINS GELLER RUDMAN
  & DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

RANDI D. BANDMAN
ROBBINS GELLER RUDMAN
  & DOWD LLP
52 Duane Street, 7th Floor
New York, NY  10007
Telephone:  212/693-1058
212/693-7423 (fax)

Lead Counsel for Plaintiff

DEBORAH R. GROSS
ROBERT P. FRUTKIN
LAW OFFICES OF BERNARD M.
  GROSS, P.C.
Wanamaker Bldg., Suite 450
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600
215/561-3000 (fax)

- 6 -

MICHAEL J. VANOVERBEKE
THOMAS C. MICHAUD
VANOVERBEKE MICHAUD &
    TIMMONY, P.C.
79 Alfred Street
Detroit, MI  48201
Telephone:  313/578-1200
313/578-1201 (fax)

Additional Counsel for Plaintiff

526729_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on June 9, 2010.

s/ MARVIN A. MILLER
MARVIN A. MILLER

MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL  60603
Telephone:  312/332-3400
312/676-2676 (fax)

E-mail:  mmiller@millerlawllc.com

# Mailing Information for a Case 1:09-cv-07143

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Randi D Bandman**
  randib@rgrdlaw.com

- **Thomas E Egler**
  tome@rgrdlaw.com,stremblay@rgrdlaw.com

- **John A Eisenberg**
  john.eisenberg@kirkland.com

- **Lori Ann Fanning**
  LFanning@MillerLawLLC.com,MMiller@MillerLawLLC.com,JRamirez@millerlawllc.com

- **Mark Robert Filip**
  mark.filip@kirkland.com,john.eisenberg@kirkland.com,sandra.gentile@kirkland.com

- **Deborah R. Gross**
  debbie@bernardmgross.com

- **Shannon Mckenna Matera**
  smatera@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Marvin Alan Miller**
  Mmiller@millerlawllc.com,LFanning@millerlawllc.com,KPulido@millerlawllc.com,JRamirez@millerlav

- **Trig Randall Smith**
  trigs@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)