**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE BOEING COMPANY, W. JAMES MCNERNEY, JR., and SCOTT E. CARSON, <br><br> Defendants. | No. 1:09-cv-07143 <br><br> Chief Judge Ruben Castillo <br><br> Magistrate Judge Susan E. Cox |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
THE IMPOSITION OF SANCTIONS PURSUANT TO
THE PRIVATE SECURITIES LITIGATION REFORM ACT AND RULE 11**

Pravin B. Rao (#06230097)
Patrick M. Collins (#06206686)
Eric D. Brandfonbrener (#06195674)
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9400
prao@perkinscoie.com
pcollins@perkinscoie.com
ebrand@perkinscoie.com

Steve Y. Koh
Eric B. Wolff
Ryan M. Spear
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Tel: (206) 359-8000
Fax: (206) 359-9000
skoh@perkinscoie.com
ewolff@perkinscoie.com
rspear@perkinscoie.com

September 27, 2013

*Attorneys for Defendants The Boeing
Company, W. James McNerney, Jr., and
Scott E. Carson*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND AND BASIS FOR SANCTIONS ......................................................... 3

    A.    Plaintiffs' counsel's scanty factual investigation in support of the original complaint and the First Amended Complaint ......................................................... 3

    B.    Plaintiffs file the Second Amended Complaint with new confidential source allegations ................................................................................................. 5

    C.    After defendants move to dismiss the Second Amended Complaint, plaintiffs vouch for the confidential source to avoid dismissal, claiming that the source has "smoking gun" evidence of defendants' alleged scienter .................................................................................................... 8

    D.    The confidential source is revealed to be nothing like the person plaintiffs had alleged, but plaintiffs' counsel continues to defend their allegations and representations .............................................................................................. 10

    E.    Mr. Singh repudiates the allegations attributed to him ........................................ 12

    F.    Defendants' motion for reconsideration .............................................................. 14

    G.    Plaintiffs' motion for reconsideration .................................................................. 16

    H.    Plaintiffs' appeal and Defendants' cross-appeal for sanctions ........................... 17

III.  ARGUMENT .................................................................................................... 19

    A.    Legal standard for imposing sanctions under the PSLRA .................................. 19

    B.    Judge Conlon's findings are sufficient to establish that plaintiffs' counsel violated Rule 11 and that sanctions should be awarded ...................................... 22

    C.    Robbins Geller's prior misconduct further warrants the imposition of sanctions........................................................................................................... 26

    D.    Defendants are entitled to all "reasonable attorneys' fees and other expenses incurred in the action" ........................................................................ 28

IV.   CONCLUSION ................................................................................................. 30

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ackerman v. Nw. Mut. Life Ins. Co.*,
   172 F.3d 467 (7th Cir. 1999) ................................................22

*Applestein v. Medivation, Inc.*,
   861 F. Supp. 2d 1030 (N.D. Cal. 2012) ................................27

*Auto. Indus. Pension Trust Fund v. Textron Inc.*,
   682 F.3d 34 (1st Cir. 2012) ................................................21

*Belmont Holdings Corp. v. SunTrust Banks, Inc.*,
   896 F. Supp. 2d 1210 (N.D. Ga. 2012) ...........................26, 27

*Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*,
   No. 10 C 7031, 2013 WL 1286700 (N.D. Ill. Mar. 27, 2013) ...................................21, 24, 27

*Campo v. Sears Holdings Corp.*,
   371 F. App'x 212 (2d Cir. 2010) ............................................9

*Chambers v. NASCO, Inc.*,
   501 U.S. 32 (1991)................................................................20

*City of Livonia Empls.' Ret. Sys. v. Boeing Co.*,
   711 F.3d 754 (7th Cir. 2013) ....................................... passim

*City of Livonia Empls.' Ret. Sys. v. Boeing Co.*,
   No. 09 C 7143, 2010 WL 2169491 (N.D. Ill. May 26, 2010) ...................................5

*City of Livonia Empls.' Ret. Sys. v. Boeing Co.*, No. 09 C 7143, 2011 WL 824604 (N.D.
   Ill. Mar. 7, 2011) ........................................................ passim

*City of Pontiac Gen. Empls.' Ret. Sys. v. Stryker Corp.*,
   865 F. Supp. 2d 811 (W.D. Mich. 2012) ..............................27

*City of Taylor Gen. Empls. Ret. Sys. v. Magna Int'l, Inc.*,
   No. 12 Civ. 3553(NRB), 2013 WL 4505256 (S.D.N.Y. Aug. 23, 2013) ..............................28

*Cuna Mut. Ins. Soc. v. Office & Prof'l Empls.' Int'l Union, Local 39*,
   443 F.3d 556 (7th Cir. 2006) ................................................20

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)....................................27

*Gurary v. Nu-Tech Bio-Med, Inc.*,
   303 F.3d 212 (2d Cir. 2002)..................................................29

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Austl. & N.Z. Banking Grp. Ltd. Sec. Litig.*,
712 F. Supp. 2d 255 (S.D.N.Y. 2010)......................................................................20

*In re Bees*,
562 F.3d 284 (4th Cir. 2009) ...............................................................................21

*In re Brightpoint, Inc. Sec. Litig.*,
No. IP99-0870-C-H/G, 2001 WL 395752 (S.D. Ind. Mar. 29, 2001)......................24

*In re Cisco Systems, Inc. Securities Litig.*,
No. C, 2013 WL 1636384 (N.D. Cal. Apr. 16, 2013)............................................28

*In re Kunstler*,
914 F.2d 505 (4th Cir. 1990) ...............................................................................23

*In re Star Gas Sec. Litig.*,
745 F. Supp. 2d 26 (D. Conn. 2010) .....................................................................20

*Katz v. Household Int'l, Inc.*,
91 F.3d 1036 (7th Cir. 1996) ...............................................................................20

*Livingston v. Cablevision Systems Corp.*,
No. 12-CV-377 (KAM) (SMG), 2013 WL 4763430 (E.D.N.Y. Sept. 5, 2013) ................ 27-28

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F.3d 702 (7th Cir. 2008) ............................................................................8, 21

*Moazed v. First Union Mortg. Corp.*,
221 F.R.D. 28 (D. Conn. 2004)............................................................................21

*Portnoy v. Wherehouse Entm't Co.*,
120 F.R.D. 73 (N.D. Ill. 1988)............................................................................23

*Reed v. Great Lakes Cos.*,
330 F.3d 931 (7th Cir. 2003) ...............................................................................26

*Security Farms v. Int'l Bhd. of Teamsters*,
124 F.3d 999 (9th Cir. 1997) ...............................................................................23

*Unioil, Inc. v. E.F. Hutton & Co.*,
809 F.2d 548 (9th Cir. 1986) ...............................................................................25

## TABLE OF AUTHORITIES
### (continued)

Page

STATE CASES

*Fagin v. Scolnick*,
No. ATL-L-3406-07-MT, 2010 WL 7926210 (N.J. Super. Ct. Apr. 15, 2010) ......................4

FEDERAL STATUTES

15 U.S.C. § 78u-4(c) ...........................................................................................................1, 20

15 U.S.C. § 78u-4(c)(1) ...........................................................................................................16

15 U.S.C. § 78u-4(c)(3)(A) ..........................................................................................1, 20, 29

15 U.S.C. § 78u-4(c)(3)(A)(i) .................................................................................................29

15 U.S.C.§ 78u-4(c)(3)(A)(ii) .................................................................................................30

15 U.S.C. § 78u-4(c)(3)(B)                                             29

28 U.S.C. § 1292(b) .................................................................................................................9

Private Securities Litigation Reform Act of 1995 ("PSLRA")........................................... passim

RULES

Fed. R. Civ. P. 9(b) ...........................................................................................................22, 25

Fed. R. Civ. P. 11 ............................................................................................................. passim

Fed. R. Civ. P. 11(b) ........................................................................................................ passim

OTHER AUTHORITIES

http://www.rgrdlaw.com/firm.html...........................................................................................29

## I.     INTRODUCTION

The Court of Appeals remanded this case for the narrow purpose of consideration, "pursuant to [the Private Securities Litigation Reform Act of 1995 ("PSLRA")], of whether to impose Rule 11 sanctions on the plaintiffs' lawyers and if so in what amount." *City of Livonia Empls.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013). As the Court of Appeals noted, "[t]here is no requirement that the defendant have asked for the imposition of sanctions." *Id.* at 761. Rather, the PSLRA provides that "'upon final adjudication of the action, the court *shall* include in the record specific findings regarding compliance…with each requirement' of Rule 11, and if a violation is found 'the court *shall* impose sanctions' on a party or lawyer who has violated the rule." *Id.* (emphasis added) (quoting 15 U.S.C. §§ 78u-4(c)(1), (2)). The PSLRA creates "a presumption that the appropriate sanction…for substantial failure of any complaint to comply with any requirement of Rule 11(b)…is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(c)(3)(A).

