# EXHIBIT B

1

```
 1              IN THE UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3

 4   CITY OF LIVONIA EMPLOYEES'          )   Docket No. 09 C 7143
     RETIREMENT SYSTEM, et al.,          )
 5                                       )
                        Plaintiffs,      )
 6                                       )
                                         )
 7              vs.                      )
                                         )   Chicago, Illinois
     THE BOEING COMPANY, et al.,         )   August 30, 2010
 8                                       )   9:15 o'clock a.m.
                        Defendants.      )
 9

10           TRANSCRIPT OF PROCEEDINGS - MOTION
           BEFORE THE HONORABLE SUZANNE B. CONLON
11

12   APPEARANCES:

13
     For the Plaintiffs:    ROBBINS GELLER RUDMAN & DOWD LLP
14                          BY:  MR. THOMAS E. EGLER
                            655 West Broadway, Suite 1900
15                          San Diego, CA  92101
                            (619) 231-1058
16
                                and
17
                            MILLER LAW LLC
18                          BY:  MR. MARVIN ALAN MILLER
                            115 South LaSalle Street, Suite 2910
19                          Chicago, IL  60603
                            (312) 332-3400
20

21

22

23
     Court Reporter:        MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
24                          Official Court Reporter
                            219 S. Dearborn Street, Suite 1854-B
25                          Chicago, Illinois  60604
                            (312) 435-5639
```

2

```
 1   APPEARANCES CONTINUED:

 2
     For the Defendants:    KIRKLAND & ELLIS LLP
 3                          BY:  MR. MARK ROBERT FILIP
                            300 North LaSalle Street
 4                          Chicago, IL  60654
                            (312) 862-2000
 5
                                   and
 6
                            KIRKLAND & ELLIS
 7                          BY:  MR. CRAIG S. PRIMIS
                            655 Fifteenth St., NW
 8                          Washington, DC 20005
                            (202) 879-5921
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

| 09:28:18 | 1 | (The following proceedings were had in open court:) |

09:28:18  1   (The following proceedings were had in open court:)

09:28:18  2   THE CLERK:  09 C 7143, City of Livonia Employees'

09:28:32  3   Retirement System v. Boeing Company, et al., status, motion.

09:28:38  4   MR. MILLER:  Good morning, your Honor; Marvin Miller

09:28:40  5   on behalf of plaintiff.

09:28:41  6   MR. EGLER:  Good morning, your Honor; Thomas Egler on

09:28:43  7   behalf of plaintiffs.

09:28:44  8   MR. FILIP:  Good morning, your Honor; Mark Filip on

09:28:46  9   behalf of the defendants.

09:28:47  10  MR. PRIMIS:  Craig Primis from Kirkland & Ellis on

09:28:51  11  behalf of the defendants.

09:28:52  12  THE COURT:  Good morning.  This matter comes up on

09:28:54  13  the defendants' motion to certify an order for interlocutory

09:29:01  14  appeal.

09:29:04  15  I have read the defendants' two submissions and the

09:29:09  16  final submission and reviewed the key cases, but I didn't give

09:29:17  17  you an opportunity to make whatever oral remarks that each

09:29:22  18  side would like to make with regard to the motion because

09:29:24  19  these are not routine motions, as you know.  The Court of

09:29:29  20  Appeals takes very few interlocutory appeals.  It's really the

09:29:34  21  exception, not the general rule.

09:29:36  22  MR. FILIP:  Yes, your Honor.  My partner, Mr. Primis,

09:29:38  23  is going to speak to the issue.

09:29:40  24  MR. PRIMIS:  Good morning.  Thank you, your Honor.

09:29:42  25  Thank you for the opportunity to be heard.

4

09:29:43 1    As we set out in our papers which the Court has read,

09:29:47 2 we believe that this case presents a unique opportunity to

09:29:50 3 reconcile what we think is the tension between the

09:29:54 4 Higginbotham ruling and the Tellabs ruling, and specifically

09:29:57 5 the reason why we think it presents a good opportunity for a

09:30:01 6 1292 clarification is that the plaintiffs have taken the

09:30:05 7 position that Higginbotham is limited to its facts, and if

09:30:09 8 that is, in fact, the case, it represents a significant change

09:30:13 9 that the defendants do not believe is warranted in the law

09:30:16 10 governing confidential sources.  The second -- so that's a

09:30:20 11 clean and control and legal issue we believe the Court of

09:30:23 12 Appeals can and should weigh in on.

09:30:25 13    And in addition, because this case is predicated on a

09:30:28 14 single confidential source that's not corroborated by other

09:30:32 15 confidential sources, we also believe that factually, it tests

09:30:35 16 the outer limits of what the Seventh Circuit would allow in

09:30:38 17 the context of a PSL or a case pleaded on the basis of

09:30:43 18 confidential sources.

09:30:43 19    And so for those two reasons, both the factual

09:30:46 20 context and the legal tension between two controlling

09:30:49 21 decisions, and the fact that the presence of the confidential

09:30:53 22 source allegations was the difference between dismissal on the

09:30:57 23 one hand in the first motion and survival in the second, that

09:31:01 24 this would be an appropriate case for 1292 review.

09:31:05 25    THE COURT:  Well, is your position -- I just want to

09:31:08  1   make sure I understand your position.  Is your position that

09:31:12  2   Higginbotham requires multiple confidential sources?  Is there

09:31:19  3   a per se rule in your view established by Higginbotham?

09:31:22  4              MR. FILIP:  No, the defendants --

09:31:23  5              THE COURT:  Is it quantity rather than quality?

09:31:26  6              MR. FILIP:  No, it's quality.  We don't take the

09:31:28  7   position that there is a one confidential source rule.  What

09:31:32  8   we do identify for the Court is that the context here is that

09:31:36  9   we do just have one confidential source.  That doesn't make it

09:31:39  10  per se invalid under Higginbotham.  But given all the concerns

09:31:43  11  about anonymity and the need for particularity that are

09:31:47  12  identified in Higginbotham, we do think that the presence of

09:31:50  13  just one source uncorroborated by others, which was the fact

09:31:54  14  that was present in both Higginbotham and Tellabs, that that

09:31:57  15  does test the outer bounds of where a confidential source can

09:32:01  16  help substantiate a complaint and we think pushes it much

09:32:04  17  closer into the Higginbotham camp.

09:32:06  18              Now, if Tellabs has had the dramatic effect that the

09:32:11  19  plaintiffs suggested, that is a legal issue that needs

09:32:13  20  clarification because this is a recurring issue.  As the Court

09:32:15  21  has seen, many cases are pleaded on the basis of these

09:32:18  22  confidential sources now.  And where defendants confront with

09:32:21  23  just one and it's unidentified and not corroborated, we do

09:32:25  24  think that tests the outer bounds.

09:32:27  25              Conceivably, there could be sufficient allegations

6

| | | |
|---|---|---|
| 09:32:30 | 1 | about one individual source that may be against past, but we |
| 09:32:34 | 2 | don't think that's been met here, and that's why we think to |
| 09:32:38 | 3 | the extent Higginbotham can be read that way, there is a |
| 09:32:41 | 4 | tension and conflict between Higginbotham and Tellabs. |
| 09:32:44 | 5 | THE COURT: Wasn't there a qualitative difference |
| 09:32:48 | 6 | between the confidential sources in Tellabs and Higginbotham? |
| 09:32:55 | 7 | You have a Brazilian subsidiary, and there wasn't anything |
| 09:33:00 | 8 | connecting the corporate headquarters in terms of knowledge, |
| 09:33:07 | 9 | what this Brazilian operation was doing that was fraud. They |
| 09:33:14 | 10 | certainly had access to records. |
| 09:33:17 | 11 | MR. PRIMIS: There was a difference between the |
| 09:33:18 | 12 | confidential sources in Higginbotham -- |
| 09:33:20 | 13 | THE COURT: And their -- |
| 09:33:21 | 14 | MR. PRIMIS: -- and Tellabs. |
| 09:33:22 | 15 | THE COURT: And their ability to provide reliable |
| 09:33:25 | 16 | information. My question is really was there a qualitative |
| 09:33:31 | 17 | difference between the confidential informants or sources in |
| 09:33:36 | 18 | Tellabs and Higginbotham, and does it make a difference or |
| 09:33:40 | 19 | not? |
| 09:33:41 | 20 | MR. PRIMIS: Well, certainly there was a difference. |
| 09:33:46 | 21 | In the Tellabs case, the Court of Appeals noted that there |
| 09:33:49 | 22 | were 26 confidential sources, and, significantly, they |
| 09:33:51 | 23 | provided detailed information and they corroborated one |
| 09:33:53 | 24 | another; whereas in the Higginbotham case, there was less |
| 09:33:58 | 25 | detail and there was no corroboration. |

| | | |
|---|---|---|
| 09:33:59 | 1 | So the -- certainly there is a factual distinction |
| 09:34:02 | 2 | between those two cases, and our point is that if the -- and |
| 09:34:06 | 3 | we read them as just factually different cases. What's |
| 09:34:10 | 4 | happening here is the plaintiffs have essentially said |
| 09:34:13 | 5 | Higginbotham can only apply when you have a foreign subsidiary |
| 09:34:17 | 6 | with lack of detailed allegations about the sources and an |
| 09:34:21 | 7 | accounting issue, and that's limited to its facts. We don't |
| 09:34:24 | 8 | think Tellabs says that. To the extent Tellabs can or is |
| 09:34:29 | 9 | going to be read to say that, we think that's an important |
| 09:34:32 | 10 | issue that requires clarification because the allegations here |
| 09:34:34 | 11 | are very far from the 26 mutually corroborating sources that |
| 09:34:38 | 12 | were present in Tellabs, in fact, sufficient by 12(b)(6) by |
| 09:34:44 | 13 | the Court of Appeals. |
| 09:34:44 | 14 | So that's the issue that we think is framed out very |
| 09:34:48 | 15 | clearly here because the way the cases have been plead and the |
| 09:34:50 | 16 | two different rulings that we received depending on the |
| 09:34:53 | 17 | addition of the four new paragraphs in the third amended |
| 09:34:56 | 18 | complaint. |
| 09:34:56 | 19 | THE COURT: Thank you. Yes. |
| 09:34:58 | 20 | MR. EGLER: Thank you, your Honor. |
| 09:35:02 | 21 | The defendants continue to repeat that our argument |
| 09:35:07 | 22 | is that the law is different between Higginbotham and Tellabs, |
| 09:35:11 | 23 | but we have never made that argument, and I don't think the |
| 09:35:16 | 24 | Tellabs case makes that argument. The facts in Tellabs and |
| 09:35:19 | 25 | Higginbotham are very different. As your Honor pointed out in |

8

09:35:23 1 Higginbotham, the issues related to a foreign subsidiary and

09:35:27 2 information that was alleged in the complaint from that

09:35:30 3 foreign subsidiary never tied the United States parent company

09:35:35 4 to any of the alleged fraud that was going on.