The Court of Appeals observed that Judge Conlon's "harsh criticism of the plaintiffs when she dismissed the second amended complaint indicated agreement" with the defendants' assertion that plaintiffs' lawyers had violated Rule 11. *City of Livonia*, 711 F.3d at 761. Judge Conlon detailed the failure of plaintiffs' counsel to attempt to verify the confidential source allegations on which their complaint depended, and, as the Court of Appeals noted, "the judge thought their failure…amounted to a fraud on the court." *Id*. at 760.[1] Nevertheless, Judge

---

[1] For example, Judge Conlon found that plaintiffs' counsel made "fundamental misrepresentations" about "[m]aterial facts" "directly to the court about the confidential source's position and firsthand knowledge of Boeing's internal testing documents." *City of Livonia Empls.' Ret. Sys. v. Boeing Co*., No. 09 C 7143, 2011 WL 824604, at *4, *5 (N.D. Ill. Mar. 7, 2011). Judge Conlon further found that, "[w]ithout verifying the facts," plaintiffs' counsel "led the court to believe" that their lone confidential source had the "direct access" and "firsthand knowledge" necessary to support a strong inference of scienter. *Id*. at *3. Judge Conlon concluded that plaintiffs' counsel made "flawed representations" that "could have been avoided by reasonable inquiry"—a de facto finding that counsel violated Rule 11. *Id*. at *4.

Conlon failed to exercise "her duty, 'upon final adjudication of the action'…to determine whether to impose sanctions." *Id*. at 761. Accordingly, the Court of Appeals vacated the portion of the judgment declining to award sanctions, and remanded to this Court for the sole purpose of determining "whether to impose Rule 11 sanctions on the plaintiffs' lawyers and if so in what amount." *Id*. at 762.

In remanding, the Court of Appeals signaled its own agreement that sanctions likely are warranted. It noted that plaintiffs' counsel failed to conduct a reasonable inquiry before filing their complaints alleging securities fraud by the defendants:

- "The plaintiffs' lawyers had made confident assurances in their complaints about a confidential source—their only barrier to dismissal of their suit—even though none of the lawyers had spoken to the source and their investigator had acknowledged that she couldn't verify what (according to her) he had told her." *Id*.

- Although an investigator employed by plaintiffs' counsel had "qualms" about the source, and although those qualms "should have been a red flag to the plaintiffs' lawyers," plaintiffs' lawyers failed to investigate, a failure that "puts one in mind of ostrich tactics—of failing to inquire for fear that the inquiry might reveal stronger evidence of *their* scienter regarding the authenticity of the confidential source than the flimsy evidence of scienter they were able to marshal against Boeing." *Id*.

As the Court of Appeals held, "[r]epresentations in a filing in a federal district court that are not grounded in an 'inquiry reasonable under the circumstances' or that are unlikely to 'have evidentiary support after a reasonable opportunity for further investigation or discovery' violate Rules 11(b) and 11(b)(3)." *Id*.

Furthermore, the Court of Appeals noted that other courts have criticized the plaintiffs' law firm for "misleading allegations, concerning confidential sources, made to stave off dismissal of a securities-fraud case much like this one." *Id*. It emphasized that "[r]ecidivism is relevant in assessing sanctions." *Id*.

As shown below, the existing record is replete with evidence that plaintiffs' counsel violated Rule 11 by filing complaints without a reasonable basis for attesting to the facts alleged and by continuing to advocate in support of those complaints even when it became clear that there was no factual basis for their key allegations. The record also shows that plaintiffs' counsel have engaged in similar conduct in other securities lawsuits. As a result, sanctions should be awarded, according to the statutory presumption, in the amount of all of defendants' reasonable attorneys' fees and expenses incurred in defending against this action.

## II.     BACKGROUND AND BASIS FOR SANCTIONS[2]

This case arises from Boeing's development of a newly designed, state-of-the-art aircraft—the Boeing 787-8 Dreamliner.

### A.     Plaintiffs' counsel's scanty factual investigation in support of the original complaint and the First Amended Complaint

In June 2009, Boeing announced a delay in the first flight of the 787-8 Dreamliner and a need to modify the side-of-body joint where the wing is attached to the fuselage. On November 13, 2009, just shy of five months later, plaintiffs filed their original complaint alleging fraud. The original complaint did not recite any factual details other than extrapolations from publicly available news sources. *See generally* Dkt. 1. It was, in short, a "fraud by hindsight" complaint. *City of Livonia*, 711 F.3d at 758 (internal quotation marks and citation omitted). Later revelations about the minimal efforts plaintiffs' counsel expended on investigation demonstrated that the original complaint was filed without a reasonable inquiry.

Only *after* the original complaint was filed did plaintiffs retain an investigator. On January 5, 2010—almost two months after filing their original complaint—plaintiffs' counsel hired investigators Elizabeth and Ramsey Stewart of L.R. Hodges & Associates. They were

---

[2] The relevant factual background is summarized below. It is also recited in detail in this Court's orders at docket numbers 53, 201, and 233, Boeing's brief at docket number 158, and the Court of Appeals' opinion, *City of Livonia*, 711 F.3d at 757-61.

charged to find former Boeing employees who might have had knowledge of the alleged fraud. *See* Dkt. 153 ¶ 4 (Declaration of Elizabeth Stewart).[3]

Mr. Stewart first contacted Mr. Bishnujee Singh by telephone on February 16, 2010. Mr. Stewart's handwritten notes indicated that Mr. Singh worked for Boeing from 2004 through mid-January 2010, that Mr. Singh reported to Boeing Vice President Larry Hall, and that Mr. Singh noted differences between the 787-8 and 787-9 aircraft. *See* Dkt. 152 at 6-7 (PDF pagination). Ms. Stewart made in-person contact with Mr. Singh and interviewed him on February 19, 2010. *See* Dkt. 153 ¶¶ 11-14. Two days later, Ms. Stewart purported to memorialize her interview of Mr. Singh in an email message to plaintiffs' lead attorney, Robbins Geller partner Thomas Egler. *See id*. at 19-22 (PDF pagination).[4]

According to Ms. Stewart, Mr. Singh said that he was not working at Boeing during the time period in question, but that he subsequently worked for an independent contractor named Infotech, which in turn did work for Boeing. *See id.* at 19, 24 (PDF pagination). Contrary to Mr. Stewart's notes, Ms. Stewart's handwritten notes indicated that Larry Hall (to whom Mr. Singh reported, according to Mr. Stewart's notes) was not a Vice President, but a lower-level manager. *See id.* at 24 (PDF pagination). Ms. Stewart's follow-up investigation of Mr. Hall revealed that Mr. Singh's information about Mr. Hall was not reliable. *See id.* at 19 (PDF pagination).

---

[3] The L.R. Hodges firm has a longstanding relationship and "close association" with the Robbins Geller firm and its predecessor firms (Coughlin Stoia Geller Rudman & Robbins LLP; Lerach Coughlin Stoia Geller Rudman & Robbins LLP; and Milberg Weiss Bershad Hynes & Lerach LLP), which at least one court has noted "raises serious conflict of interest questions." *Fagin v. Scolnick*, No. ATL-L-3406-07-MT, 2010 WL 7926210 (N.J. Super. Ct. Apr. 15, 2010).

[4] The facts relating to plaintiffs' investigation are those posited by plaintiffs based on a portion of their investigators' file that they revealed and a declaration prepared by Ms. Stewart for a discovery dispute. Plaintiffs resisted discovery of the entire file. *See* Dkt. 171.