09:35:39 5 In the Tellabs case, the issues were that the Tellabs

09:35:42 6 product that was up was the company's main new product, and

09:35:46 7 the information that was alleged in the complaint in that case

09:35:50 8 was that the defendants -- the individual defendants and the

09:35:54 9 company itself were speaking about that product voluntarily,

09:35:57 10 made various statements about it. And the sources in that

09:36:00 11 complaint said that the information that was bad about that

09:36:05 12 product was known to the individual defendants.

09:36:09 13 So the facts with regard to Tellabs are very similar

09:36:12 14 to this case. The 787 was Boeing's largest, biggest, newest

09:36:18 15 product. The defendants chose to speak about it, and the

09:36:22 16 information that's alleged in this complaint, although it is

09:36:25 17 not alleged by multiple sources, is very straightforward and

09:36:29 18 very detailed. The information that's in this complaint names

09:36:34 19 specific documents that the individual defendants had access

09:36:37 20 to that the individual defendants saw via e-mail, so the

09:36:41 21 qualitative nature of the source is very important.

09:36:46 22 Now, I can understand the defendants' argument with

09:36:50 23 regard to the corroboration and their concerns that way, but

09:36:53 24 in this case also, after the class period was over, and the

09:37:03 25 defendants have admitted that they performed these various

| | | |
|---|---|---|
| 09:37:05 | 1 | tests that were undisclosed, so there is corroboration not by |
| 09:37:09 | 2 | independent sources, but by the defendants themselves. They |
| 09:37:13 | 3 | said that they had information earlier on but they did not |
| 09:37:17 | 4 | disclose it. |
| 09:37:19 | 5 | So we are not making the argument that Higginbotham |
| 09:37:22 | 6 | and Tellabs provide different law. This Court, as a matter of |
| 09:37:28 | 7 | fact, in its order cited both Higginbotham and Tellabs with |
| 09:37:33 | 8 | regard to the key issue, and we pointed out that in our |
| 09:37:36 | 9 | opposition brief, and the defendants don't respond and we |
| 09:37:41 | 10 | didn't reply. For a 1292 motion, it has to be a pure issue of |
| 09:37:46 | 11 | law. We are not saying that the law is different between the |
| 09:37:48 | 12 | cases. We are saying that the facts are. And the Seventh |
| 09:37:51 | 13 | Circuit said that the facts are different between Tellabs and |
| 09:37:54 | 14 | Higginbotham. |
| 09:37:54 | 15 | THE COURT: Well, one common point between the two |
| 09:38:03 | 16 | cases is that both Chief Judge Easterbrook and Judge Posner |
| 09:38:10 | 17 | were very critical of using unnamed sources, unidentified |
| 09:38:17 | 18 | sources, as the basis for scienter allegations in a security |
| 09:38:23 | 19 | fraud case. Both of them were. |
| 09:38:27 | 20 | MR. EGLER: Yes. |
| 09:38:28 | 21 | THE COURT: So you are taking an issue to the mat |
| 09:38:30 | 22 | about -- two things occur to me, and maybe these are naive |
| 09:38:35 | 23 | reactions, but I will tell you what I am thinking. One is |
| 09:38:39 | 24 | with the specificity of the allegations in the second amended |
| 09:38:43 | 25 | complaint, it's difficult for me to understand how Boeing |

| | | |
|---|---|---|
| 09:38:46 | 1 | doesn't know who the confidential source is. |
| 09:38:49 | 2 | Second of all, why didn't the plaintiffs just name |
| 09:38:55 | 3 | that person? I mean, I know you're taking this case to the |
| 09:38:59 | 4 | mat, and I know Mr. Miller was involved in Tellabs, and a lot |
| 09:39:05 | 5 | -- he has had a lot of cases with me. It seems to me you're |
| 09:39:09 | 6 | inviting this trench warfare over pleadings by not identifying |
| 09:39:17 | 7 | the source. |
| 09:39:17 | 8 | MR. EGLER: It's our experience in the industry, your |
| 09:39:21 | 9 | Honor, that it is very difficult to get information from |
| 09:39:27 | 10 | people when you tell them that their name will be placed on a |
| 09:39:30 | 11 | complaint. |
| 09:39:31 | 12 | With regard to post-pleading motions, we are not |
| 09:39:35 | 13 | saying that the defendants will not get this person's name. |
| 09:39:40 | 14 | In fact, I think you read their papers right. I don't want to |
| 09:39:43 | 15 | put words in their mouth, but I think they do know who this |
| 09:39:47 | 16 | individual is. His direct supervisor is named in the |
| 09:39:50 | 17 | complaint, his place of work is named in the complaint, and |
| 09:39:55 | 18 | his name has been put in our initial disclosures. We have had |
| 09:39:59 | 19 | various conversations with the defendants since the Court |
| 09:40:03 | 20 | denied the motion to dismiss, and they have never asked us for |
| 09:40:06 | 21 | this person's name. I think -- and they never really say in |
| 09:40:10 | 22 | their papers that they don't know who he is. They just say he |
| 09:40:12 | 23 | hasn't been disclosed. |
| 09:40:14 | 24 | So the defendants know who he is, and to the extent |
| 09:40:18 | 25 | they don't know who he is, they can ask us and we will tell |

09:40:22   1    them.

09:40:22   2         With regard to our procedures, we think the law has

09:40:26   3    been developed that we are entitled to not name the individual

09:40:30   4    on the complaint.  If they cooperate with us at the pleading

09:40:33   5    standards, we can promise them anonymity in the pleading

09:40:37   6    documents with the condition that their name will be released

09:40:40   7    later.

09:40:41   8         I think in this case, we have gone into great detail

09:40:45   9    about who this person is, what their basis for speaking -- or

09:40:50   10    what their basis for the facts conveyed in the complaint are,

09:40:54   11    and now that the motion to dismiss has been denied, we will

09:41:00   12    turn over the name.  And I think the Seventh Circuit in

09:41:04   13    Tellabs affirmed that process.  I understand that there has to

09:41:09   14    be -- they make some comment about a certain discount that has

09:41:12   15    to be given to them.  I think when you look at --

09:41:15   16         THE COURT:  Steep discounts.

09:41:16   17         MR. EGLER:  But when you look at the other facts that

09:41:18   18    are alleged in the complaint, where this person worked, what

09:41:21   19    the bases were for the allegations, I think it's very

09:41:25   20    straightforward.

09:41:25   21         Now, if the Court is going to set a standard with

09:41:31   22    regard to pleadings, we will examine it and we will look at

09:41:33   23    it, but I can tell you that the reason we did not name, we did

09:41:37   24    everything but name, but the reason we did not name our source

09:41:41   25    is because when we engage sources, we find that they are much

| | | |
|---|---|---|
| 09:41:46 | 1 | more cooperative if we tell them we will give them the |
| 09:41:50 | 2 | anonymity in the pleading process. |
| 09:41:53 | 3 | THE COURT:  Yes. |
| 09:41:53 | 4 | MR. PRIMIS:  May I just have a brief response, your |
| 09:41:55 | 5 | Honor? |
| 09:41:56 | 6 | THE COURT:  Yes. |
| 09:41:56 | 7 | MR. PRIMIS:  The defendants do not know who the |
| 09:41:58 | 8 | confidential source is.  We have suspicions about who it might |
| 09:42:01 | 9 | be.  We received a list of 225 people on a set of initial |
| 09:42:07 | 10 | disclosures.  We cannot tell who that -- who the person is |
| 09:42:11 | 11 | from that list.  He is apparently buried in there.  There are |
| 09:42:14 | 12 | sufficient errors in what that person said, which obviously we |
| 09:42:18 | 13 | would not put into a 12(b)(6) response, that causes concern |
| 09:42:22 | 14 | that the person was not at Boeing during the time alleged, |
| 09:42:26 | 15 | which is why we had the second part of our motion, which is to |
| 09:42:30 | 16 | adopt a procedure similar to what the Second Circuit |
| 09:42:34 | 17 | authorized in Campo to do a quick check on the bona fides of |
| 09:42:38 | 18 | the confidential source before leaving 12(b)(6) because as |
| 09:42:43 | 19 | best we can tell, this may be a person, may be a person, who |
| 09:42:47 | 20 | is receiving information secondhand from others who that |
| 09:42:50 | 21 | person knew at Boeing and is filling in the blanks because |
| 09:42:53 | 22 | they used to work there. |
| 09:42:55 | 23 | And so that's the best we can tell right now, and we |
| 09:42:58 | 24 | haven't been able to define it from what plaintiffs have |
| 09:43:02 | 25 | informed us.  And so that was the alternative form of the |

09:43:04  1  relief that we requested in our motion, but we do think that

09:43:07  2  this is testing the outer limits of what's permissible here.

09:43:10  3  THE COURT:  Let me clarify something with plaintiffs'

09:43:14  4  counsel.  I didn't understand that the confidential source

09:43:23  5  wasn't at Boeing during the events alleged in the complaint.

09:43:30  6  MR. EGLER:  The confidential source, to my knowledge,

09:43:32  7  did not work at Boeing during the class period.  He started

09:43:36  8  working there within months of that.

09:43:41  9  THE COURT:  Months of what?

09:43:42  10  MR. EGLER:  He started working there right after the

09:43:44  11  class period.  And as the complaint says, as part of his work,

09:43:51  12  he was given access to files that were prepared during the

09:43:54  13  class period, and those are the documents that he saw.

09:44:00  14  So unlike at Higginbotham and Tellabs where the

09:44:05  15  information from the confidential source was about what

09:44:08  16  somebody told somebody else and what the witnesses heard that

09:44:12  17  the defendants heard, in this case, the entire process relates

09:44:18  18  to documents.  This witness saw documents that were prepared

09:44:24  19  during the class period and delivered to the defendants.  We

09:44:28  20  did not represent in the complaint that he worked there during

09:44:31  21  the class period.  We represented that he saw e-mails from the

09:44:37  22  class period that went to the defendants.

09:44:43  23  THE COURT:  All right.  Anything further?