The day after Ms. Stewart sent her report on Mr. Singh to Mr. Egler, plaintiffs filed the First Amended Complaint, signed by Mr. Egler. The First Amended Complaint added some vague references to "internal e-mails" among Boeing employees and the individual defendants, but no additional factual support for plaintiffs' allegations of fraud. *See* Dkt. 23 ¶ 75.

While the First Amended Complaint did not in so many words invoke a confidential source (and it did not reference Mr. Singh), the references to internal email messages "implied that someone inside Boeing was aiding the plaintiffs." *City of Livonia*, 711 F.3d at 759. Thus, upon Boeing's motion to dismiss the First Amended Complaint, Judge Conlon concluded that those new allegations should be treated as confidential source allegations. *See City of Livonia Empls.' Ret. Sys. v. Boeing Co.*, No. 09 C 7143, 2010 WL 2169491, at *5 (N.D. Ill. May 26, 2010). Judge Conlon found those allegations completely insufficient to satisfy the PSLRA's stringent pleading requirements, especially considering the law relating to allegations based on confidential sources. *See id*. Accordingly, Judge Conlon dismissed plaintiffs' First Amended Complaint, ruling that plaintiffs had failed to "plead any particularized facts about the confidential sources" of their allegations, and therefore "a reasonable person would not deem the inference of defendants' scienter cogent." *Id*.

**B.    Plaintiffs file the Second Amended Complaint with new confidential source allegations**

On May 20, 2010, after briefing on defendants' motion to dismiss the First Amended Complaint was complete, but before the court had ruled, plaintiffs moved for leave to file the Second Amended Complaint. *See* Dkt. 48. It is fair to assume that plaintiffs' counsel recognized that, without additional allegations of scienter, the First Amended Complaint would be dismissed. Judge Conlon granted plaintiffs leave to file the Second Amended Complaint shortly after dismissing the First Amended Complaint. *See* Dkt. 62.

The only noteworthy difference between the First and Second Amended Complaints was plaintiffs' addition of four paragraphs now expressly attributed to a single confidential source (who turned out to be Mr. Singh). Yet, in the time since the First Amended Complaint had been filed, plaintiffs' counsel had gathered no new information from Mr. Singh, despite Mr. Egler's recognition (as subsequently relayed to the Court of Appeals) that such follow-up was needed. *See* Transcript of Feb. 25, 2013 Seventh Circuit argument (Ex. A) at 4-5.

As it turns out, plaintiffs had had a very troubling development in connection with Mr. Singh—a development that should have led, at a minimum, to plaintiffs' counsel's seeking corroboration of the information Mr. Singh had purportedly provided before including any of it in the Second Amended Complaint. On April 13, 2010, after Boeing had filed its motion to dismiss the First Amended Complaint, Ms. Stewart had contacted Mr. Singh again. *See* Dkt. 153 ¶ 23 (Declaration of Elizabeth Stewart). According to Ms. Stewart, Mr. Singh refused to speak with her or cooperate with plaintiffs' investigation. *Id.* But rather than take the prudent course of seeking, at a minimum, to corroborate the information from Mr. Singh before using it, plaintiffs' counsel instead played the information up, with no basis for doing so—using it to make critical allegations in the Second Amended Complaint that portrayed Mr. Singh as a most reliable confidential source, in such an ideal position to know firsthand about the alleged fraud that his information *alone* satisfied the scienter standard of the PSLRA.[5]

Paragraphs 139 to 142 of the Second Amended Complaint contained the newly added allegations attributed to the confidential source. Paragraph 139 described the source's alleged

---

[5] Given the weight ascribed by plaintiffs to Mr. Singh's information, and that he was, according to plaintiffs, "plaintiffs' only source for details concerning the stress testing," App. Dkt. 60 at 20, the Court of Appeals found it inexplicable that plaintiffs took so long to follow up with him and did so little to obtain more evidence from him once their investigator finally got around to contacting him again. Plaintiffs' counsel rather implausibly attributed those lapses to the busy nature of their practice, and stated that "[i]t's not like Singh is the only part of the investigation that's going on in this case." Transcript of Feb. 25, 2013 Seventh Circuit argument (Ex. A) at 6. There is, however, nothing in the record regarding any other investigatory activity during the relevant time.

position at Boeing, and detailed his purported firsthand knowledge and access to information that

could show the critical element of scienter:

> 139.    Plaintiffs' confidential source ("CS") is a former Boeing Senior Structural
> Analyst Engineer and Chief Engineer, who worked on the Mid-Body
> Fuselage/Wing Integration Team for the 787 program.  The CS's job
> responsibilities included stress and design review of the 787 wing joints, as well
> as performing Finite Element Modeling analyses for other engineers and
> designers working on the 787 wing project.  The CS reported to Larry Hall,
> Boeing's Vice President of the Wing-Body Integration Team.  As part of the CS's
> job, he had direct access to, as well as first-hand knowledge of the contents of,
> Boeing's 787 stress test files that memorialize the results of the failed 787 wing
> limit load test and subsequent re-test, which transpired on April 21, 2009 and May
> 17, 2009, respectively (individually referred to as a "Wing Test" file and
> collectively as the "Wing Tests" files).

Dkt. 63 ¶ 139.

The next three paragraphs described the information to which the source allegedly had

access.  Paragraph 140 alleged that, "[b]ased on the CS's first-hand knowledge, Boeing's Wing

Tests files are an organized set of documents" and that the Wing Integration Team's findings

were "sent directly to defendants McNerney and Carson."  *Id.* ¶ 140.  Paragraph 141 alleged that,

"[a]ccording to the first-hand knowledge of the CS,…the April 21, 2009 Wing Test file

contained copies of internal electronic communications to defendants McNerney and

Carson,…informing defendants that the 787's wing had failed at limit load."  *Id.* ¶ 141.

Paragraph 142 further alleged that, "[a]ccording to the CS, the fact that the 787 wing failed at

125% of limit load was generally known by the Wing Integration Team," and that "the May 17,

2009 Wing Test file contains copies of internal electronic communications, dated around

May 26, 2009, from the Wing Integration Team to defendants McNerney and Carson…clearly

communicat[ing] the Wing Integration Team's conclusion that Boeing would be unable to

conduct a June 30, 2009 First Flight."  *Id.* ¶ 142.

**C.    After defendants move to dismiss the Second Amended Complaint, plaintiffs vouch for the confidential source to avoid dismissal, claiming that the source has "smoking gun" evidence of defendants' alleged scienter**

Boeing immediately challenged the confidential source allegations of the Second Amended Complaint as insufficient. *See* Dkt. 68. Plaintiffs had alleged only a single source— nothing like the 26 confidential sources involved in *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702 (7th Cir. 2008), for example—and while the allegations appeared superficially detailed, upon close review, they lacked critical aspects of particularity. *See* Dkt. 68 at 3-6. The allegations did not, for example, say *when* exactly the source worked at Boeing, *why* he would have had access to emails to the CEO, or *how* exactly he came to read those emails. Further, there was no detail as to the nature of the emails.

In response, plaintiffs repeatedly vouched for the reliability of their source, representing that the source had seen "***direct*** evidence" supporting their claims, Dkt. 71 at 1 (emphasis in original), and twice claiming that the source had information "of the 'smoking-gun' genre," *id.* at 2, 9 n.5. Remarkably, plaintiffs devoted two pages of their brief to explaining the purported contents of the emails that the source had allegedly seen, even though it is now undisputed that *the emails never existed*, and, moreover, that plaintiffs' counsel had *never met with Mr. Singh*, the supposed confidential source on which their entire case rested. For example, they argued:

> Plaintiffs have alleged ***who*** authored the emails (the "Wing Test Integration Team": Larry Hall, Terry Pham and Mike Denton), ***who*** received them (McNerney and Carson), in ***what*** context they were sent (to immediately communicate the test results; honoring defendants' promise to be "laser focused" on all aspects of the 787's testing processes (*see* ¶54)), ***when*** they were sent (within 10 days of each test), the ***data*** on which the team's conclusions were based (the test results), and their ***contents*** (failed test results and disastrous ramifications thereof).

*Id.* at 7-8 (emphasis in original). But at that point, the only basis plaintiffs' counsel had for those representations was the interview that had occurred several months earlier between the investigator and Mr. Singh. Since that time, Mr. Singh had refused to cooperate further, and

none of the information reported by the investigator had been corroborated in any way. Judge Conlon, knowing none of those facts about the investigation or Mr. Singh, but having heard plaintiffs' counsel vouch repeatedly for their source, credited plaintiffs' defense of the allegations and denied defendants' motion to dismiss the Second Amended Complaint. *See* Dkt. 73-2.