09:44:46  24  MR. EGLER:  The only thing I would note, your Honor,

09:44:48  25  is that the defendants also raised this issue about the Campo

| | | |
|---|---|---|
| 09:44:52 | 1 | case in the back half of their motion with regard to taking |
| 09:44:56 | 2 | depositions, and I would note that in the Campo case in the |
| 09:45:00 | 3 | district court, and this is left unnoted in the Court of |
| 09:45:04 | 4 | Appeals' decision, that discovery with regard to the witnesses |
| 09:45:07 | 5 | went both ways, and I think in this case, it's important that |
| 09:45:11 | 6 | that happen. To the extent the defendants are raising the |
| 09:45:16 | 7 | credibility issues with regard to the witness, his sole |
| 09:45:20 | 8 | conveyance of information is about documents that the |
| 09:45:23 | 9 | defendants had seen. |
| 09:45:26 | 10 | In the Campo case, and I have a minute order printed |
| 09:45:29 | 11 | from the district court docket, the judge allowed the |
| 09:45:34 | 12 | defendants to take discovery and allowed the plaintiffs to |
| 09:45:37 | 13 | take discovery. And I think in this case, the appropriate |
| 09:45:41 | 14 | thing to do, to the extent the Court is going to do anything, |
| 09:45:43 | 15 | is to proceed and have the defendants produce the documents |
| 09:45:48 | 16 | that are specifically discussed in the complaint. |
| 09:45:56 | 17 | MR. PRIMIS: Your Honor, the admission by counsel |
| 09:46:00 | 18 | that the confidential source was not working at Boeing during |
| 09:46:03 | 19 | the class period when the testing in question was being done |
| 09:46:07 | 20 | in our view is a significant admission that was not known to |
| 09:46:10 | 21 | us at the time of the 12(b)(6) briefing. We raised it as a |
| 09:46:14 | 22 | concern in our motion to dismiss, that the complaint was |
| 09:46:17 | 23 | artfully pleaded so as to disguise when or whether the person |
| 09:46:21 | 24 | actually worked at Boeing, and we don't know if that person is |
| 09:46:24 | 25 | even working at Boeing now. |

| | | |
|---|---|---|
| 09:46:26 | 1 | So this underscores the significance of the points |
| 09:46:29 | 2 | that we are making in support of a 1292(b) because we have a |
| 09:46:33 | 3 | confidential source who wasn't at the company at the time and |
| 09:46:37 | 4 | it walks right into the Higginbotham point about steeply |
| 09:46:41 | 5 | discounting these witnesses. Now we have a single |
| 09:46:45 | 6 | uncorroborated source who wasn't there during the class |
| 09:46:47 | 7 | period. That's an additional factual wrinkle which strongly |
| 09:46:51 | 8 | supports even further -- which strongly supports further |
| 09:46:56 | 9 | additional review of the standards that are going to cover |
| 09:47:00 | 10 | confidential sources in this circuit. |
| 09:47:01 | 11 | THE COURT: All right. Anything further? |
| 09:47:04 | 12 | MR. EGLER: I would just point out, your Honor, that |
| 09:47:06 | 13 | this is not anything new. We did not represent that the |
| 09:47:11 | 14 | witness worked there. We represented that he had seen these |
| 09:47:14 | 15 | documents, and his credibility is not reduced because he did |
| 09:47:17 | 16 | not work there. He said that he worked at Boeing and that he |
| 09:47:22 | 17 | had seen these documents. When he saw them isn't an issue. |
| 09:47:26 | 18 | It does not reduce his credibility. These documents stand for |
| 09:47:30 | 19 | themselves, and they point to the witness' credibility, but if |
| 09:47:34 | 20 | the documents exist, they are the issues that prove the case, |
| 09:47:39 | 21 | not the witness himself. |
| 09:47:44 | 22 | THE COURT: Well, when I dismissed the second amended |
| 09:47:49 | 23 | complaint last May, there was a rather extensive memorandum |
| 09:48:02 | 24 | opinion that went into the background and history of the |
| 09:48:07 | 25 | events that are the subject of the case. That was the |

09:48:14  1    development of Boeing's 787 Dreamliner and the events in

09:48:23  2    spring of 2008, was it not?

09:48:31  3                MR. EGLER:   2009.

09:48:32  4                THE COURT:   2009, concerning two aspects, two

09:48:41  5    detailed allegations concerning two aspects at the heart of

09:48:45  6    the alleged fraud.  One was the press releases and actions by

09:48:55  7    Boeing to induce consumer and investor confidence, and,

09:49:05  8    indeed, those public announcements did trigger presales of

09:49:12  9    this jumbo jet, as well as investors such as the pension fund

09:49:18  10   that is the lead plaintiff in this case.

09:49:23  11               The other aspect that's pleaded with detail and was

09:49:28  12   pleaded with detail in the second amended complaint was the

09:49:31  13   stress test results and the postponement of the first flight

09:49:38  14   because of structural and/or design problems of the aircraft,

09:49:50  15   which were not disclosed in the public statements, including

09:49:53  16   statements at the Paris air show in I believe it was May 2009.

09:50:01  17               In any event, the case was dismissed in May without

09:50:07  18   prejudice because under the high pleading standards of the

09:50:14  19   Private Securities Litigation Reform Act, there wasn't

09:50:19  20   sufficient -- there were not sufficient allegations of

09:50:24  21   scienter or knowledge by Boeing and the two corporate

09:50:29  22   officials named as defendants.  There were some allegations

09:50:32  23   pertaining to a confidential source that were vague --

09:50:40  24   actually, I think I used the word murky in terms of describing

09:50:44  25   some of the test results -- so the complaint was dismissed

| 09:50:50 | 1 | without prejudice. |
| 09:50:55 | 2 | With respect to the second amended complaint, the |
| 09:50:59 | 3 | plaintiffs added some allegations that the defendants |
| 09:51:04 | 4 | characterize them as just a few paragraphs, but those just a |
| 09:51:10 | 5 | few paragraphs are detailed, and I am looking at paragraph 139 |
| 09:51:22 | 6 | on page 45 and the paragraphs that follow to page 47, |
| 09:51:30 | 7 | paragraph 142. And they allege that plaintiffs' confidential |
| 09:51:39 | 8 | source is a former Boeing senior structural analyst engineer |
| 09:51:44 | 9 | and chief engineer who worked on the mid-body fuselage, wing |
| 09:51:49 | 10 | integration team for the 787 program. The confidential |
| 09:51:56 | 11 | source's job responsibilities, including stress and design |
| 09:52:00 | 12 | review of the 787 wing joints, as well as performing finite |
| 09:52:06 | 13 | element modeling analysis for other engineers and designers |
| 09:52:10 | 14 | working on the 787 wing project. The confidential source |
| 09:52:16 | 15 | reported to Larry Hall, Boeing's vice president of the wing |
| 09:52:20 | 16 | body integration team. As part of the confidential source's |
| 09:52:26 | 17 | job, he had direct access to, as well as firsthand knowledge |
| 09:52:31 | 18 | of, the contents of Boeing's 787 stress test files that |
| 09:52:40 | 19 | immortalized the results of the failed 787 wing limit load |
| 09:52:44 | 20 | test and subsequent retest which transpired on April 21, 2009, |
| 09:52:50 | 21 | and May 17, 2009. |
| 09:52:58 | 22 | Based on the confidential source's firsthand |
| 09:53:02 | 23 | knowledge of -- his firsthand knowledge, Boeing's wing test |
| 09:53:09 | 24 | files are an organized set of documents in Boeing's direct |
| 09:53:14 | 25 | control that contain the wing test technical results, internal |

| | | |
|---|---|---|
| 09:53:24 | 1 | communications among the engineers who participated in |
| 09:53:26 | 2 | conducting the wing tests, and the internal communications of |
| 09:53:29 | 3 | the wing integration team's management concerning the results |
| 09:53:34 | 4 | of those tests. According to the confidential source, the |
| 09:53:39 | 5 | wing tests files include internal contemporaneous |
| 09:53:44 | 6 | communications regarding the specific results of the wing |
| 09:53:49 | 7 | tests and findings of the wing test integration team which the |
| 09:53:54 | 8 | wing test integration team sent directly to defendants |
| 09:53:58 | 9 | McNerney and Carson, the two named defendants in this case. |
| 09:54:03 | 10 | According to the confidential source, the wing |
| 09:54:06 | 11 | integration team included Larry Hall, Terry Pham, P-h-a-m, who |
| 09:54:15 | 12 | reported directly to Larry Hall, and Mike Stanton (phonetic), |
| 09:54:18 | 13 | vice president of engineering for the 787 program, who |
| 09:54:23 | 14 | reported directly to defendant Carson. According to the |
| 09:54:26 | 15 | firsthand knowledge of the confidential source, the April |
| 09:54:31 | 16 | 21st, 2009, load test file, which is in Boeing's direct |
| 09:54:36 | 17 | control, indicates that the 787 wing structure failed at 30 |
| 09:54:42 | 18 | percent below limit load. |
| 09:54:44 | 19 | Further, according to the confidential source, the |
| 09:54:47 | 20 | April 21st, 2009, wing test file contained copies of internal |
| 09:54:53 | 21 | electronic communications to defendants McNerney and Carson |
| 09:55:00 | 22 | which were dated within a few days after April 21st, 2009, |
| 09:55:06 | 23 | informing defendants that the 787's wing had failed at limit |
| 09:55:13 | 24 | load and, as a result of that failed test, retesting of the |
| 09:55:19 | 25 | 787 wing assembly would be necessary. |

| 09:55:23 | 1 | According to the confidential source, the contents of |
| 09:55:26 | 2 | the April 21st, 2009, wing test file, including the |
| 09:55:32 | 3 | contemporaneous communications from the wing integration team |
| 09:55:36 | 4 | to defendants McNerney and Carson, are clear in the finding |
| 09:55:42 | 5 | that the failed April 21st, 2009, limit load test and |
| 09:55:47 | 6 | necessary retesting placed the plane's scheduled June 30, |
| 09:55:54 | 7 | 2009, first flight at risk. |
| 09:55:56 | 8 | According to the confidential source, the May 17, |
| 09:56:01 | 9 | 2009, wing test file indicates that the 787 passed the limit |
| 09:56:08 | 10 | load test on May 17, 2009, but failed the ultimate load test |
| 09:56:13 | 11 | at about 125 percent of the limit load. According to the |
| 09:56:20 | 12 | confidential source, the fact that the 787 wing failed at 125 |
| 09:56:26 | 13 | percent of limit load was generally known by the wing |
| 09:56:30 | 14 | integration team immediately upon completion of the May 17, |
| 09:56:35 | 15 | 2009, test and was characterized by the wing test file |
| 09:56:42 | 16 | documents as a weight optimism issue -- I'm sorry, weight |
| 09:56:48 | 17 | optimization issue. |
| 09:56:50 | 18 | Further, according to the confidential source, the |
| 09:56:52 | 19 | May 17, 2009, wing test file contains detailed analysis |
| 09:56:58 | 20 | evidencing that nine days after the failed May 17, 2009, test, |
| 09:57:05 | 21 | delamination of the 787 wing stringers was also identified as |
| 09:57:10 | 22 | a serious engineering issue. According to the confidential |
| 09:57:15 | 23 | source, the May 17, 2009, wing test file contains copies of |
| 09:57:25 | 24 | electronic internal communications dated around May 26, 2009, |
| 09:57:31 | 25 | from the wing integration team to defendants McNerney and |

09:57:34  1  Carson which specifically informed defendants McNerney and

09:57:40  2  Carson that the 787 wing failed the ultimate load test, as

09:57:44  3  well as the fact that additional rework of the wing attachment

09:57:48  4  design was required to correct the delamination problem.