Defendants asked Judge Conlon to certify the ruling for interlocutory appeal under 28 U.S.C. § 1292(b) because they believed that, by the Seventh Circuit's standards, the new allegations should not be given enough weight to save the Second Amended Complaint from dismissal. *See* Dkt. 76 at 4. Further, Boeing cited the Second Circuit's decision in *Campo v. Sears Holdings Corp.*, 371 F. App'x 212 (2d Cir. 2010) (unpublished), and sought a deposition of the source to determine whether there was in fact a good faith basis for plaintiffs' allegations, noting that although plaintiffs had not identified the source, defendants suspected, based on their investigation, that the allegations "were, at most, derived from a source who cannot actually attest to what is pleaded." *Id*. at 10.

On August 30, 2010, Judge Conlon held a hearing at which plaintiffs' counsel, Mr. Egler, again vigorously defended the source and made the following "confident assurances," *City of Livonia*, 711 F.3d at 762, about the source's position and personal knowledge:

- **That the source worked at Boeing sufficiently close in time to the alleged events to know the facts alleged.** Mr. Egler said that although the source did not work for Boeing during the class period, he had "started working there within months of that" time. Transcript of Aug. 30, 2010 hearing (Ex. B) at 13.

- **That the source's information arose from his work, and that he had seen emails that would prove scienter.** Mr. Egler said that "as part of his work," the source "was given access to files that were prepared during the class period, *and those are the documents that he saw*." *Id*. (emphasis added).

- **That the complaint alleged the source's direct supervisor.** Mr. Egler said that "[h]is direct supervisor is named in the complaint [Larry Hall]." *Id*. at 10.

- **That the complaint was sufficiently detailed that Boeing should know who the source was.** Mr. Egler said that the complaint went into "great detail about who this person is, what their basis is for speaking—or what their basis for the facts conveyed in the complaint are." *Id.* at 11. Mr. Egler went so far as to challenge Boeing's knowledge by telling the court that "I think they [Boeing] do know who this individual is." *Id.* at 10.

After hearing from Mr. Egler, Judge Conlon declined to certify her order for interlocutory appeal or to permit initial discovery limited to a deposition of the source. Judge Conlon explained that "whether or not the confidential informant was in a position to know the things that are alleged is critical, and it appears that the confidential source in the second amended complaint had personal knowledge of the documents that point to the knowledge by officials of the company, including the two named individual defendants." *Id.* at 21. Judge Conlon emphasized that she had relied on those allegations in denying the motion to dismiss. *See id.* at 17-21. She found that paragraphs 139 to 142 were "very specific, and if I may use the word cogent," and that they "connect[ed]" plaintiffs' "general allegations" with "what was happening internally" at Boeing. *Id.* at 20. Believing that the source must be some well-placed, easily identifiable person at Boeing—as Mr. Egler had led her to believe—Judge Conlon added that "with the specificity of the allegations in the second amended complaint, it's difficult for me to understand how Boeing doesn't know who the confidential source is." *Id.* at 9-10. Judge Conlon therefore concluded that "[g]iven these additional allegations," the Second Amended Complaint satisfied the PSLRA. *Id.* at 20.

**D.     The confidential source is revealed to be nothing like the person plaintiffs had alleged, but plaintiffs' counsel continues to defend their allegations and representations**

After the August 30, 2010 hearing, plaintiffs identified their confidential source to defendants as Mr. Singh. A preliminary investigation by defendants showed immediately that Mr. Singh was never a Boeing employee, let alone a "Boeing Senior Structural Analyst Engineer and Chief Engineer," as alleged. Dkt. 63 ¶ 139. Mr. Singh never worked on any "wing project"

tied to the lawsuit (as alleged), and he was not a member of the 787-8 "Mid-Body

Fuselage/Wing Integration Team." *Id.* Indeed, such a team never even existed. *See* Dkt. 93, Ex.

A ¶ 9 (Declaration of Karim Mustafa). In fact, Mr. Singh had been employed by an outside

contractor to perform low-level engineering work on a different airplane in development—the

787-9—and he only worked from September 2009 to January 2010, months after the events at

issue in this case. He had no access to any test files, nor would he have been in a position to

have seen emails from senior leadership to McNerney and Carson, had any such emails existed.

*See id.* ¶¶ 4-19.

After learning that Mr. Singh's actual position and access to information were nothing

like what was alleged, Boeing filed a renewed motion to dismiss the Second Amended

Complaint and argued that plaintiffs had committed a fraud on the court. *See* Dkt. 92. Boeing

included declarations from Boeing engineers and others who attested to Mr. Singh's actual

position as a low-level contract engineer and his lack of access to any information about the

issues in the case or to any information that could have shown scienter. *See* Dkt. 93.

In opposition, plaintiffs once again assured Judge Conlon that they stood by "all the

allegations attributed to the confidential source." Dkt. 95 at 1. They also supplied a declaration

from Ms. Stewart, interview notes, and an email message she sent to Mr. Egler about her

interview of Mr. Singh, that, plaintiffs argued, proved that the allegations attributed to Mr. Singh

were grounded in fact. *See* Dkt. 101-2. Plaintiffs' counsel also falsely told the Court that they

had provided Mr. Singh a full opportunity to review the allegations attributed to him and that he

had verified them. *See* Dkt. 101 at 1, 7, 13-14. For example, they asserted that "Mr. Singh *twice*

confirmed the information provided to plaintiffs *before* the SAC was filed with this Court." *Id.*

at 7 (emphasis in original).

Plaintiffs' counsel also made much of the fact that Boeing had not yet noticed Mr. Singh's deposition. *See* Dkt. 98 at 7 ("On August 30, 2010, the Court opened all discovery, enabling defendants to send out the deposition subpoena they sought.… ***But, defendants have not noticed the deposition***.") (emphasis in original). The clear implication of that point—which Judge Conlon no doubt credited—was that the Court could trust what plaintiffs' counsel had represented about Mr. Singh, and that Mr. Singh would testify in support of the Second Amended Complaint.

And the Court continued to credit the assurances of plaintiffs' counsel. At an October 14, 2010 hearing, Judge Conlon denied Boeing's renewed motion to dismiss the Second Amended Complaint. *See* Transcript of Oct. 14, 2010 hearing (Ex. C) at 3. Judge Conlon further ordered the parties to meet and confer immediately on plaintiffs' broad-ranging written discovery, with a report back to her that same day. *See id.* at 5. Discovery commenced, and over the course of the next five months, Boeing produced more than 13 million pages of documents and began preparing senior executives for depositions.

**E.      Mr. Singh repudiates the allegations attributed to him**

After the Court's October 14, 2010 ruling, Boeing served Mr. Singh with a subpoena for documents. *See* Dkt. 160 at 7-19 (PDF pagination) (Affidavit of Steve Y. Koh). On the specified return date, Mr. Singh himself appeared unbidden and unannounced at the offices of Boeing's outside counsel and produced an annotated copy of the subpoena, on which he had written that he had no documents related to paragraphs 139 through 142 of the Second Amended Complaint. *See id.*; *see also id.* ¶ 5. Mr. Singh also stated, during a brief meeting with defense counsel, that plaintiffs' investigator, Ms. Stewart, "had become 'angry' and 'aggressive' with him, telling him that he had to 'admit' to seeing documents he had never seen." *Id.* ¶ 6.

The next day, Mr. Singh again met with defense counsel and, in the course of that meeting, set forth his account of his interactions with Ms. Stewart in a sworn declaration. *See id.* ¶ 9; *see also id.*, Ex. 2 ¶ 2 (Declaration of Bishnujee Singh) (hereinafter "Singh Decl."). In that declaration, Mr. Singh repudiated each of the allegations attributed to him in the Second Amended Complaint. *See* Singh Decl. ¶ 7. Contrary to representations plaintiffs' counsel had just made to Judge Conlon, Mr. Singh declared that he had never seen or reviewed the allegations attributed to him until defense counsel gave him a copy six months after the complaint was filed. *See id.* ¶ 10.