09:57:53  5       These late May 2009 contemporaneous communications

09:57:57  6  contained in the May 17, 2009, test file from the wing

09:58:03  7  integration team to defendants McNerney and Carson clearly

09:58:07  8  communicated the wing integration team's conclusion that

09:58:10  9  Boeing would be unable to conduct a June 30, 2009, first

09:58:16  10 flight.

09:58:17  11      Now, these are not general allegations, they are not

09:58:24  12 speculative allegations, and they are not vague allegations,

09:58:30  13 unlike a number of the cases that were cited in the plaintiffs

09:58:38  14 on page 1 of 6.  These are very specific, and if I may use the

09:58:43  15 word cogent, allegations.  They connect between the general

09:58:51  16 allegations which are pretty specific in plaintiffs' 59-page

09:58:58  17 complaint about Boeing's behavior in the marketplace versus

09:59:08  18 what was happening internally.

09:59:13  19      Given these additional allegations, I found at the

09:59:20  20 time plaintiffs sought to file the second amended complaint,

09:59:23  21 as I find now, that a reasonable person could draw a strong

09:59:31  22 inference that Boeing and the two named defendants knew the

09:59:39  23 situation with respect to testing, retesting issues and first

09:59:44  24 flight information concerning the 787 at the time public

09:59:52  25 statements were made that did not reveal this information and

09:59:57  1   could allegedly be used in a misleading or unintending file.

10:00:06  2   So the characterization made -- characterizations

10:00:12  3   made repeatedly in the motion for a certification order to the

10:00:18  4   Seventh Circuit do not capture, do not capture the realities

10:00:23  5   of the second amended complaint and instead focus on a theory

10:00:39  6   that two decisions, one by the chief judge, Chief Judge

10:00:47  7   Easterbrook, the other by Judge Posner, are at odds with each

10:00:51  8   other, which isn't something that has anything to do with any

10:00:55  9   of my findings and is premised on, I don't think -- I don't

10:01:06  10  think the characterization is premised on a careful

10:01:09  11  consideration of those two opinions that involve qualitative

10:01:13  12  differences between the confidential informants.

10:01:17  13  Neither of those opinions, Higginbotham and Tellabs,

10:01:22  14  encourage, let's say, the use of confidential sources in

10:01:28  15  Private Securities Litigation Reform Act complaints.  Quite

10:01:33  16  the contrary.  They are problematic.  But the basis of the

10:01:39  17  confidential source's information in the context of the whole

10:01:44  18  complaint and whether or not the confidential informant was in

10:01:53  19  a position to know the things that are alleged is critical,

10:01:58  20  and it appears that the confidential source in the second

10:02:02  21  amended complaint had personal knowledge of the documents that

10:02:07  22  point to the knowledge by officials of the company, including

10:02:14  23  the two named individual defendants.

10:02:18  24  So I don't find that the ruling denying the motion to

10:02:24  25  dismiss the second amended complaint is predicated on a

| | | |
|---|---|---|
| 10:02:29 | 1 | controlling issue of law. To say that somehow my denying the |
| 10:02:37 | 2 | motion to dismiss, the Court was relying on Tellabs and |
| 10:02:44 | 3 | undercutting the holding of Higginbotham is not even -- was |
| 10:02:52 | 4 | not even on the table, not even a consideration. It was the |
| 10:02:56 | 5 | sufficiency under the standards articulated in both those |
| 10:03:02 | 6 | cases that predicated the ruling, and I don't think it's a |
| 10:03:06 | 7 | fair reading of Higginbotham to say that, well, you can't -- |
| 10:03:14 | 8 | you can never base a securities fraud claim, a federal |
| 10:03:20 | 9 | securities fraud claim, on the allegations of a confidential |
| 10:03:26 | 10 | source no matter what the circumstances or you have to have a |
| 10:03:32 | 11 | whole army of them, of confidential sources, you can't use |
| 10:03:39 | 12 | just one, some sort of a per se bright-line sort of thing. |
| 10:03:43 | 13 | Neither of those cases suggest that. It's a qualitative |
| 10:03:47 | 14 | examination of the basis for the allegations and the |
| 10:03:51 | 15 | particularity of the allegations concerning the confidential |
| 10:03:55 | 16 | source's information. |
| 10:03:57 | 17 | Yes, my job would sure be easier if the confidential |
| 10:04:01 | 18 | source were named, but in some ways, I think this is much ado |
| 10:04:08 | 19 | about nothing because their 26(a)(1) disclosures should reveal |
| 10:04:15 | 20 | who this is, discovery should reveal who this is, and we don't |
| 10:04:18 | 21 | need special discovery rules to do it. |
| 10:04:20 | 22 | But I don't find that there is a controlling issue of |
| 10:04:23 | 23 | law at stake in denying the motion to dismiss, nor do I think |
| 10:04:31 | 24 | there is a substantial ground for a difference of opinions as |
| 10:04:35 | 25 | to the applicability of the Higginbotham and Tellabs case. |

| | |
|---|---|
| 10:04:41 | 1 |
| 10:04:50 | 2 |
| 10:04:55 | 3 |
| 10:05:00 | 4 |
| 10:05:08 | 5 |
| 10:05:20 | 6 |
| 10:05:26 | 7 |
| 10:05:32 | 8 |
| 10:05:36 | 9 |
| 10:05:38 | 10 |
| 10:05:43 | 11 |
| 10:05:49 | 12 |
| 10:05:52 | 13 |
| 10:05:55 | 14 |
| 10:05:58 | 15 |
| 10:06:01 | 16 |
| 10:06:03 | 17 |
| 10:06:05 | 18 |
| 10:06:09 | 19 |
| 10:06:18 | 20 |
| 10:06:21 | 21 |
| 10:06:24 | 22 |
| 10:06:28 | 23 |
| 10:06:32 | 24 |
| 10:06:36 | 25 |

As far as whether an interlocutory appeal would result in materially advancing this case or conserving judicial resources, I find that it would not. It would delay the case and put another layer on this litigation, and so I do not find there is a basis for certifying this poorly issued -- to me, it's not an issue about an intracircuit dispute concerning the use of confidential sources under the federal securities laws.

So the motion is denied.

And moving on to the text question, I had asked that you submit your discovery plan to chambers by last Thursday, and I didn't receive anything. Was anything submitted?

MR. MILLER: Your Honor, we submitted that through your proposed order procedure on Thursday.

THE COURT: Oh, I never saw it.

MR. EGLER: I apologize, your Honor. I have a copy of it here if I can hand it up.

THE COURT: We don't search the e-mails. I really appreciate courtesy copies. The amount of paper, we must have incurred a hundred motions in the last week. Unfortunately, I haven't had a chance to read it.

MR. FILIP: Judge, we -- just to preview, I think there's a huge amount of agreement in there. There's perhaps two or perhaps three disagreements. One concerns the number of interrogatories. The parties disagree on that. One

| | | |
|---|---|---|
| 10:06:41 | 1 | concerns the number of depositions, the parties disagree on |
| 10:06:43 | 2 | that. And perhaps there is a third. I don't know. |
| 10:06:45 | 3 | MR. EGLER: Well, no, the other one was just the |
| 10:06:48 | 4 | discovery cutoff, and that was taken care of. |
| 10:06:51 | 5 | MR. MILLER: I think, your Honor, we proposed a |
| 10:06:53 | 6 | pretty aggressive -- an agreed-upon pretty aggressive schedule |