Two weeks later, at his deposition, Mr. Singh met plaintiffs' counsel for the very first time. He gave sworn testimony confirming that he was never shown the allegations in their Second Amended Complaint until his meeting with defense counsel. *See* Dkt. 142 (Deposition of Bishnujee Singh) (hereinafter "Singh Dep."); *see also* Singh Decl. ¶ 10. Mr. Singh also repudiated all of plaintiffs' allegations about his position and personal knowledge. In particular, Mr. Singh testified that he has "never been a Boeing employee" and "never been a Boeing chief engineer." Singh Dep. at 57-58; *see also* Singh Decl. ¶ 11. Mr. Singh testified that he did not report to Larry Hall—whom he had "never met"—and did not "know what [Larry Hall's] job was at Boeing." Singh Dep. at 60; *see also* Singh Decl. ¶ 11. Mr. Singh further testified that he did not know what Terry Pham did at Boeing (or even if Pham is a man or woman); did not know whether Hall, Pham, and Denton were on the side-of-body team investigating the wing test results; and had not previously heard the term "wing integration team." Singh Dep. at 62-65; *see also* Singh Decl. ¶ 12.

Mr. Singh went on to testify that the allegations in paragraph 139 to 142 were "a lie." Singh Dep. at 60, 114-25; *see also* Singh Decl. ¶¶ 11-14. He testified that he did not have access

to wing test files and stress test files, that it was not part of his job to review such files, and that he
did not "even know if there is a stress test file or wing test file where information regarding the
tests is contained." Singh Dep. at 60-62. He testified that he had "never seen any communications
regarding any wing tests or stress tests addressed to Mr. McNerney, Mr. Carson, or any other
Boeing executive," *Id*. at 64, and that he "never saw anything dated from April or May of 2009
regarding impact of any test anomaly on the first flight of the 787." *Id*. at 68.

## F. Defendants' motion for reconsideration

In light of Mr. Singh's on-the-record repudiation of the Second Amended Complaint's
key allegations, defendants sought reconsideration of the Court's orders denying their earlier
motions to dismiss. *See* Dkt. 158. In response, plaintiffs no longer disputed that Mr. Singh had
never held a position of knowledge. Instead, plaintiffs argued that Mr. Singh was now unreliable
due to a supposed motive to lie in his deposition to avoid antagonizing Boeing. *See* Dkt. 193 at
12-15; *see also* Dkt. 148 at 4-6 (same argument made to support motion for class certification).

On March 7, 2011, the Court granted Boeing's motion for reconsideration, dismissing the
Second Amended Complaint with prejudice, and ruling that the Court's two earlier orders
declining to dismiss the Second Amended Complaint had "relied on false information concerning
Singh's position and his personal knowledge," which was "manifest factual error." *City of
Livonia*, 2011 WL 824604, at *5. Judge Conlon explained that when she denied the earlier
motions, she was not "aware that plaintiffs' counsel never met with Singh before adding the
confidential source allegations to the second amended complaint," or that "counsel apparently
never verified the hearsay reports of their investigators concerning Singh's position at Boeing or
the basis of his purported personal knowledge." *Id*. at *2. Judge Conlon noted that "[w]ithout
verifying the facts, plaintiffs' counsel represented to the court that the confidential source was a
former Boeing senior structural analyst and chief engineer who worked on the 787 team," and

-14-

that plaintiffs had "led the court to believe" the source had "direct access to and firsthand knowledge about the 787 test files and the distribution of the information to defendants in April and May 2009." *Id.* at *3. Judge Conlon further observed that plaintiffs did not dispute that they had "incorrectly identif[ied] Singh as a Boeing senior engineer with access to 787 test records by reason of his position," while "[i]n reality, he was employed as a line engineer by an outside contractor doing work at Boeing three or four months after the events in issue." *Id.* at *4. And Judge Conlon held that plaintiffs failed to offer "any evidence that suggests Singh had access to Boeing internal test files or personal knowledge about distribution of test results" to the individual defendants, McNerney and Carson. *Id.* Judge Conlon ruled that had "these facts [been] disclosed while the dismissal motions were pending, the court would not have concluded that the confidential source allegations were reliable, much less cogent and compelling," and the Second Amended Complaint "would have been dismissed." *Id.*

Notably, Judge Conlon specifically put aside plaintiffs' suggestion that "Singh told their investigators the truth, but he is lying now," concluding that "[i]t matters not." *Id.* What mattered was that "the informational basis for paragraphs 139-42 is at best unreliable and at worst fraudulent, whether it is Singh or plaintiffs' investigators who are lying." *Id.* "More significantly," explained Judge Conlon, the "unseemly conflict between plaintiffs' confidential source and plaintiffs' investigators could have been avoided by reasonable inquiry on the part of plaintiffs' counsel before filing the second amended complaint and, later, … making flawed representations directly to the court about the confidential source's position and firsthand knowledge of Boeing's internal testing documents." *Id.*

Judge Conlon noted that plaintiffs' counsel did not dispute that they "did not meet Singh until his deposition approximately six months after filing the second amended complaint, nor

does it appear that counsel conducted a reasonable investigation concerning the credibility and reliability of a purported key witness attributed with making the serious allegations in paragraphs 139-142." *Id.* Further, the Court found that plaintiffs ignored the report of their own investigator that Mr. Singh's information regarding the Boeing reporting hierarchy was "unreliable." *Id.* That report, Judge Conlon emphasized, should have been a "red flag" causing plaintiffs to step back and conduct further inquiry. *Id.* Instead, plaintiffs went ahead and filed the Second Amended Complaint, which contained "disinformation" and misrepresented "[m]aterial facts concerning the confidential source's position and personal knowledge." *Id.* at *5. Once the truth behind those misrepresentations was revealed, Judge Conlon determined that "[t]he information attributed to the confidential source in paragraphs 139-142 should not only have been steeply discounted, it should not have been considered at all." *Id.*

## G.      Plaintiffs' motion for reconsideration

Plaintiffs sought reconsideration of the March 7, 2011 order dismissing the Second Amended Complaint, arguing that the dismissal was procedurally improper. Boeing opposed the motion and sought sanctions under the PSLRA based on the Court's findings that plaintiffs' counsel made misrepresentations to the Court and failed to reasonably investigate their confidential source allegations. Boeing relied on 15 U.S.C. § 78u-4(c)(1), which requires that, "upon final adjudication of the action" in a private securities case, "the court shall include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." Dkt. 213 at 10 & n.7. This Court denied plaintiffs' motion for reconsideration, but held that defendants' request for sanctions was procedurally barred because defendants had not filed a Rule 11 motion. *See* Dkt. 233 at 5 n.3.

### H.  Plaintiffs' appeal and Defendants' cross-appeal for sanctions

Plaintiffs appealed from the three dismissal orders (Dkts. 53, 201, 233).  Defendants cross-appealed, seeking a mandatory sanctions determination under the PSLRA.  Even in their appellate papers, plaintiffs continued to misrepresent the facts regarding their confidential source.  Plaintiffs asserted that Mr. Singh worked "on the very 787 Dreamliner project in question," App. Dkt. 31 at 2, even though plaintiffs' counsel knew as of February 2010 that Mr. Singh worked on the 787-9 and not on the 787-8, *see* Dkt. 153 ¶ 27 (Declaration of Elizabeth Stewart).  Plaintiffs also touted "Singh's access and knowledge," App. Dkt. 31 at 11, even though it had long been established that Mr. Singh had no access to purported internal emails establishing Boeing's scienter, and that Mr. Singh had never worked on the part of the 787-8 at issue in this lawsuit.

At oral argument before the Court of Appeals, plaintiffs' counsel was finally forced to concede what was obvious in the record, notwithstanding nearly two years of gamesmanship:

> HONORABLE POSNER:  The problem you have with Singh is he wasn't employed by Boeing, right?
>
> MR. ISAACSON:  He was employed by Infotech, but with a contract—
>
> HONORABLE POSNER:  Don't fence with me.  I asked you.  He's not employed by Boeing; is that correct?
>
> MR. ISAACSON:  As a matter of labor law, he was not employed by Boeing.
>
> HONORABLE POSNER:  What do you mean it's a matter of labor law?  He's not an employee of Boeing?  Just say yes or no.
>
> MR. ISAACSON:  He's not an employee of Boeing.
>
> ….
>
> HONORABLE POSNER:  You admit he's not—that his biography is phony, right?
>
> MR. ISAACSON:  Well—

-17-

> HONORABLE POSNER: He wasn't employed by Boeing. He's not a Boeing chief engineer, he never was. I don't know how that helps your case that he has a phony resume.
>
> MR. ISAACSON: I don't think that it helps our case that Boeing contends he has a phony resume—
>
> HONORABLE POSNER: What do you mean Boeing contends? … Are you really still suggesting that he is employed by Boeing or was employed?
>
> MR. ISAACSON: I think he's probably not, your Honor.