| 10:06:58 | 7 | where everything would conclude pretty much -- |
| 10:07:00 | 8 | THE COURT: Well, I am trying not to rule on things I |
| 10:07:03 | 9 | haven't read, so I will look at it after I finish in court |
| 10:07:07 | 10 | today, and if I have any questions, I will be calling you in |
| 10:07:13 | 11 | again. If it's pretty clear, the choices are pretty clear, up |
| 10:07:17 | 12 | or down, I will just issue an order. |
| 10:07:21 | 13 | MR. FILIP: Sorry about that. |
| 10:07:22 | 14 | MR. EGLER: If I may suggest, your Honor -- |
| 10:07:23 | 15 | THE COURT: That's why we say courtesy copy. |
| 10:07:25 | 16 | MR. EGLER: I apologize. |
| 10:07:26 | 17 | THE COURT: I know that that's done, but we have -- |
| 10:07:33 | 18 | we still do the courtesy copy thing and try, when we have a |
| 10:07:38 | 19 | case up for status, try to -- I try to read everything that |
| 10:07:44 | 20 | comes in, and generally I do, except where it comes in under |
| 10:07:47 | 21 | the radar, our radar screen, not yours, our radar screen. I'm |
| 10:07:54 | 22 | sorry that I am not prepared to rule on this. |
| 10:07:58 | 23 | But there is no stay on discovery. I mean, it was |
| 10:08:02 | 24 | certainly discussed in the briefs on the interlocutory appeal |
| 10:08:07 | 25 | issue. And in terms of deposing whoever you want to depose |

| | | |
|---|---|---|
| 10:08:13 | 1 | and finding out what's in those files, it seems to me the case |
| 10:08:21 | 2 | -- the plaintiffs' case might rise or fall, depending on what |
| 10:08:28 | 3 | are in these wing stress test files -- |
| 10:08:30 | 4 | MR. EGLER:  Plaintiffs agree, your Honor. |
| 10:08:32 | 5 | THE COURT:  -- and the communications.  You will know |
| 10:08:35 | 6 | right away whether the confidential source was correct or not. |
| 10:08:42 | 7 | MR. EGLER:  If I may say so, your Honor, I agree with |
| 10:08:47 | 8 | defense counsel that the two -- the only two issues that are |
| 10:08:53 | 9 | -- that we disagree about are the depositions and the |
| 10:08:56 | 10 | interrogatories.  And we say that there should be 20 |
| 10:08:59 | 11 | depositions and the defendants say 13.  We say there should be |
| 10:09:03 | 12 | 35 interrogatories, and the defendants say 20.  And it goes to |
| 10:09:07 | 13 | the perceived complexity of the case and the number of |
| 10:09:09 | 14 | witnesses called for each side.  Those are the two remaining |
| 10:09:12 | 15 | issues. |
| 10:09:13 | 16 | THE COURT:  All right.  I will take a look at those. |
| 10:09:15 | 17 | MR. EGLER:  Thank you, your Honor. |
| 10:09:16 | 18 | MR. PRIMIS:  Thank you, your Honor. |
| 10:09:17 | 19 | MR. FILIP:  Thank you, your Honor.  Have a nice day. |
| | 20 | Thank you for your ruling. |
| 10:09:20 | 21 | THE COURT:  Thank you. |
| | 22 | (Which were all the proceedings had in the above-entitled |
| | 23 | cause on the day and date aforesaid.) |
| | 24 | |
| | 25 | |

26

1    I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

2

3    Carolyn R. Cox                  Date
Official Court Reporter

4    Northern District of Illinois

5    /s/Carolyn R. Cox, CSR, RPR, CRR

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| / | 6 | alternative [1] - 12:25 |
|---|---|---|
| | | amended [9] - 7:17, 9:24, 15:22, 16:12, 17:2, 20:20, 21:5, 21:21, 21:25 |

**/**

/s/Carolyn [1] - 26:5

**0**

09 [1] - 3:2

**1**

1 [1] - 20:14
12(b)(6 [4] - 7:12, 12:13, 12:18, 14:21
125 [2] - 19:11, 19:12
1292 [3] - 4:6, 4:24, 9:10
1292(b [1] - 15:2
13 [1] - 25:11
139 [1] - 17:5
142 [1] - 17:7
17 [8] - 17:21, 19:8, 19:10, 19:14, 19:19, 19:20, 19:23, 20:6

**2**

20 [2] - 25:10, 25:12
20005 [1] - 2:8
2008 [1] - 16:2
2009 [21] - 16:3, 16:4, 16:16, 17:20, 17:21, 18:16, 18:20, 18:22, 19:2, 19:5, 19:7, 19:9, 19:10, 19:15, 19:19, 19:20, 19:23, 19:24, 20:5, 20:6, 20:9
202 [1] - 2:8
21 [1] - 17:20
21st [5] - 18:16, 18:20, 18:22, 19:2, 19:5
225 [1] - 12:9
26 [3] - 6:22, 7:11, 19:24
26(a)(1 [1] - 22:19

**3**

30 [3] - 18:17, 19:6, 20:9
300 [1] - 2:3
312 [1] - 2:4
35 [1] - 25:12

**4**

45 [1] - 17:6
47 [1] - 17:6

**5**

59-page [1] - 20:16

**6**

6 [1] - 20:14
60654 [1] - 2:4
655 [1] - 2:7

**7**

7143 [1] - 3:2
787 [15] - 8:14, 16:1, 17:10, 17:12, 17:14, 17:18, 17:19, 18:13, 18:17, 18:25, 19:9, 19:12, 19:21, 20:2, 20:24
787's [1] - 18:23

**8**

862-2000 [1] - 2:4
879-5921 [1] - 2:8

**A**

ability [1] - 6:15
able [1] - 12:24
above-entitled [2] - 25:22, 26:1
access [4] - 6:10, 8:19, 13:12, 17:17
according [9] - 18:4, 18:10, 18:14, 18:19, 19:1, 19:8, 19:11, 19:18, 19:22
accounting [1] - 7:7
Act [2] - 16:19, 21:15
actions [1] - 16:6
added [1] - 17:3
addition [2] - 4:13, 7:17
additional [4] - 15:7, 15:9, 20:3, 20:19
admission [2] - 14:17, 14:20
admitted [1] - 8:25
ado [1] - 22:18
adopt [1] - 12:16
advancing [1] - 23:2
affirmed [1] - 11:13
aforesaid [1] - 25:23
aggressive [2] - 24:6
agree [2] - 25:4, 25:7
agreed [1] - 24:6
agreed-upon [1] - 24:6
agreement [1] - 23:23
air [1] - 16:16
aircraft [1] - 16:14
al [1] - 3:3
allegations [20] - 4:22, 5:25, 7:6, 7:10, 9:18, 9:24, 11:19, 16:5, 16:20, 16:22, 17:3, 20:11, 20:12, 20:15, 20:16, 20:19, 22:9, 22:14, 22:15
allege [1] - 17:7
alleged [10] - 8:2, 8:4, 8:7, 8:16, 8:17, 11:18, 12:14, 13:5, 16:6, 21:19
allegedly [1] - 21:1
allow [1] - 4:16
allowed [2] - 14:11, 14:12

amount [2] - 23:19, 23:23
analysis [2] - 17:13, 19:19
analyst [1] - 17:8
announcements [1] - 16:8
anonymity [3] - 5:11, 11:5, 12:2
apologize [2] - 23:16, 24:16
appeal [3] - 3:14, 23:1, 24:24
Appeals [4] - 3:20, 4:12, 6:21, 7:13
appeals [1] - 3:20
Appeals' [1] - 14:4
APPEARANCES [1] - 2:1
applicability [1] - 22:25
apply [1] - 7:5
appreciate [1] - 23:19
appropriate [2] - 4:24, 14:13
April [6] - 17:20, 18:15, 18:20, 18:22, 19:2, 19:5
argument [5] - 7:21, 7:23, 7:24, 8:22, 9:5
army [1] - 22:11
artfully [1] - 14:23
articulated [1] - 22:5
aspect [1] - 16:11
aspects [2] - 16:4, 16:5
assembly [1] - 18:25
attachment [1] - 20:3
authorized [1] - 12:17

**B**

background [1] - 15:24
bad [1] - 8:11
base [1] - 22:8
based [1] - 17:22
bases [1] - 11:19
basis [8] - 4:17, 5:21, 9:18, 11:9, 11:10, 21:16, 22:14, 23:5
behalf [4] - 3:5, 3:7, 3:9, 3:11
behavior [1] - 20:17
below [1] - 18:18
best [2] - 12:19, 12:23
between [14] - 4:3, 4:20, 4:22, 6:4, 6:6, 6:11, 6:17, 7:2, 7:22, 9:11, 9:13, 9:15, 20:15, 21:12
biggest [1] - 8:14
blanks [1] - 12:21
body [2] - 17:9, 17:16
Boeing [15] - 3:3, 9:25, 12:14, 12:21, 13:5, 13:7, 14:18, 14:24, 14:25, 15:16, 16:7, 16:21, 17:8, 20:9, 20:22
Boeing's [8] - 8:14, 16:1, 17:15, 17:18, 17:23, 17:24, 18:16, 20:17
bona [1] - 12:17
bounds [2] - 5:15, 5:24
Brazilian [2] - 6:7, 6:9
brief [2] - 9:9, 12:4
briefing [1] - 14:21

briefs [1] - 24:24
bright [1] - 22:12
bright-line [1] - 22:12
buried [1] - 12:11
BY [2] - 2:3, 2:7

**C**

camp [1] - 5:17
Campo [4] - 12:17, 13:25, 14:2, 14:10
cannot [1] - 12:10
capture [2] - 21:4
care [1] - 24:4
careful [1] - 21:10
Carolyn [1] - 26:3
Carson [7] - 18:9, 18:14, 18:21, 19:4, 20:1, 20:2, 20:7
case [33] - 4:2, 4:8, 4:13, 4:17, 4:24, 6:21, 6:24, 7:24, 8:5, 8:7, 8:14, 8:24, 9:19, 10:3, 11:8, 13:17, 14:1, 14:2, 14:5, 14:10, 14:13, 15:20, 15:25, 16:10, 16:17, 18:9, 22:25, 23:2, 23:4, 24:19, 25:1, 25:2, 25:13
cases [11] - 3:16, 5:21, 7:2, 7:3, 7:15, 9:12, 9:16, 10:5, 20:13, 22:6, 22:13
causes [1] - 12:13
certain [1] - 11:14
certainly [4] - 6:10, 6:20, 7:1, 24:24
certification [1] - 21:3
certify [2] - 3:13, 26:1