Transcript of Feb. 25, 2013 Seventh Circuit argument (Ex. A) at 7, 12.

The Court of Appeals affirmed the orders dismissing plaintiffs' claims, holding that plaintiffs' fraud allegations were baseless and that defendants had neither the motive to commit fraud nor the duty to disclose the details of an engineering investigation relating to a product still in development. *City of Livonia*, 711 F.3d at 758-59. In particular, the Court of Appeals ruled that Judge Conlon had rightly dismissed the First Amended Complaint, which alleged only the vague existence of "internal e-mails" as support for the allegations of fraud, because such evidence was clearly insufficient to support an inference of scienter under Seventh Circuit precedent. *See id*. at 759. The Court of Appeals then ruled that Judge Conlon had properly dismissed the Second Amended Complaint, with prejudice, as well, noting that Judge Conlon "thought [plaintiffs' counsel's] failure to attempt to verify the allegations in the investigator's notes amounted to a fraud on the court." *Id.* at 760. The Court of Appeals agreed with Judge Conlon that plaintiffs' abandonment of Mr. Singh—"and with him their claim of access to internal Boeing emails that might establish fraud"—was fatal, as that had been "[t]he only thing that persuaded the district judge not to dismiss the second amended complaint." *Id.* at 761.

The Court of Appeals also granted defendants' cross-appeal, ruling that the district court erred in failing to determine whether sanctions should be awarded against plaintiffs' counsel. Noting that Judge Conlon's "harsh criticism of the plaintiffs when she dismissed the second

amended complaint indicated agreement" with defendants' assertions that plaintiffs' lawyers had

violated Rule 11, the Court of Appeals signaled its own agreement, as well. *Id*. at 761. It ruled

that plaintiffs' counsel had made "confident assurances in their complaints about a confidential

source…even though none of the lawyers had spoken to the source"; it accused plaintiffs'

counsel of "ostrich tactics" for failing to ask questions of their source; and it suggested that

plaintiffs' counsel failed to ask questions of their source "for fear that the inquiry might reveal

stronger evidence of *their* scienter regarding the authenticity of the confidential source than the

flimsy evidence of scienter they were able to marshal against Boeing." *Id*. at 762. Furthermore,

the Court of Appeals recognized that plaintiffs' counsel had engaged in similar misconduct in

other cases, holding that "[r]ecidivism is relevant in assessing sanctions." *Id*. It ordered the

district court on remand to consider "whether to impose Rule 11 sanctions on the plaintiffs'

lawyers and if so in what amount." *Id*. Those are the only questions now before this Court.

### III.    ARGUMENT

**A.    The legal standard for imposing sanctions under the PSLRA**

The PSLRA, in providing for mandatory sanctions review at the close of every private

securities case, removes much of the discretion that a district court might exercise in sanctions

inquiries in other contexts. As the Court of Appeals ruled, the PSLRA requires that "'upon final

adjudication of the action, the court *shall* include in the record specific findings regarding

compliance…with each requirement' of Rule 11, and if a violation is found 'the court *shall*

impose sanctions' on a party or lawyer who has violated the rule. 15 U.S.C. § 78u-4(c)(1), (2)."

*Id*. at 761 (emphasis added). Moreover, where the sanctions review shows the "substantial

failure of any complaint to comply with any requirement of Rule 11(b)," the PSLRA creates "*a*

*presumption* that the appropriate sanction…is an award to the opposing party of the reasonable

attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(c)(3)(A) (emphasis

added).  A complaint is a "substantial failure" under this provision where the Rule 11 violation

"'infect[ed] the entire pleading,'" *In re Star Gas Sec. Litig.*, 745 F. Supp. 2d 26, 39 (D. Conn.

2010) (quoting Fed. R. Civ. P. 11(b), advisory committee's note to 1993 amendments), or where

the flawed allegations formed "the cornerstone of plaintiff's theory of the case," *In re Austl. &*

*N.Z. Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255, 269 (S.D.N.Y. 2010).

As to the substance of the sanctions review itself, the language of the PSLRA quoted

above makes clear that this Court's inquiry is to be informed by reference to Rule 11.  Rule 11

forbids attorneys from making representations to the court unless they have personally

determined that the factual allegations they are making are well-founded.  In particular, Rule 11

provides that "[b]y presenting to the court a pleading, written motion, or other paper—whether

by signing, filing, submitting, or later advocating it—an attorney…certifies that to the best of the

person's knowledge, information, and belief, formed after an inquiry reasonable under the

circumstances," that "the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b);

*see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991); *Cuna Mut. Ins. Soc. v. Office &*

*Prof'l Empls.' Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (the court must

"undertake an objective inquiry into whether the party or his counsel should have known that his

position is groundless") (internal quotation marks and citation omitted); *Katz v. Household Int'l,*

*Inc.*, 91 F.3d 1036, 1038 (7th Cir. 1996) (upholding district court's imposition of sanctions in

securities litigation on the ground that neither of plaintiff's theories "was reasonably grounded in

fact or law").

Rule 11 violations may be based on statements in written submissions, as well as

"reaffirming to the court" and "advocating positions" taken in underlying papers, after learning

that they no longer have merit.  Fed. R. Civ. P. 11(b), advisory committee's note to 1993

amendments; *see also In re Bees*, 562 F.3d 284, 289 (4th Cir. 2009) (explaining that "an oral statement may form a basis for Rule 11 sanctions only if it advocates a contention previously contained within a written submission") (emphasis omitted); *Moazed v. First Union Mortg. Corp.*, 221 F.R.D. 28, 31 (D. Conn. 2004) ("[T]he new amendments make it clear that sanctions may be imposed if oral representations are presented to the court and flow directly from the signed papers.").

In addition to the procedural differences noted above that differ from usual Rule 11 practice, the PSLRA also imposes on plaintiffs' counsel a more stringent pre-filing investigative burden than applies in other contexts. Congress included this heightened investigative requirement in order to help effectuate the PSLRA's essential purpose of curtailing the filing of baseless securities lawsuits—a requirement of which plaintiffs' counsel should be well aware. The PSLRA "leaves a plaintiff's counsel with a greater than usual burden of investigation before filing a securities fraud complaint" because the legislature "deliberately raised the entry bar to discovery both through the PSLRA's heightened pleading standards and by other measures." *Auto. Indus. Pension Trust Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012) (involving Robbins Geller); *accord Tellabs*, 513 F.3d at 711 ("Because the Reform Act requires detailed fact pleading of falsity, materiality, and scienter, the plaintiff's lawyers in securities-fraud litigation have to conduct elaborate pre-complaint investigations…."); *Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*, No. 10 C 7031, 2013 WL 1286700, at *13 (N.D. Ill. Mar. 27, 2013) (concluding that plaintiffs "filed this lawsuit before conducting a proper presuit investigation" and that plaintiffs used the 60-day period for amendment to "conduct an investigation that it should have conducted before filing this lawsuit") (internal quotation marks

and citation omitted) (involving Robbins Geller).[6]  Plaintiffs' counsel's conduct in this matter, from the filing of the original complaint through the appellate proceedings, demonstrates that they were bent on circumventing these statutory protections.

**B.    Judge Conlon's findings are sufficient to establish that plaintiffs' counsel violated Rule 11 and that sanctions should be awarded**

Judge Conlon, who relied on the misrepresentations and other misconduct that induced her to uphold a complaint she should have dismissed, has already made findings sufficient to warrant the imposition of sanctions against plaintiffs' counsel.  Judge Conlon found that plaintiffs' counsel both (1) failed to conduct an appropriate pre-filing inquiry of their confidential source, and (2) made fundamental misrepresentations about the nature of their inquiry and the position and personal knowledge of their confidential source.  In granting defendants' motion for reconsideration, Judge Conlon determined that plaintiffs' counsel did not "conduct[] a reasonable investigation concerning the credibility and reliability of a purported key witness attributed with making the serious allegations in paragraphs 139-142" of the Second Amended Complaint.  *City of Livonia*, 2011 WL 824604, at *4.  As a result, plaintiffs' counsel made "flawed representations directly to the court," representations that "could have been avoided by reasonable inquiry on the part of plaintiffs' counsel before filing the second amended complaint."  *Id.*  Judge Conlon based those conclusions on several specific findings:

- Plaintiffs' counsel "never met with Singh before adding the confidential source allegations to the second amended complaint."  *Id.* at *2.