certifying [1] - 23:5
chambers [1] - 23:11
chance [1] - 23:21
change [1] - 4:8
characterization [2] - 21:2, 21:10
characterizations [1] - 21:2
characterize [1] - 17:4
characterized [1] - 19:15
check [1] - 12:17
Chicago [1] - 2:4
chief [2] - 17:9, 21:6
Chief [2] - 9:16, 21:6
choices [1] - 24:11
chose [1] - 8:15
Circuit [5] - 4:16, 9:13, 11:12, 12:16, 21:4
circuit [1] - 15:10
circumstances [1] - 22:10
cited [2] - 9:7, 20:13
City [1] - 3:2
claim [2] - 22:8, 22:9
clarification [3] - 4:6, 5:20, 7:10
clarify [1] - 13:3
class [9] - 8:24, 13:7, 13:11, 13:13, 13:19, 13:21, 13:22, 14:19, 15:6
clean [1] - 4:11
clear [3] - 19:4, 24:11
clearly [2] - 7:15, 20:7
CLERK [1] - 3:2
closer [1] - 5:17

cogent [1] - 20:15
comment [1] - 11:14
common [1] - 9:15
communicated [1] - 20:8
communications [8] - 18:1, 18:2, 18:6, 18:21, 19:3, 19:24, 20:5, 25:5
company [4] - 8:3, 8:9, 15:3, 21:22
Company [1] - 3:3
company's [1] - 8:6
complaint [29] - 5:16, 7:18, 8:2, 8:7, 8:11, 8:16, 8:18, 9:25, 10:11, 10:17, 11:4, 11:10, 11:18, 13:5, 13:11, 13:20, 14:16, 14:22, 15:23, 16:12, 16:25, 17:2, 20:17, 20:20, 21:5, 21:18, 21:21, 21:25
complaints [1] - 21:15
completion [1] - 19:14
complexity [1] - 25:13
conceivably [1] - 5:25
concern [2] - 12:13, 14:22
concerning [6] - 16:4, 16:5, 18:3, 20:24, 22:15, 23:7
concerns [4] - 5:10, 8:23, 23:24, 24:1
conclude [1] - 24:7
conclusion [1] - 20:8
condition [1] - 11:6
conduct [1] - 20:9
conducting [1] - 18:2
confidence [1] - 16:7
confidential [49] - 4:10, 4:14, 4:15, 4:18, 4:21, 5:2, 5:7, 5:9, 5:15, 5:22, 6:6, 6:12, 6:17, 6:22, 10:1, 12:8, 12:18, 13:4, 13:6, 13:15, 14:18, 15:3, 15:10, 16:23, 17:7, 17:10, 17:14, 17:16, 17:22, 18:4, 18:10, 18:15, 18:19, 19:1, 19:8, 19:12, 19:18, 19:22, 21:12, 21:14, 21:17, 21:18, 21:20, 22:9, 22:11, 22:15, 22:17, 23:7, 25:6
conflict [1] - 6:4
confront [1] - 5:22
connect [1] - 20:15
connecting [1] - 6:8
conserving [1] - 23:2
consideration [2] - 21:11, 22:4
consumer [1] - 16:7
contain [1] - 17:25
contained [2] - 18:20, 20:6
contains [2] - 19:19, 19:23
contemporaneous [3] - 18:5, 19:3, 20:5
contents [2] - 17:18, 19:1
context [4] - 4:17, 4:20, 5:8, 21:17
continue [1] - 7:21
CONTINUED [1] - 2:1
contrary [1] - 21:16
control [3] - 4:11, 17:25, 18:17
controlling [3] - 4:20, 22:1, 22:22
conversations [1] - 10:19
conveyance [1] - 14:8
conveyed [1] - 11:10
cooperate [1] - 11:4
cooperative [1] - 12:1

copies [3] - 18:20, 19:23, 23:19
copy [3] - 23:16, 24:15, 24:18
corporate [2] - 6:8, 16:21
correct [3] - 20:4, 25:6, 26:1
corroborated [3] - 4:14, 5:23, 6:23
corroborating [1] - 7:11
corroboration [3] - 6:25, 8:23, 9:1
counsel [3] - 13:4, 14:17, 25:8
court [4] - 3:1, 14:3, 14:11, 24:9
COURT [26] - 3:12, 4:25, 5:5, 6:5, 6:13, 6:15, 7:19, 9:15, 9:21, 11:16, 12:3, 12:6, 13:3, 13:9, 13:23, 15:11, 15:22, 16:4, 23:15, 23:18, 24:8, 24:15, 24:17, 25:5, 25:16, 25:21
Court [14] - 3:19, 4:1, 4:11, 5:8, 5:20, 6:21, 7:13, 9:6, 10:19, 11:21, 14:3, 14:14, 22:2, 26:3
courtesy [3] - 23:19, 24:15, 24:18
cover [1] - 15:9
Cox [2] - 26:3, 26:5
Craig [1] - 3:10
CRAIG [1] - 2:7
credibility [4] - 14:7, 15:15, 15:18, 15:19
critical [2] - 9:17, 21:19
CRR [1] - 26:5
CSR [1] - 26:5
cutoff [1] - 24:4

**D**

date [1] - 25:23
Date [1] - 26:3
dated [2] - 18:22, 19:24
days [2] - 18:22, 19:20
DC [1] - 2:8
decision [1] - 14:4
decisions [2] - 4:21, 21:6
defendant [1] - 18:14
Defendants [1] - 2:2
defendants [41] - 3:9, 3:11, 4:9, 5:4, 5:22, 7:21, 8:8, 8:12, 8:15, 8:19, 8:20, 8:25, 9:2, 9:9, 10:13, 10:19, 10:24, 12:7, 13:17, 13:19, 13:22, 13:25, 14:6, 14:9, 14:12, 14:15, 16:22, 17:3, 18:8, 18:9, 18:21, 18:23, 19:4, 19:25, 20:1, 20:7, 20:22, 21:23, 25:11, 25:12
defendants' [3] - 3:13, 3:15, 8:22
defense [1] - 25:8
define [1] - 12:24
delamination [2] - 19:21, 20:4
delay [1] - 23:3
delivered [1] - 13:19
denied [3] - 10:20, 10:11, 23:9
denying [3] - 21:24, 22:1, 22:23
depose [1] - 24:25
deposing [1] - 24:25
depositions [4] - 14:2, 24:1, 25:9, 25:11
describing [1] - 16:24

**design** [3] - 16:14, 17:11, 20:4
**designers** [1] - 17:13
**detail** [4] - 6:25, 11:8, 16:11, 16:12
**detailed** [6] - 6:23, 7:6, 8:18, 16:5, 17:5, 19:19
**developed** [1] - 11:3
**development** [1] - 16:1
**difference** [7] - 4:22, 6:5, 6:11, 6:17, 6:18, 6:20, 22:24
**differences** [1] - 21:12
**different** [7] - 7:3, 7:16, 7:22, 7:25, 9:6, 9:11, 9:13
**difficult** [2] - 9:25, 10:9
**direct** [4] - 10:16, 17:17, 17:24, 18:16
**directly** [3] - 18:8, 18:12, 18:14
**disagree** [3] - 23:25, 24:1, 25:9
**disagreements** [1] - 23:24
**disclose** [1] - 9:4
**disclosed** [2] - 10:23, 16:15
**disclosures** [3] - 10:18, 12:10, 22:19
**discount** [1] - 11:14
**discounting** [1] - 15:5
**discounts** [1] - 11:16
**discovery** [8] - 14:4, 14:12, 14:13, 22:20, 22:21, 23:11, 24:4, 24:23
**discussed** [2] - 14:16, 24:24
**disguise** [1] - 14:23
**dismiss** [6] - 10:20, 11:11, 14:22, 21:25, 22:2, 22:23
**dismissal** [1] - 4:22
**dismissed** [3] - 15:22, 16:17, 16:25
**dispute** [1] - 23:6
**distinction** [1] - 7:1
**district** [2] - 14:3, 14:11
**District** [1] - 26:4
**docket** [1] - 14:11
**documents** [14] - 8:19, 11:6, 13:13, 13:18, 14:8, 14:15, 15:15, 15:17, 15:18, 15:20, 17:24, 19:16, 21:21
**done** [2] - 14:19, 24:17
**down** [1] - 24:12
**dramatic** [1] - 5:18
**draw** [1] - 20:21
**Dreamliner** [1] - 16:1
**during** [8] - 12:14, 13:5, 13:7, 13:12, 13:19, 13:20, 14:18, 15:6

### E

**e-mail** [1] - 8:20
**e-mails** [2] - 13:21, 23:18
**easier** [1] - 22:17
**Easterbrook** [2] - 9:16, 21:7
**effect** [1] - 5:18
**EGLER** [17] - 3:6, 7:20, 9:20, 10:8, 11:17, 13:6, 13:10, 13:24, 15:12, 16:3, 23:16, 24:3, 24:14, 24:16, 25:4, 25:7, 25:17
**Egler** [1] - 3:6
**electronic** [2] - 18:21, 19:24

**element** [1] - 17:13
**ELLIS** [2] - 2:2, 2:6
**Ellis** [1] - 3:10
**Employees'** [1] - 3:2
**encourage** [1] - 21:14
**engage** [1] - 11:25
**engineer** [2] - 17:8, 17:9
**engineering** [2] - 18:13, 19:22
**engineers** [2] - 17:13, 18:1
**entire** [1] - 13:17
**entitled** [3] - 11:3, 25:22, 26:1
**errors** [1] - 12:12
**essentially** [1] - 7:4
**established** [1] - 5:3
**et** [1] - 3:3
**event** [1] - 16:17
**events** [3] - 13:5, 15:25, 16:1
**evidencing** [1] - 19:20
**examination** [1] - 22:14
**examine** [1] - 11:22
**except** [1] - 24:20
**exception** [1] - 3:21
**exist** [1] - 15:20
**experience** [1] - 10:8
**extensive** [1] - 15:23
**extent** [5] - 6:3, 7:8, 10:24, 14:6, 14:14

### F

**fact** [6] - 4:8, 4:21, 5:13, 7:12, 9:7, 10:14, 19:12, 20:3
**facts** [8] - 4:7, 7:7, 7:24, 8:13, 9:12, 9:13, 11:10, 11:17
**factual** [3] - 4:19, 7:1, 15:7
**factually** [2] - 4:15, 7:3
**failed** [9] - 17:19, 18:17, 18:23, 18:24, 19:5, 19:10, 19:12, 19:20, 20:2
**fair** [1] - 22:7
**fall** [1] - 25:2
**far** [2] - 7:11, 23:1
**federal** [2] - 22:8, 23:7
**few** [4] - 3:20, 17:4, 17:5, 18:22
**fides** [1] - 12:17
**Fifteenth** [1] - 2:7
**file** [10] - 18:16, 18:20, 19:2, 19:9, 19:15, 19:19, 19:23, 20:6, 20:20, 21:1
**files** [6] - 13:12, 17:18, 17:24, 18:5, 25:1, 25:3
**FILIP** [8] - 2:3, 3:8, 3:22, 5:4, 5:6, 23:22, 24:13, 25:19
**Filip** [1] - 3:8
**filling** [1] - 12:21
**final** [1] - 3:16
**findings** [2] - 18:7, 21:9
**finish** [1] - 24:9
**finite** [1] - 17:12
**first** [5] - 4:23, 16:13, 19:7, 20:9, 20:23
**firsthand** [4] - 17:17, 17:22, 17:23, 18:15
**flight** [4] - 16:13, 19:7, 20:10, 20:24

**focus** [1] - 21:5
**follow** [1] - 17:6
**following** [1] - 3:1
**foregoing** [1] - 26:1
**foreign** [3] - 7:5, 8:1, 8:3