- Plaintiffs' counsel "never disclosed paragraphs 139-142 to Singh; rather it was defense counsel who first showed Singh the allegations attributed to him six months after the second amended complaint was proffered to the court."  *Id.*

_____

[6] In a case such as this that alleges fraud, the heightened pleading standard established by Federal Rule of Civil Procedure 9(b) also applies to increase plaintiffs' counsel's pre-filing investigative burden.  As the Seventh Circuit has explained, the purpose of the heightened pleading requirement in fraud cases "is to force the plaintiff to do more than the usual investigation before filing his complaint."  *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999).

- "Without verifying the facts, plaintiffs' counsel represented to the court"—falsely and repeatedly—"that the confidential source was a former Boeing senior structural analyst and chief engineer who worked on the 787 team." *Id.* at *3.

- Plaintiffs' counsel "apparently never verified the hearsay reports of their investigators concerning Singh's position at Boeing or the basis of his purported personal knowledge" of internal Boeing communications. *Id.* at *2.

- Plaintiffs' counsel ignored a "red flag" in their own investigator's report, which noted that the only fact that the investigator attempted to independently verify—that is, "Singh's information regarding Boeing's Structural Design reporting hierarchy"— was "unreliable." *Id.* at *4.

Indeed, nothing alleged about Mr. Singh was ever corroborated by plaintiffs' counsel. More astonishingly, there is no indication that plaintiffs' counsel ever even attempted such corroboration. Mr. Singh's supposed position at Boeing could have been confirmed or disproven by contacting Infotech or others at Boeing. Plaintiffs' counsel could have asked Mr. Singh for references, who could have been contacted. At the very least, someone from plaintiffs' counsel's office could have talked to Mr. Singh. But neither Mr. Egler nor any other lawyer from the Robbins Geller firm ever personally followed up with Mr. Singh, declining even to make a telephone call. *See Portnoy v. Wherehouse Entm't Co.*, 120 F.R.D. 73, 74 (N.D. Ill. 1988) (where telephone call would have revealed that factual basis for allegations did not exist, Rule 11 sanctions will be imposed for failure to make a reasonable inquiry); *see also In re Kunstler*, 914 F.2d 505, 516 (4th Cir. 1990) ("complaint containing…allegations based on information which minimal factual inquiry would disprove, will subject the author to sanctions"); *accord Security Farms v. Int'l Bhd. of Teamsters*, 124 F.3d 999, 1017 & n.24 (9th Cir. 1997).

Thus, plaintiffs' counsel's advocacy in support of the Second Amended Complaint perpetrated a fraud on this Court. In Judge Conlon's words, "fundamental" and "material" misrepresentations were made to this Court. Plaintiffs' counsel knowingly led Judge Conlon to

believe that Mr. Singh was a high-ranking insider in a position to see emails to the CEO, and that Mr. Singh could testify to those matters—points that were critical to Judge Conlon's decision to uphold the complaint—when counsel had no basis for making such representations. Plaintiffs' counsel repeatedly vouched for their source and assured Judge Conlon that what she believed about the source was well-founded and supported by reasonable inquiry under the circumstances—even though plaintiffs' counsel had never talked to the source, had never corroborated anything purportedly provided by the source, and knew that the source had refused to speak further with the investigator or to cooperate. There was no reasonable basis for any advocacy assuring Judge Conlon—even implicitly—that the source would testify in support of what was alleged, or that Judge Conlon should persist in any belief that plaintiffs actually had a "smoking gun" witness in support of their case.

While the misrepresentations concerning Mr. Singh—and the defense of those allegations—are the most egregious misconduct in this matter (and opened the case to broad-ranging and invasive discovery), plaintiffs' counsel's filing of the original complaint and First Amended Complaint violated Rule 11 as well because each was filed without a reasonable basis for the allegations contained therein. Plaintiffs had not hired any investigator at the time they filed the original complaint. The original complaint was nothing more than a product of news articles stating that Boeing's stock price declined after Boeing announced the delay of the 787's first flight, coupled with an unfounded assumption that Boeing executives must have lied. This Court has specifically criticized such "shoot first, aim later" practices. *See Boca Raton*, 2013 WL 1286700, at *13; *accord In re Brightpoint, Inc. Sec. Litig.*, No. IP99-0870-C-H/G, 2001 WL 395752, at *30 (S.D. Ind. Mar. 29, 2001) ("Rule 9(b) and the PSLRA dictate that a drop in stock price, even a big drop, after a public announcement of bad news, is not the equivalent of an

invitation for shareholders to think of a plausible theory of fraud, file suit, and then sort out the details later.").

Plaintiffs' counsel's conduct in connection with the First Amended Complaint also violated Rule 11, but for additional reasons beyond the lack of an adequate investigation. On the eve of its filing, plaintiffs' lead counsel, Mr. Egler, received an email message from plaintiffs' investigator, Ms. Stewart, detailing the contents of her conversation with Mr. Singh. That message made clear that some of the information provided by Mr. Singh was not reliable, and both Judge Conlon and the Court of Appeals have already found that that message should have been a "red flag" to plaintiffs' counsel. Further, it is now known that no one had corroborated any of the information. Yet Mr. Egler filed the First Amended Complaint, which included a newly added reference to "internal e-mails" among Boeing employees and individual defendants. Mr. Egler had not seen any such emails, nor had he personally talked to the source that had purportedly seen them. In short, plaintiffs' counsel realized that their case hung in the balance and yet Mr. Egler filed unsupported allegations about "internal e-mails" without any corroboration of the purported information and ignoring the investigator's warning that portions of the source's story were unreliable. A reasonable attorney claiming to have a "smoking gun" witness in a high-stakes case would have at least called the witness, and likely would have tried to corroborate the information and obtain a sworn statement, as soon as possible. Plaintiffs' counsel here took none of those reasonable actions. Given what plaintiffs' counsel alleged—and later forcefully advocated—plaintiffs' counsel violated Rule 11(b). *See Unioil, Inc. v. E.F. Hutton & Co.*, 809 F.2d 548, 557 (9th Cir. 1986) (sanctioning attorney for failing to properly investigate claims despite "ample time for investigation" and "no severe constraints of time or money that impeded [Plaintiffs'] inquiry").

**C.      Robbins Geller's prior misconduct further warrants the imposition of sanctions**

In considering whether a party or its counsel has engaged in a Rule 11 violation, courts are instructed to consider whether the conduct at issue "was part of a pattern of activity, or an isolated event" or "whether the person has engaged in similar conduct in other litigation."  Fed. R. Civ. P. 11(b), advisory committee's note to 1993 amendments; *accord Reed v. Great Lakes Cos.*, 330 F.3d 931, 936 (7th Cir. 2003) (in deciding whether to sanction a litigant, a court "can take into account a history of frivolous litigation").  As the Seventh Circuit held in this case, "[r]ecidivism is relevant in assessing sanctions."  *City of Livonia*, 711 F.3d at 762.  That factor applies here to add substantial weight to the conclusion that sanctions should be awarded against plaintiffs' counsel.

The Robbins Geller firm has engaged in a clear pattern and practice of similar behavior in other recent litigation, which has been repeatedly called out by federal courts.  For example, in *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210 (N.D. Ga. 2012), the Robbins Geller firm filed a complaint including allegations based on a confidential witness who allegedly had personal knowledge of the defendants' scienter, but it was ultimately revealed that the witness did not work for the defendants during the relevant time period and had no such personal knowledge.  Plaintiffs' counsel then offered a "laundry list of excuses" for their "disturbing" conduct.  *Id.* at 1232.  One of those excuses was the argument that attorneys in securities fraud cases must rely blindly on investigators' interviews with confidential sources in order to avoid becoming witnesses in the case.  The court there found that excuse "itself disturbing," *id.*, suggesting that counsel's failure to investigate the confidential source allegations may have reflected instead a desire to maintain "the cover of plausible deniability," *id.* at 1233— echoing the Court of Appeals' reference to "ostrich tactics" in this case, *City of Livonia*, 711 F.3d at 762.  Although the *Belmont Holdings* court decided against imposing sanctions, it did so

-26-

"reluctantly," emphasizing that the issue was "close" and "difficult." 896 F. Supp. 2d at 1232, 1233.