**form** [1] - 12:25
**former** [1] - 17:8
**four** [1] - 7:17
**framed** [1] - 7:14
**fraud** [6] - 6:9, 8:4, 9:19, 16:6, 22:8, 22:9
**fund** [1] - 16:9
**fuselage** [1] - 17:9

### G

**general** [3] - 3:21, 20:11, 20:15
**generally** [2] - 19:13, 24:20
**given** [4] - 5:10, 11:15, 13:12, 20:19
**governing** [1] - 4:10
**great** [1] - 11:8
**ground** [1] - 22:24

### H

**half** [1] - 14:1
**Hall** [3] - 17:15, 18:11, 18:12
**hand** [2] - 4:23, 23:17
**headquarters** [1] - 6:8
**heard** [3] - 3:25, 13:16, 13:17
**heart** [1] - 16:5
**help** [1] - 5:16
**Higginbotham** [27] - 4:4, 4:7, 5:2, 5:3, 5:10, 5:12, 5:14, 5:17, 6:3, 6:4, 6:6, 6:12, 6:18, 6:24, 7:5, 7:22, 7:25, 8:1, 9:5, 9:7, 9:14, 13:14, 15:4, 21:13, 22:3, 22:7, 22:25
**high** [1] - 16:18
**himself** [1] - 15:21
**history** [1] - 15:24
**holding** [1] - 22:3
**Honor** [21] - 3:4, 3:6, 3:8, 3:22, 3:24, 7:20, 7:25, 10:9, 12:5, 13:24, 14:17, 15:12, 23:13, 23:16, 24:5, 24:14, 25:4, 25:7, 25:17, 25:18, 25:19
**huge** [1] - 23:23
**hundred** [1] - 23:20

### I

**identified** [2] - 5:12, 19:21
**identify** [1] - 5:8
**identifying** [1] - 10:6
**IL** [1] - 2:4
**Illinois** [1] - 26:4
**immediately** [1] - 19:14
**immortalized** [1] - 17:19
**important** [3] - 7:9, 8:21, 14:5
**include** [1] - 18:5

included [1] - 18:11
including [4] - 16:15, 17:11, 19:2, 21:22
incurred [1] - 23:20
indeed [1] - 16:8
independent [1] - 9:2
indicates [2] - 18:17, 19:9
individual [8] - 6:1, 8:8, 8:12, 8:19, 8:20, 10:16, 11:3, 21:23
induce [1] - 16:7
industry [1] - 10:8
inference [1] - 20:22
informant [1] - 21:18
informants [2] - 6:17, 21:12
information [16] - 6:16, 6:23, 8:2, 8:7, 8:11, 8:16, 8:18, 9:3, 10:9, 12:20, 13:15, 14:8, 20:24, 20:25, 21:17, 22:16
informed [2] - 12:25, 20:1
informing [1] - 18:23
initial [2] - 10:18, 12:9
instead [1] - 21:5
integration [11] - 17:10, 17:16, 18:3, 18:7, 18:8, 18:11, 19:3, 19:14, 19:25, 20:7, 20:8
interlocutory [4] - 3:13, 3:20, 23:1, 24:24
internal [5] - 17:25, 18:2, 18:5, 18:20, 19:24
internally [1] - 20:18
interrogatories [3] - 23:25, 25:10, 25:12
intracircuit [1] - 23:6
invalid [1] - 5:10
investor [1] - 16:7
investors [1] - 16:9
inviting [1] - 10:6
involve [1] - 21:11
involved [1] - 10:4
issue [20] - 3:23, 4:11, 5:19, 5:20, 7:7, 7:10, 7:14, 9:8, 9:10, 9:21, 13:25, 15:17, 19:16, 19:17, 19:22, 22:1, 22:22, 23:6, 24:12, 24:25
issued [1] - 23:5
issues [7] - 8:1, 8:5, 14:7, 15:20, 20:23, 25:8, 25:15
itself [1] - 8:9

### J

jet [1] - 16:9
job [3] - 17:11, 17:17, 22:17
joints [1] - 17:12
Judge [4] - 9:16, 21:6, 21:7
judge [3] - 14:11, 21:6, 23:22
judicial [1] - 23:3
jumbo [1] - 16:9
June [2] - 19:6, 20:9

### K

key [2] - 3:16, 9:8
KIRKLAND [2] - 2:2, 2:6
Kirkland [1] - 3:10
knowledge [9] - 6:8, 13:6, 16:21, 17:17, 17:23, 18:15, 21:21, 21:22
known [3] - 8:12, 14:20, 19:13

### L

lack [1] - 7:6
largest [1] - 8:14
Larry [3] - 17:15, 18:11, 18:12
LaSalle [1] - 2:3
last [3] - 15:23, 23:11, 23:20
late [1] - 20:5
law [8] - 4:9, 7:22, 9:6, 9:11, 11:2, 22:1, 22:23
laws [1] - 23:8
layer [1] - 23:4
lead [1] - 16:10
leaving [1] - 12:18
left [1] - 14:3
legal [3] - 4:11, 4:20, 5:19
less [1] - 6:24
limit [7] - 17:19, 18:18, 18:23, 19:5, 19:9, 19:11, 19:13
limited [2] - 4:7, 7:7
limits [2] - 4:16, 13:2
line [1] - 22:12
list [2] - 12:9, 12:11
Litigation [2] - 16:19, 21:15
litigation [1] - 23:4
Livonia [1] - 3:2
LLP [1] - 2:2
load [10] - 17:19, 18:16, 18:18, 18:24, 19:5, 19:10, 19:11, 19:13, 20:2
look [5] - 11:15, 11:17, 11:22, 24:9, 25:16
looking [1] - 17:5

### M

mail [1] - 8:20
mails [2] - 13:21, 23:18
main [1] - 8:6
management [1] - 18:3
MARK [1] - 2:3
Mark [1] - 3:8
marketplace [1] - 20:17
Marvin [1] - 3:4
mat [2] - 9:21, 10:4
materially [1] - 23:2
matter [4] - 3:12, 9:6, 22:10, 26:1
McNerney [6] - 18:9, 18:21, 19:4, 19:25, 20:1, 20:7
mean [2] - 10:3, 24:23
memorandum [1] - 15:23

### N

met [1] - 6:2
mid [1] - 17:9
mid-body [1] - 17:9
might [2] - 12:8, 25:2
Mike [1] - 18:12
MILLER [3] - 3:4, 23:13, 24:5
Miller [2] - 3:4, 10:4
minute [1] - 14:10
misleading [1] - 21:1
modeling [1] - 17:13
months [2] - 13:8, 13:9
morning [5] - 3:4, 3:6, 3:8, 3:12, 3:24
motion [16] - 3:3, 3:13, 3:18, 4:23, 9:10, 10:20, 11:11, 12:15, 13:1, 14:1, 14:22, 21:3, 21:24, 22:2, 22:23, 23:9
motions [3] - 3:19, 10:12, 23:20
mouth [1] - 10:15
moving [1] - 23:10
MR [38] - 2:3, 2:7, 3:4, 3:6, 3:8, 3:10, 3:22, 3:24, 5:4, 5:6, 6:11, 6:14, 6:20, 7:20, 9:20, 10:8, 11:17, 12:4, 12:7, 13:6, 13:10, 13:24, 14:17, 15:12, 16:3, 23:13, 23:16, 23:22, 24:3, 24:5, 24:13, 24:14, 24:16, 25:4, 25:7, 25:17, 25:18, 25:19
multiple [2] - 5:2, 8:17
murky [1] - 16:24
must [2] - 23:19
mutually [1] - 7:11

### N

naive [1] - 9:22
name [11] - 10:2, 10:10, 10:13, 10:18, 10:21, 11:3, 11:6, 11:12, 11:23, 11:24
named [7] - 10:16, 10:17, 16:22, 18:9, 20:22, 21:23, 22:18
names [1] - 8:18
nature [1] - 8:21
necessary [2] - 18:25, 19:6
need [2] - 5:11, 22:21
needs [1] - 5:19
never [6] - 7:23, 8:3, 10:20, 10:21, 22:8, 23:15
new [3] - 7:17, 8:6, 15:13
newest [1] - 8:14
nice [1] - 25:19
nine [1] - 19:20
North [1] - 2:3
Northern [1] - 26:4
note [2] - 13:24, 14:2
noted [1] - 6:21
nothing [1] - 22:19
number [4] - 20:13, 23:24, 24:1, 25:13
NW [1] - 2:7

### O

obviously [1] - 12:12

occur [1] - 9:22
odds [1] - 21:7
Official [1] - 26:3
officials [2] - 16:22, 21:22
one [15] - 4:23, 5:7, 5:9, 5:13, 5:23, 6:1, 6:23, 9:15, 9:23, 16:6, 21:6, 22:12, 23:24, 23:25, 24:3
open [1] - 3:1
operation [1] - 6:9
opinion [1] - 15:24
opinions [3] - 21:11, 21:13, 22:24
opportunity [4] - 3:17, 3:25, 4:2, 4:5
opposition [1] - 9:9
optimism [1] - 19:16
optimization [1] - 19:17
oral [1] - 3:17
order [6] - 3:13, 9:7, 14:10, 21:3, 23:14, 24:12
organized [1] - 17:24
outer [2] - 4:16, 5:15, 5:24, 13:2

**P**

page [3] - 17:6, 20:14
paper [1] - 23:19
papers [3] - 4:1, 10:14, 10:22
paragraph [2] - 17:5, 17:7
paragraphs [4] - 7:17, 17:4, 17:5, 17:6
parent [1] - 8:3
Paris [1] - 16:16
part [3] - 12:15, 13:11, 17:16
participated [1] - 18:1
particularity [2] - 5:11, 22:15
parties [2] - 23:25, 24:1
partner [1] - 3:22
passed [1] - 19:9
past [1] - 6:1
pension [1] - 16:9
people [2] - 10:10, 12:9
per [3] - 5:3, 5:10, 22:12
perceived [1] - 25:13
percent [3] - 18:18, 19:11, 19:13
performed [1] - 8:25
performing [1] - 17:12
perhaps [3] - 23:23, 23:24, 24:2
period [9] - 8:24, 13:7, 13:11, 13:13, 13:19, 13:21, 13:22, 14:19, 15:7
permissible [1] - 13:2
person [12] - 10:3, 11:9, 11:18, 12:10, 12:12, 12:14, 12:19, 12:21, 14:23, 14:24, 20:21
person's [2] - 10:13, 10:21
personal [1] - 21:21
pertaining [1] - 16:23
Pham [1] - 18:11
PHAM [1] - 18:11
phonetic [1] - 18:12
place [1] - 10:17
placed [2] - 10:10, 19:6
plaintiff [2] - 3:5, 16:10

plaintiffs [11] - 3:7, 4:6, 5:19, 7:4, 10:2, 12:24, 14:12, 17:3, 20:13, 20:20, 25:4
plaintiffs' [4] - 13:3, 17:7, 20:16, 25:2
plan [1] - 23:11
plane's [1] - 19:6
plead [1] - 7:15
pleaded [5] - 4:17, 5:21, 14:23, 16:11, 16:12
pleading [5] - 10:12, 11:4, 11:5, 12:2, 16:18
pleadings [2] - 10:6, 11:22
point [6] - 7:2, 9:15, 15:4, 15:12, 15:19, 21:22
pointed [2] - 7:25, 9:8
points [1] - 15:1
poorly [1] - 23:5
position [6] - 4:7, 4:25, 5:1, 5:7, 21:19
Posner [2] - 9:16, 21:7
post [1] - 10:12
post-pleading [1] - 10:12
postponement [1] - 16:13
predicated [3] - 4:13, 21:25, 22:6
prejudice [2] - 16:18, 17:1
premised [2] - 21:9, 21:10
prepared [3] - 13:12, 13:18, 24:22
presales [1] - 16:8
presence [2] - 4:21, 5:12
present [2] - 5:14, 7:12
presents [2] - 4:2, 4:5
president [2] - 17:15, 18:13