There are other examples where the same firm filed complaints either based on an insufficient pre-suit investigation or containing allegations purportedly based on confidential sources who later were discovered to lack personal knowledge of the allegations:

- In *Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*, No. 10 C 7031, 2013 WL 1286700, at *13 (N.D. Ill. Mar. 27, 2013), this Court concluded that Robbins Geller "filed this lawsuit before conducting a proper presuit investigation" and used the 60-day period for amendment to "conduct an investigation that it should have conducted before filing this lawsuit," referring to plaintiff's tactics as "shoot first, aim later." (internal quotation marks and citation omitted).

- In *City of Pontiac Gen. Empls.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 834 n.9 (W.D. Mich. 2012), the court concluded that Robbins Geller used sources that lacked personal knowledge of facts establishing scienter: "[N]one of the [confidential witnesses] had contact with Defendants or was in a position to have access to financial forecasts. Plaintiffs argue that the CWs had personal knowledge of the information they provided, but that is not the point. The point is that the CWs cannot testify as to what Defendants knew. Thus, the CW statements cannot, either alone or in combination with all of the other circumstances, establish a strong inference of scienter."

- In *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012), the court held that Robbins Geller submitted contradictory and unreliable confidential source statements: "Combined with the lack of information about the positions and responsibilities of each of the confidential witnesses, the questionable basis for the information of each of the witnesses, and the contradictory statements, the hearsay nature of the statements reported render Plaintiffs' confidential witnesses unreliable for purposes of demonstrating falsity under PSLRA."

- In *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 594-95 (S.D.N.Y. 2011), the court concluded that Robbins Geller used three confidential witnesses who never worked for the company or had contact with individual defendants.

- In *Livingston v. Cablevision Systems Corp.*, No. 12-CV-377 (KAM) (SMG), 2013 WL 4763430, at *9, n.5 (E.D.N.Y. Sept. 5, 2013), the court dismissed with prejudice a securities-fraud complaint filed by Robbins Geller where, as here, the confidential

sources were unable to support the allegations attributed to them, finding that "[t]he Amended Complaint fails…to allege any facts indicating that the CWs [confidential witnesses] can establish that the Individual Defendants knew with empirical certainty that [the Cablevision CEO's] statements were false at the time he made them."

- In *City of Taylor Gen. Empls. Ret. Sys. v. Magna Int'l, Inc.*, No. 12 Civ. 3553(NRB), 2013 WL 4505256, at *1, *27 (S.D.N.Y. Aug. 23, 2013), the court dismissed with prejudice a securities fraud complaint filed by Robbins Geller because the complaint "fail[ed] to allege any material misstatements or omissions, [did] not adequately allege scienter, and, indeed, border[ed] on the absurd"; the court criticized the complaint for its "total lack of even arguable merit."

A 2013 district court decision from California joins this long line of cases finding that Robbins Geller failed to conduct adequate pre-filing investigations. In *In re Cisco Systems, Inc. Securities Litig.*, No. C 11-1568 SBA, 2013 WL 1636384 (N.D. Cal. Apr. 16, 2013), the court denied Robbins Geller's motion for an extension of time to file an amended complaint. Robbins Geller argued that plaintiffs needed additional time to "'renew [their] prior investigation' in [an] attempt to secure new evidence to support their showing of falsity and scienter," suggesting that "more former Cisco employees *may* now be willing to come forward with facts corroborating plaintiffs' allegations and other facts corroborating plaintiffs' allegations *may* have come to light." *Id*. at *1 (emphasis in original). The court concluded that Robbins Geller's arguments were "unsupported and speculative," "wishful thinking," and that Robbins Geller "had almost a year to investigate their claims." *Id*. The court also concluded that Robbins Geller was "required to have completed [its] investigation *before* filing suit, *not after*." *Id*. (emphasis in original).

## D. Defendants are entitled to all "reasonable attorneys' fees and other expenses incurred in the action"

The PSLRA creates "a presumption that the appropriate sanction…for substantial failure of any complaint to comply with any requirement of Rule 11(b)…is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C.

§ 78u-4(c)(3)(A). A complaint that is frivolous or abusive is a "substantial failure." *See Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 223 (2d Cir. 2002). When the Rule 11 violation concerns a responsive pleading (or advocacy in support of that pleading), an award of all reasonable attorneys' fees resulting from that misconduct is the appropriate sanction. 15 U.S.C. § 78u-4(c)(3)(A)(i).

The presumption under the PSLRA may be rebutted "only upon proof by the party or attorney" that the award "will impose an unreasonable burden on that party or attorney and would be unjust," or that the violation was "de minimis." 15 U.S.C. § 78u-4(c)(3)(B). Plaintiffs' counsel cannot plausibly claim that it would "impose an unreasonable burden" to require them to pay Boeing's fees and expenses. Robbins Geller has received billions of dollars in settlements and judgments. *See* http://www.rgrdlaw.com/firm.html. And as explained above, Robbins Geller's Rule 11 violations were not *de minimis*. They began with the filing of the original baseless complaint, continued throughout the firm's advocacy of the case, and formed the very foundation of plaintiffs' claims.

Defendants accordingly are entitled to all of their reasonable fees and expenses in defending this lawsuit—including but not limited to those incurred in defending against the original complaint; opposing the First Amended Complaint; resisting the Second Amended Complaint; complying with the voluminous and invasive discovery based on the Second Amended Complaint; moving for reconsideration of the denials of defendants' motions to dismiss the Second Amended Complaint; and defending against plaintiffs' motions for reconsideration of the case's dismissal; and defending against the Seventh Circuit appeal. Defendants will submit appropriate support for all such fees and expenses as directed by this Court.

-29-

## IV.    CONCLUSION

In sum, plaintiffs' counsel filed all three complaints in this case without doing "an inquiry reasonable under the circumstances" to determine whether the factual contentions in those complaints had evidentiary support, as required by Rule 11.  The key factual contentions, which turned out to be false, formed the cornerstone of plaintiffs' case.  As a result of plaintiffs' counsel's conduct, each of plaintiffs' complaints reflected a "substantial failure…to comply with…Rule 11(b)."  The presumption established by the PSLRA therefore requires an award to defendants of all of their "reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C.§ 78u-4(c)(3)(A)(ii).  Defendants will file statements demonstrating their recoverable fees and expenses and other information as requested by the Court.


Dated: September 27, 2013                      Respectfully submitted,

                                               By: /s/ Eric D. Brandfonbrener_____


Pravin B. Rao (#06230097)              Steve Y. Koh
Patrick M. Collins (#06206686)         Eric B. Wolff
Eric D. Brandfonbrener (#06195674)     Ryan M. Spear
PERKINS COIE LLP                       PERKINS COIE LLP
131 South Dearborn Street, Suite 1700  1201 Third Avenue, Suite 4900
Chicago, Illinois 60603-5559           Seattle, Washington 98101-3099
Tel: (312) 324-8400                    Tel: (206) 359-8000
Fax: (312) 324-9400                    Fax: (206) 359-9000
prao@perkinscoie.com                   skoh@perkinscoie.com
pcollins@perkinscoie.com               ewolff@perkinscoie.com
ebrand@perkinscoie.com                 rspear@perkinscoie.com

CERTIFICATE OF SERVICE

I, Eric D. Brandfonbrener, hereby certify that on September 27, 2013, a true and correct copy of the foregoing **DEFENDANTS' MEMORANDUM IN SUPPORT OF THE IMPOSITION OF SANCTIONS PURSUANT TO THE PRIVATE SECURITIES LITIGATION REFORM ACT AND RULE 11** was filed electronically with the United States District Court for the Northern District of Illinois - Eastern Division.  Notice of this filing has been sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's ECF system. Courtesy copies were also provided by email to Plaintiff's counsel.

By:     /s/ *Eric D. Brandfonbrener*