press [1] - 16:6
pretty [6] - 20:16, 24:6, 24:7, 24:11
preview [1] - 23:22
Primis [2] - 3:10, 3:22
PRIMIS [10] - 2:7, 3:10, 3:24, 6:11, 6:14, 6:20, 12:4, 12:7, 14:17, 25:18
printed [1] - 14:10
Private [2] - 16:19, 21:15
problem [1] - 20:4
problematic [1] - 21:16
problems [1] - 16:14
procedure [2] - 12:16, 23:14
procedures [1] - 11:2
proceed [1] - 14:15
proceedings [3] - 3:1, 25:22, 26:1
process [3] - 11:13, 12:2, 13:17
produce [1] - 14:15
product [5] - 8:6, 8:9, 8:12, 8:15
program [2] - 17:10, 18:13
project [1] - 17:14
promise [1] - 11:5
proposed [2] - 23:14, 24:5
prove [1] - 15:20
provide [2] - 6:15, 9:6
provided [1] - 6:23
PSL [1] - 4:17
public [3] - 16:8, 16:15, 20:24
pure [1] - 9:10
pushes [1] - 5:16

put [4] - 10:15, 10:18, 12:13, 23:4

**Q**

qualitative [5] - 6:5, 6:16, 8:21, 21:11, 22:13
quality [2] - 5:5, 5:6
quantity [1] - 5:5
questions [1] - 24:10
quick [1] - 12:17
quite [1] - 21:15

**R**

radar [1] - 24:21
raised [2] - 13:25, 14:21
raising [1] - 14:6
rather [2] - 5:15, 15:23
reactions [1] - 9:23
read [9] - 3:15, 4:1, 6:3, 7:3, 7:9, 10:14, 23:21, 24:9, 24:19
reading [1] - 22:7
realities [1] - 21:4
really [4] - 3:20, 6:16, 10:21, 23:18
reason [3] - 4:5, 11:23, 11:24
reasonable [1] - 20:21
reasons [1] - 4:19
receive [1] - 23:12
received [2] - 7:16, 12:9
receiving [1] - 12:20
reconcile [1] - 4:3
record [1] - 26:1
records [1] - 6:10
recurring [1] - 5:20
reduce [1] - 15:18
reduced [1] - 15:15
Reform [2] - 16:19, 21:15
regard [10] - 3:18, 8:13, 8:23, 9:8, 10:12, 11:2, 11:22, 14:1, 14:4, 14:7
regarding [1] - 18:6
related [1] - 8:1
relates [1] - 13:17
released [1] - 11:6
releases [1] - 16:6
reliable [1] - 6:15
relief [1] - 13:1
relying [1] - 22:2
remaining [1] - 25:14
remarks [1] - 3:17
repeat [1] - 7:21
repeatedly [1] - 21:3
reply [1] - 9:10
reported [3] - 17:15, 18:12, 18:14
Reporter [1] - 26:3
represent [2] - 13:20, 15:13
represented [2] - 13:21, 15:14
represents [1] - 4:8
requested [1] - 13:1
required [1] - 20:4

requires [2] - 5:2, 7:10
resources [1] - 23:3
respect [2] - 17:2, 20:23
respond [1] - 9:9
response [2] - 12:4, 12:13
responsibilities [1] - 17:11
result [2] - 18:24, 23:2
results [6] - 16:13, 16:25, 17:19, 17:25, 18:3, 18:6
retest [1] - 17:20
retesting [3] - 18:24, 19:6, 20:23
Retirement [1] - 3:3
reveal [3] - 20:25, 22:19, 22:20
review [3] - 4:24, 15:9, 17:12
reviewed [1] - 3:16
rework [1] - 20:3
rise [1] - 25:2
risk [1] - 19:7
ROBERT [1] - 2:3
routine [1] - 3:19
RPR [1] - 26:5
rule [5] - 3:21, 5:3, 5:7, 24:8, 24:22
rules [1] - 22:21
ruling [5] - 4:4, 21:24, 22:6, 25:20
rulings [1] - 7:16

**S**

saw [6] - 8:20, 13:13, 13:18, 13:21, 15:17, 23:15
schedule [1] - 24:6
scheduled [1] - 19:6
scienter [2] - 9:18, 16:21
screen [1] - 24:21
se [3] - 5:3, 5:10, 22:12
search [1] - 23:18
Second [1] - 12:16
second [12] - 4:10, 4:23, 9:24, 10:2, 12:15, 15:22, 16:12, 17:2, 20:20, 21:5, 21:20, 21:25
secondhand [1] - 12:20
Securities [2] - 16:19, 21:15
securities [3] - 22:8, 22:9, 23:8
security [1] - 9:18
senior [1] - 17:8
sent [1] - 18:8
serious [1] - 19:22
set [4] - 4:1, 11:21, 12:9, 17:24
Seventh [4] - 4:16, 9:12, 11:12, 21:4
show [1] - 16:16
side [2] - 3:18, 25:14
significance [1] - 15:1
significant [2] - 4:8, 14:20
significantly [1] - 6:22
similar [2] - 8:13, 12:16
single [2] - 4:14, 15:5
situation [1] - 20:23
sole [1] - 14:7
sorry [3] - 19:16, 24:13, 24:22
sort [2] - 22:12

sought [1] - 20:20
source [35] - 4:14, 4:22, 5:7, 5:9, 5:13, 5:15, 6:1, 8:21, 10:1, 10:7, 11:24, 12:8, 12:18, 13:4, 13:6, 13:15, 14:18, 15:3, 15:6, 16:23, 17:8, 17:14, 18:4, 18:10, 18:15, 18:19, 19:1, 19:8, 19:12, 19:18, 19:23, 21:20, 22:10, 22:18, 25:6
source's [5] - 17:11, 17:16, 17:22, 21:17, 22:16
sources [21] - 4:10, 4:15, 4:18, 5:2, 5:22, 6:6, 6:12, 6:17, 6:22, 7:6, 7:11, 8:10, 8:17, 9:2, 9:17, 9:18, 11:25, 15:10, 21:14, 22:11, 23:7
speaking [2] - 8:9, 11:9
special [1] - 22:21
specific [4] - 8:19, 18:6, 20:14, 20:16
specifically [3] - 4:4, 14:16, 20:1
specificity [1] - 9:24
speculative [1] - 20:12
spring [1] - 16:2
St [1] - 2:7
stake [1] - 22:23
stand [1] - 15:18
standard [1] - 11:21
standards [4] - 11:5, 15:9, 16:18, 22:5
Stanton [1] - 18:12
started [2] - 13:7, 13:10
statements [4] - 8:10, 16:15, 16:16, 20:25
States [1] - 8:3
status [2] - 3:3, 24:19
stay [1] - 24:23
steep [1] - 11:16
steeply [1] - 15:4
still [1] - 24:18
straightforward [2] - 8:17, 11:20
Street [1] - 2:3
stress [4] - 16:13, 17:11, 17:18, 25:3
stringers [1] - 19:21
strong [1] - 20:21
strongly [2] - 15:7, 15:8
structural [2] - 16:14, 17:8
structure [1] - 18:17
subject [1] - 15:25
submission [1] - 3:16
submissions [1] - 3:15
submit [1] - 23:11
submitted [2] - 23:12, 23:13
subsequent [1] - 17:20
subsidiary [4] - 6:7, 7:5, 8:1, 8:3
substantial [1] - 22:24
substantiate [1] - 5:16
sufficiency [1] - 22:5
sufficient [5] - 5:25, 7:12, 12:12, 16:20
suggest [2] - 22:13, 24:14
suggested [1] - 5:19
supervisor [1] - 10:16
support [1] - 15:2
supports [1] - 15:8
survival [1] - 4:23
suspicions [1] - 12:8

System [1] - 3:3

**T**

table [1] - 22:4
team [9] - 17:10, 17:16, 18:7, 18:8, 18:11, 19:3, 19:14, 19:25, 20:7
team's [2] - 18:3, 20:8
technical [1] - 17:25
Tellabs [26] - 4:4, 5:14, 5:18, 6:4, 6:6, 6:14, 6:18, 6:21, 7:8, 7:12, 7:22, 7:24, 8:5, 8:13, 9:6, 9:7, 9:13, 10:4, 11:13, 13:14, 21:13, 22:2, 22:25
tension [3] - 4:3, 4:20, 6:4
terms [3] - 6:8, 16:24, 24:25
Terry [1] - 18:11
test [25] - 5:15, 16:13, 16:25, 17:18, 17:20, 17:23, 17:25, 18:7, 18:8, 18:16, 18:20, 18:24, 19:2, 19:5, 19:9, 19:10, 19:15, 19:19, 19:20, 19:23, 20:2, 20:6, 25:3
testing [3] - 13:2, 14:19, 20:23
tests [7] - 4:15, 5:24, 9:1, 18:2, 18:4, 18:5, 18:7
text [1] - 23:10
THE [27] - 3:2, 3:12, 4:25, 5:5, 6:5, 6:13, 6:15, 7:19, 9:15, 9:21, 11:16, 12:3, 12:6, 13:3, 13:9, 13:23, 15:11, 15:22, 16:4, 23:15, 23:18, 24:8, 24:15, 24:17, 25:5, 25:16, 25:21
themselves [2] - 9:2, 15:19
theory [1] - 21:5
thinking [1] - 9:23
third [2] - 7:17, 24:2
Thomas [1] - 3:6
three [1] - 23:24
Thursday [2] - 23:11, 23:14
tied [1] - 8:3
today [1] - 24:10
transcript [1] - 26:1
transpired [1] - 17:20
trench [1] - 10:6
trigger [1] - 16:8
try [3] - 24:18, 24:19
trying [1] - 24:8
turn [1] - 11:12
two [20] - 3:15, 4:19, 4:20, 7:2, 7:16, 9:15, 9:22, 16:4, 16:5, 16:21, 18:9, 20:22, 21:6, 21:11, 21:23, 23:24, 25:8, 25:14

**U**

ultimate [2] - 19:10, 20:2
unable [1] - 20:9
uncorroborated [2] - 5:13, 15:6
under [5] - 5:10, 16:18, 22:5, 23:7, 24:20
undercutting [1] - 22:3
underscores [1] - 15:1

undisclosed [1] - 9:1
unfortunately [1] - 23:20
unidentified [2] - 5:23, 9:17
unintending [1] - 21:1
unique [1] - 4:2
United [1] - 8:3
unlike [2] - 13:14, 20:13
unnamed [1] - 9:17
unnoted [1] - 14:3
up [5] - 3:12, 8:6, 23:17, 24:11, 24:19

## V

vague [2] - 16:23, 20:12
various [3] - 8:10, 8:25, 10:19
versus [1] - 20:17
via [1] - 8:20
vice [2] - 17:15, 18:13
view [2] - 5:3, 14:20
voluntarily [1] - 8:9

## W

walks [1] - 15:4
warfare [1] - 10:6
warranted [1] - 4:9
Washington [1] - 2:8
ways [2] - 14:5, 22:18
week [1] - 23:20
weigh [1] - 4:12
weight [2] - 19:16
whereas [1] - 6:24
whole [2] - 21:17, 22:11
wing [33] - 17:9, 17:12, 17:14, 17:15,
17:19, 17:23, 17:25, 18:2, 18:3, 18:5,
18:6, 18:7, 18:8, 18:10, 18:17, 18:20,
18:23, 18:25, 19:2, 19:3, 19:9, 19:12,
19:13, 19:15, 19:19, 19:21, 19:23,
19:25, 20:2, 20:3, 20:6, 20:8, 25:3
witness [4] - 13:18, 14:7, 15:14, 15:21
witness' [1] - 15:19
witnesses [4] - 13:16, 14:4, 15:5,
25:14
word [2] - 16:24, 20:15
words [1] - 10:15
wrinkle [1] - 15:7