

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CITY OF LIVONIA EMPLOYEES' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE BOEING COMPANY, W. JAMES MCNERNEY, JR., and SCOTT E. CARSON,<br><br>Defendants. | No. 09 C 7143<br><br>Chief Judge Rubén Castillo |

## MEMORANDUM OPINION AND ORDER

City of Livonia Employees' Retirement System ("Plaintiffs") brought this putative class action securities fraud case against The Boeing Company ("Boeing"), its chairman, president, and chief executive officer W. James McNerney, Jr., and its former executive vice president, president, and chief executive officer of the commercial airplanes segment Scott E. Carson (collectively, "Defendants"), under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (R. 1, Compl.) Judge Conlon dismissed Plaintiffs' second amended complaint with prejudice and entered judgment on March 7, 2011. (R. 200, Min. Order; R. 201, Mem. Op. & Order; R. 202, Judgment.) Plaintiffs appealed the dismissal, and on May 6, 2013, the Seventh Circuit affirmed the dismissal of the suit with prejudice, but vacated and remanded the judgment for consideration of whether to impose sanctions on Plaintiffs' attorneys, pursuant to Federal Rule of Civil Procedure 11 and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78u-4(c)(1), (2).

That question is presently before this Court. For the reasons stated below, the Court imposes sanctions on Plaintiffs' attorneys.

## BACKGROUND

The Court assumes familiarity with the facts of this case as set forth in Judge Conlon's opinions dismissing Plaintiffs' first amended complaint and second amended complaint. *See City of Livonia Employees' Ret. Sys. v. The Boeing Co.* ("*City of Livonia I*"), No. 09 C 7143, 2010 WL 2169491 (N.D. Ill. May 26, 2010); *City of Livonia Employees' Ret. Sys. v. The Boeing Co.* ("*City of Livonia II*"), No. 09 C 7143, 2011 WL 824604 (N.D. Ill. March 7, 2011). The facts are repeated here only as they pertain to the Court's decision on whether to impose sanctions. On November 13, 2009, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), as counsel for Plaintiffs, filed its original securities fraud complaint against Defendants. (R. 1, Compl.) On February 16, 2010, Ramsey Stewart, an investigator retained by Robbins Geller, interviewed Bishnujee Singh, Plaintiffs' one and only confidential witness, over the telephone. (R. 264, Pls.' Sealed Resp. at 5.) Singh told Mr. Stewart that he worked for Boeing from 2004 through mid-January 2010 and that he reported to vice president Larry Hall. (R. 152, Ramsey Stewart Decl. ¶ 10.) Singh said that he worked on the 787-8 and 787-9 test planes and had knowledge of the stress testing on the 787 wing. (*Id.*) On February 19, 2010, investigator Elizabeth Stewart, also retained by Robbins Geller, interviewed Singh at his home for two hours. (R. 264, Pls.' Sealed Resp. at 5.) Two days later, Ms. Stewart documented her interview with Singh in an e-mail-memorandum to Plaintiffs' lead attorney, Thomas Egler. (R. 153, Ex. A, Feb. 21, 2010 E-Mail at 19-22.) Ms. Stewart reported that Singh told her that he worked for Boeing in 2009 as a Chief Engineer for the Mid-Body Fuselage/Wing Integration Team on the 787 Program. (*Id.* at 19.) Ms. Stewart noted in her e-mail-memorandum that her follow-up research on the 787 wing

2

management team that Singh had identified revealed that Singh's information was not reliable. (*Id.*) On February 22, 2010, the day after Ms. Stewart sent her e-mail-memorandum to Egler, Robbins Geller filed an amended complaint adding vague references to internal e-mails among Boeing employees and the individual defendants, suggesting that the individual defendants knew about the poor wing stress test results. (R. 23, First Am. Compl. ¶ 75.)

On April 13, 2010, via telephone, Singh told Ms. Stewart that he no longer wished to cooperate with Plaintiffs' investigation because he was currently working on a project involving Boeing. (R. 264, Pls.' Sealed Resp. at 6.) Ms. Stewart claims that despite ceasing his cooperation, Singh did not deny the information he previously provided. (*Id.*)

On May 26, 2010, Judge Conlon granted Defendants' motion to dismiss Plaintiffs' first amended complaint and dismissed the complaint without prejudice for failure to adequately plead scienter. *City of Livonia I*, 2010 WL 2169491, at *7. Judge Conlon found that the amended complaint failed to plead any particularized facts about the confidential sources and therefore held that Plaintiffs' generalized reliance on confidential source information was insufficient to establish Defendants' scienter. *Id.* at *5-*7.

On June 22, 2010, Robbins Geller filed Plaintiffs' second amended complaint, which added paragraphs 139-142, pleading details about one confidential source (who turned out to be Singh) and the basis for his knowledge. (R. 63, Second Am. Compl. ¶¶ 139-42.) Ms. Stewart's e-mail-memorandum supplied the basis for the new allegations in the second amended complaint. (R. 264, Pls.' Sealed Resp. at 5.) On August 10, 2010, Judge Conlon denied Defendants' motion to dismiss the second amended complaint, finding that the added details in the complaint satisfied the pleading requirements of the PSLRA. (R. 73, Min. Order.) Defendants filed a motion for certification of an interlocutory appeal, (R. 75, Defs.' Mot.

Interlocutory Appeal), and a hearing on that motion was held on August 30, 2010, (R. 211, Tr. Aug. 30, 2010 Hr'g). At the hearing, Plaintiffs' counsel, Egler, defended the confidential source and the source's personal knowledge of the documents that pointed to Defendants' scienter. (R. 211 Tr. Aug. 30, 2010 Hr'g at 10:15-11:15, 13:06-22.) Judge Conlon "expressly relied on the new allegations in paragraphs 139-142 concerning the confidential source's insider position at Boeing and representations by plaintiffs' counsel that the confidential source had firsthand knowledge about the 787's test results in documents circulated to top executives" in denying Defendants' motion for certification of an interlocutory appeal. *See City of Livonia II*, 2011 WL 824604, at *2.

After the August 30, 2010 hearing, Plaintiffs disclosed Singh as their confidential source to Defendants. (R. 263, Defs.' Mem. at 10.) Defendants conducted a preliminary investigation and discovered that Singh had never been a Boeing employee and instead had been employed by an outside contractor to perform low-level engineering work on a different airplane months after the events at issue in this case. (*Id.* at 10-11.) Singh had never worked on any wing project tied to the lawsuit, and he had no access to any test files or e-mails sent to Defendants. (*Id.* at 11.) After discovering this information, on September 24, 2010, Defendants filed a renewed motion to dismiss the second amended complaint with prejudice, arguing that Plaintiffs' counsel had committed a fraud on the court. (R. 90, Defs.' Mot. Dismiss for Fraud.) At a hearing on October 14, 2010, Judge Conlon, relying on the investigator's notes to conclude that there was a good faith basis for the allegations in paragraphs 139-142, denied Defendants' renewed motion to dismiss. (R. 107, Min. Entry; R. 141, Tr. Oct. 14, 2010 H'rg.)

After the October 14, 2010 hearing, Defendants served Singh with a subpoena for documents. (R. 263, Defs.' Mem. at 12.) After meeting with defense counsel, Singh signed a

4

sworn declaration on November 2, 2010, where he repudiated each of the allegations attributed to him in the second amended complaint. (*Id.* at 13; R. 160, Ex. 2, Singh Decl. at 23.) Singh was deposed two weeks later, where he again denied Plaintiffs' allegations about his position at Boeing, his personal knowledge of the wing and test files, and his knowledge of any communications to the individual defendants regarding the tests. (R. 263, Defs.' Mem. at 13-14; R. 142, Singh Dep.) Singh met Plaintiffs' counsel for the first time at his deposition and saw the second amended complaint for the first time when defense counsel gave him a copy six months after the complaint was filed. (R. 263, Defs.' Mem. at 13.)

On December 12, 2010, Defendants moved for reconsideration of the court's orders denying their motions to dismiss. (R. 157, Defs.' Mot. Reconsideration.) On March 7, 2011, Judge Conlon granted Defendants' motion and dismissed the second amended complaint with prejudice. (R. 200, Min. Entry.) In her Memorandum Opinion and Order, Judge Conlon stated that her two prior orders denying dismissal "relied on false information concerning Singh's position and his personal knowledge," which was "manifest factual error." *City of Livonia II*, 2011 WL 824604, at *5. Judge Conlon noted that "[w]ithout verifying the facts, plaintiffs' counsel represented to the court that the confidential source was a former Boeing senior structural analyst and chief engineer who worked on the 787 team," and that Plaintiffs' counsel "led the court to believe that the confidential source had direct access to and firsthand knowledge about the 787 test files and the distribution of the information to defendants." *Id.* at *3. At the time of her earlier rulings, Judge Conlon was unaware of these factual inaccuracies, was unaware "that plaintiffs' counsel never met with Singh before adding the confidential source allegations to the second amended complaint," and was unaware that "counsel apparently never verified the hearsay reports of their investigators concerning Singh's position at Boeing or the basis of his

5

purported personal knowledge." *Id.* at *2. Judge Conlon stated that "[i]f these facts were disclosed while the dismissal motions were pending, the court would have not have concluded that the confidential source allegations were reliable, much less cogent and compelling." *Id.* at *4. Judge Conlon dismissed Plaintiffs' argument that "Singh told their investigators the truth, but he is lying now for ulterior motives," concluding that it did not matter because it was clear "that the informational basis for paragraphs 139-42 is at best unreliable and at worst fraudulent, whether it is Singh or plaintiffs' investigators who are lying." *Id.*

Importantly, Judge Conlon noted that "this unseemly conflict between plaintiffs' confidential source and plaintiffs' investigators could have been avoided by reasonable inquiry on the part of plaintiffs' counsel before filing the second amended complaint and . . . making flawed representations directly to the court." *Id.* Judge Conlon emphasized that Plaintiffs' counsel did not meet Singh until his deposition six months after filing the second amended complaint, and that counsel did not appear to have "conducted a reasonable investigation concerning the credibility and reliability of a purported key witness attributed with making the serious allegations in paragraphs 139-142." *Id.* Judge Conlon noted that Plaintiffs' counsel "relied on investigators' unverified interview reports, even though one report noted Singh's information regarding Boeing's Structural Design reporting hierarchy was unreliable," which "should have been a red flag." *Id.*

On April 4, 2011, Plaintiffs sought relief from the March 7, 2011 judgment. (R. 206, Mot. Relief.) Defendants opposed the motion and sought sanctions under the PSLRA based on Judge Conlon's findings that Plaintiffs' counsel made misrepresentations to the court and failed to reasonably investigate their confidential source allegations. (R. 263, Defs.' Mem. at 16.) The case was reassigned to this Court on August 24, 2011. (R. 228, Executive Comm. Order.) On

March 16, 2012, the Court denied Plaintiffs' motion for relief, but declined to address Defendants' request for sanctions because they did not comply with the procedural requirements of Rule 11. (R. 232, Min. Entry; R. 233, Order at 5.) Plaintiffs subsequently appealed the dismissal of its second amended complaint and Defendants cross-appealed, seeking a mandatory sanctions determination under the PSLRA. (R. 234, Notice Appeal; R. 239 Notice Cross-Appeal; R. 263, Defs.' Mem at 17.)

On May 6, 2013, the Seventh Circuit affirmed the dismissal of the suit with prejudice. *City of Livonia Employees' Ret. Sys. v. The Boeing Co.* ("*City of Livonia III*"), 711 F.3d 754, 762 (7th Cir. 2013). The Seventh Circuit remanded the case for consideration, pursuant to the PSLRA, of whether to impose Rule 11 sanctions on Plaintiffs' counsel. *Id.* The Seventh Circuit noted that Judge Conlon's "harsh criticism" of Plaintiffs' counsel "indicated agreement" with Defendants' belief that Plaintiffs' counsel had violated Rule 11 and held that Judge Conlon should have determined whether to impose sanctions when she dismissed the second amended complaint with prejudice. *Id.* at 761-62. Further, the Seventh Circuit criticized Plaintiffs' counsel for their "ostrich tactics" in failing to inquire about their confidential source "for fear that the inquiry might reveal stronger evidence of *their* scienter regarding the authenticity of the confidential source than the flimsy evidence of scienter they were able to marshal against Boeing." *Id.* at 762. The Seventh Circuit explained how Plaintiffs' counsel had made "confident assurances in their complaints about a confidential source—their only barrier to dismissal of their suit—even though none of the lawyers had spoken to the source and their investigator had acknowledged that she couldn't verify what (according to her) he had told her." *Id.* The court emphasized that the investigator's "qualms" should have been a "red flag" to Plaintiffs' counsel. *Id.* Finally, the Seventh Circuit pointed to other cases where Robbins Geller had "engaged in

7

similar misconduct," *id.* (citing *Belmont Holdings Corp. v. SunTrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1231-32 (N.D. Ga. 2012); *Campo v. Sears Holdings Corp.*, 371 Fed. App'x. 212, 216-17 (2d Cir. 2010); *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1037-39 (N.D. Cal. 2012)), and noted that "[r]ecidivism is relevant in assessing sanctions," *id.* (citing *Reed v. Great Lakes Cos.*, 330 F.3d 931, 936 (7th Cir. 2003)). The Seventh Circuit remanded the issue to the district court, explaining that "the district court is in a better position than the court of appeals to calculate the dollar amount of the sanctions." *Id.*

The case was remanded to this Court, and Defendants filed a memorandum in support of the imposition of sanctions on September 27, 2013. (R. 263, Defs.' Mem.) Plaintiffs filed their sealed response on October 28, 2013, (R. 264, Pls.' Sealed Resp.), Defendants filed their reply on November 22, 2013, (R. 270, Defs.' Reply), and Plaintiffs filed their sur-reply on December 16, 2013, (R. 271, Pls.' Sur-reply). Additionally, Defendants filed a notice of supplemental authority on June 17, 2014, (R. 272, Suppl. Authority), and Plaintiffs responded on June 18, 2013, (R. 275-1, Ex. A, Pls.' Resp. Suppl. Authority). Presently before the Court is the issue of whether to impose sanctions on Plaintiffs' counsel.

## LEGAL STANDARDS

The PSLRA requires a court, "upon final adjudication of the action," to make "specific findings regarding the compliance by each party and each attorney representing any party with each requirement of Rule 11(b) of the Federal Rules of Civil Procedure as to any complaint, responsive pleading, or dispositive motion." 15 U.S.C. § 78u-4(c)(1); *see also City of Livonia III*, 711 F.3d at 761 (the district court has a "duty" to make the findings required by § 78u-4(c)(1) whether or not the prevailing party asks for sanctions). If the court concludes that any party or attorney has violated any requirement of Rule 11(b), the court must impose sanctions. 15 U.S.C.

§ 78u-4(c)(2). The presumed sanction for the "substantial failure of any complaint" to comply with Rule 11(b) is "an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." *Id.* at § 78u-4(c)(3)(A)(ii). The party opposing sanctions may rebut this presumption only upon proof that: (1) "the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed;" or (2) "the violation of Rule 11(b) of the Federal Rules of Civil Procedure was de minimis." *Id.* at § 78u-4(c)(3)(B). If the opposing party successfully rebuts the presumption, then the court "shall award the sanctions that the court deems appropriate pursuant to Rule 11[.]" *Id.* at § 78u-4(c)(3)(C).

Rule 11(b) provides that an attorney who "present[s]" a pleading to the court, "whether by signing, filing, submitting, or later advocating it," certifies that:

> to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11(b)(1)-(4); *see also Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) ("[A] court may impose sanctions on a party for making arguments or filing claims that are frivolous, legally

unreasonable, without factual foundation, or asserted for an improper purpose."). Rule 11 imposes on attorneys an "an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing, and . . . the applicable standard is one of reasonableness under the circumstances." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991). "The focus in Rule 11 sanctions is on what counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery." *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1014 (7th Cir. 2004) (citing *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 226 (7th Cir. 1990)). Thus, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc'y v. Office and Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)); *see also U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) ("Rule 11 establishes an objective test, and as [the Seventh Circuit] [has] repeatedly observed, an 'empty head but a pure heart is no defense.'" (quoting *Chambers v. Am. Trans Air, Inc.*, 17 F.3d 998, 1006 (7th Cir. 1994))). Additionally, the Court must be mindful that "[w]hile the Rule 11 sanction serves an important purpose, it is a tool that must be used with utmost care and caution" because of the devastating impact it can have on a lawyer's reputation. *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993) (quoting *FDIC v. Tekfen Constr. & Installation Co.*, 847 F.2d 440, 444 (7th Cir. 1988)).

## ANALYSIS

The record before the Court regarding Plaintiffs' counsel's conduct throughout this litigation is troubling. First, counsel filed the original complaint before interviewing their one and only confidential source, who was critical to their case. "Rule 11 imposes an affirmative

duty of reasonable investigation on an attorney signing any paper." *Beverly Gravel*, 908 F.2d at 225 (quoting *Fred A. Smith Lumber Co. v. Edidin*, 845 F. 2d 750, 751 (7th Cir. 1988)). Although what constitutes a "reasonable pre-filing investigation depends on the circumstances of each case," *id.*, the PSLRA requires counsel to conduct a more diligent pre-filing investigation in cases involving securities fraud than in other contexts. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 711 (7th Cir. 2008) ("[b]ecause the [PSLRA] requires detailed fact pleading of falsity, materiality, and scienter, the plaintiff's lawyers in securities-fraud litigation have to conduct elaborate pre-complaint investigations"); *Auto. Indus. Pension Trust Fund v. Textron Inc.*, 682 F.3d 34, 40 (1st Cir. 2012) (the PSLRA "leaves a plaintiff's counsel with a greater than usual burden of investigation before filing a securities fraud complaint"). The reason for these requirements includes the fact that the mere filing of a broad, class action securities complaint is a market relevant event for any reputable company. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("Private securities fraud actions, . . . if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law.").

Plaintiffs' counsel argues that their pre-filing investigation was sufficient because "[i]t is clear that publicly available information is the traditional source of investigative material, and confidential witnesses are not required to state a claim" in securities fraud cases. (R. 264, Pls.' Sealed Resp. at 28.) This kind of "shoot first, aim later" practice, whereby Robbins Geller attorneys wait until after the complaint is filed to "conduct an investigation that [they] should have conducted before filing [the] lawsuit," has already been criticized in this District. *Boca Raton Firefighters' & Police Pension Fund v. Devry Inc.*, No. 10 C 7031, 2013 WL 1286700, at *13 (N.D. Ill. Mar. 27, 2013) (finding that Robbins Geller "filed [the] lawsuit before conducting

11

a proper presuit investigation"). The allegations Plaintiffs' counsel attributed to their confidential source were critical to Plaintiffs' claims, as evidenced by the fact that the discovery of his unreliability proved fatal to their case. *See City of Livonia III*, 711 F.3d at 761. Therefore, the source should have been interviewed before the complaint was filed. Plaintiffs' counsel's failure to interview Singh before filing their securities fraud complaint constitutes a failure to conduct a reasonable pre-filing investigation as required by the PSLRA.

Plaintiffs' counsel filed the amended complaint and the second amended complaint after their investigators interviewed Singh. The second amended complaint added specific allegations regarding Singh's position at Boeing and the basis for his personal knowledge of the wing tests at issue and the communications to the individual defendants regarding the tests—information Singh allegedly told the investigator. (R. 63, Second Am. Compl. ¶¶ 139-42.) Plaintiffs' counsel never interviewed Singh themselves, however, and never attempted to verify any of the information he allegedly provided the investigator. Plaintiffs' counsel never even made contact with Singh until his deposition approximately six months after the filing of the second amended complaint. Plaintiffs' counsel argues that "lawyers are legally permitted to rely on investigators," and that they "did not violate Rule 11 by relying on an experienced investigator without participating in the interview, showing the witness the complaint, or obtaining a sworn statement from Singh." (R. 264, Pls.' Sealed Resp. at 21-24.) "Although an attorney is certainly entitled to rely upon information obtained from others, including investigators . . . , there must be reasonable cause to trust the accuracy of that information, and a lawyer may not simply put his head in the sand and forgo any attempt to verify information." *Paniagua v. Max 18, Inc.*, No. 11 C 03320, 2013 WL 5907893, at *8 (N.D. Ill. Nov. 4, 2013) (citing *City of Livonia III*, 711 F.3d at 762; *U.S. Bank Nat'l Ass'n*, 406 F.3d at 470); *see also Sec. Farms v. Int'l Bhd. of Teamsters,*

*Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1016-17 (9th Cir. 1997) ("Counsel defended its actions by attempting to shift blame to [the investigator] and by pleading ignorance," and the Ninth Circuit found "that by blindly relying on [the investigator] under these circumstances, counsel violated its duty to conduct a reasonable inquiry to determine that the declarations were 'well grounded in fact.'"). Here, Plaintiffs' counsel did not have reasonable cause to trust the accuracy of the information obtained by the investigator because the investigator herself noted in her report that some of the information Singh provided was unreliable. As both Judge Conlon and the Seventh Circuit pointed out, the investigator's note regarding the inconsistencies with Singh's information regarding his team's reporting hierarchy should have been a "red flag" to Plaintiffs' counsel. *See City of Livonia III*, 711 F.3d at 762; *City of Livonia II*, 2011 WL 824604, at *4. Knowing that some of the information Singh told the investigator was unreliable, counsel should have attempted to corroborate the information instead of blindly relying on the investigator's report.

Plaintiffs' counsel argues that "[w]itnesses change their factual accounts even after testifying under oath in a courtroom, and even when they are interviewed by lawyers," and they contend that because "Defendants have not shown that Singh would have said anything different if those steps were taken," it was reasonable for counsel to rely on their investigator. (R. 264, Pls.' Sealed Resp. at 23.) In further support of their argument that their investigator correctly reported what Singh told her, Plaintiffs' counsel points out that Singh describes himself as a Chief Engineer at Boeing on the 787-8 on his online resume. (*Id.*) Yet, as Judge Conlon explained, whether Singh lied to the investigator or lied later when he recanted is irrelevant. Appropriate pre-filing investigation could have confirmed Singh's reliability; instead, Plaintiffs' counsel knew that the information Singh provided the investigator might have been unreliable

and nevertheless included that unverified information in the second amended complaint and persistently defended the truth of that information.

Additionally, before Plaintiffs' counsel filed the second amended complaint, Singh told the investigator that he no longer wished to cooperate with Plaintiffs. Plaintiffs' counsel was aware that Singh would no longer cooperate as a witness and nevertheless proceeded to file the second amended complaint, which included key allegations attributed to Singh. Counsel then proceeded to defend those allegations in their filings to the court and during court appearances. For instance, during the August 30, 2010 hearing, Plaintiffs' counsel represented to the court that their confidential source worked at Boeing and was "given access to files that were prepared during the class period, and those are the documents that he saw," and counsel assured the court that the source was credible. (R. 211 Tr. Aug. 30, 2010 Hr'g, at 13:12-13; 15:12-21.) Additionally, in their response to Defendants' motion to dismiss based on fraudulent misrepresentations, Plaintiffs' counsel "inform[ed] the Court that they [stood] by all the allegations attributed to the confidential source," (R. 95, Pls.' Preliminary Resp. at 1), and that "[a]ll the facts alleged in the SAC were made with a good faith basis with the benefit of prior investigation, research and interviews performed by plaintiffs' counsel and their investigator," (R. 98, Pls.' Mem. at 3). In regards to the statements made at the August 30, 2010 hearing, Plaintiffs' counsel argues that "oral statements cannot form the basis for Rule 11 violations." (R. 264, Pls.' Sealed Resp. at 29.) The advisory committee's notes to the 1993 Amendments of Rule 11(b) state that oral statements can form the basis for Rule 11 sanctions, however, when those statements "reaffirm[] to the court and advocat[e] positions contained in" pleadings submitted to the court after counsel learns that such positions "cease to have any merit." Fed. R. Civ. P. 11 Adv. Comm. Notes (1993). Here, Plaintiffs' counsel consistently defended the

14

allegations they attributed to Singh and Singh's credibility in their pleadings and orally defended the allegations at a hearing in front of Judge Conlon, despite being aware that the allegations may not have been true and that Singh no longer wished to cooperate. The Court is thus permitted to consider counsel's oral statements to determine whether counsel violated Rule 11(b).

Plaintiffs' counsel knew that the information Singh provided the investigator was unverified and potentially unreliable and that Singh refused to cooperate further, and yet repeatedly made assurances to the court as to the truth of the allegations. The information turned out to be blatantly false, and if counsel had made any attempt to verify the information, they would have easily discovered this. Instead, they blindly defended the allegations their investigator attributed to Singh and made fundamental misrepresentations to the court. Counsel failed to verify the allegations so as to remain ignorant of the truth, and this conduct is reckless and unjustified. The Court agrees with the Seventh Circuit's characterization of Plaintiffs' counsel's conduct as "ostrich tactics"—counsel put their heads in the sand to avoid discovering the truth. Accordingly, the Court finds that Plaintiffs' counsel violated Rule 11(b) by filing its amended complaint and second amended complaint without conducting a reasonable pre-filing investigation and by asserting and defending factual contentions that lacked evidentiary support.

Finally, the Court notes that this is not the first instance where Robbins Geller has engaged in similar misconduct, and as the Seventh Circuit explained, "[r]ecidivism is relevant in assessing sanctions." *City of Livonia III*, 711 F.3d at 762 (citing *Reed*, 330 F.3d at 936). The district court in *Boca Raton Firefighters' and Police Pension Fund v. DeVry Inc.* found that Robbins Geller had violated Rule 11(b) because it filed the original complaint and the first amended complaint "without conducting a reasonable pre-suit inquiry, its securities-fraud claim

was not warranted by existing law, and its factual contentions lacked evidentiary support." No. 10 C 7031, 2014 WL 1847833, at *5 (N.D. Ill. May 8, 2014). Robbins Geller did not rely on investigators in *Boca Raton* and thus attempts to distinguish *Boca Raton* from the present case by claiming that its use of investigators here makes its investigation reasonable under the circumstances. (R. 275-1, Ex. A, Pls.' Resp. to Supplemental Authority.) As explained above, however, Robbins Geller's blind reliance on investigators in this case was not reasonable under the circumstances. In *Belmont Holdings*, a district court was faced with similar facts to the facts in this case—Robbins Geller, relying exclusively on information gained by its investigators, filed an amended complaint including allegations based on a confidential witness and falsely represented to the court that the confidential witness had personal knowledge to prove the defendants' scienter. 896 F. Supp. 2d at 1231-32. The court, calling it "a close, difficult issue," ultimately decided not to impose Rule 11 sanctions against Robbins Geller, "albeit reluctantly." *Id.* at 1232. The court reluctantly found that under the circumstances, Robbins Geller reasonably relied on its investigator, but it chastised the firm for its "careless" conduct and for remaining "under the cover of plausible deniability" by refusing to engage in any further inquiry. *Id.* at 1232-33. Additionally, in two other recent cases, Robbins Geller filed complaints including allegations based on confidential witnesses who they alleged had personal knowledge to establish the defendants' scienter when in fact the witnesses did not. *See City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F. Supp. 2d 811, 834 n.9 (W.D. Mich. 2012) ("none of the [confidential witnesses] had contact with Defendants or was in a position to have access to financial forecasts" and thus were not in a position to "testify as to what Defendants knew"); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 594 (S.D.N.Y. 2011).

This Court is always reluctant to sanction a member of the bar. In fact, in twenty years, the Court has imposed Rule 11 sanctions in only a handful of cases. *See, e.g.*, *Tomblin v. Motter*, No. 95 C 86, 1996 WL 99897 (N.D. Ill. Feb. 29, 1996); *El-Dada v. Oil Mart Corp.*, No. 94 C 3829, 1995 WL 562125 (N.D. Ill. Sept. 20, 1995). It gives the Court no pleasure to issue sanctions; nevertheless, the Court cannot ignore Plaintiffs' counsel's repeated misconduct throughout this litigation. Counsel failed to conduct a proper investigation before filing the original complaint; counsel blindly relied on their investigators and failed to verify the truth of the confidential source's allegations before including them in the second amended complaint; and counsel made repeated misrepresentations to the court as to the strength and truth of the confidential source's allegations. After taking all of Plaintiffs' counsel's actions into consideration, along with Robbins Geller's history of similar misconduct, the Court reluctantly finds that Rule 11 sanctions are appropriate.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' counsel violated Rule 11(b). Thus, under the PSLRA, Defendants are entitled to their reasonable attorneys' fees and other expenses incurred in defending this lawsuit. 15 U.S.C. § 78u-4(c)(3)(A)(ii). In light of this opinion, the parties are strongly encouraged to mediate and settle the remaining issue of the amount of appropriate attorneys' fees and expenses. If the parties cannot achieve this goal, the Court instructs Defendants to submit an attorneys' fee and costs petition, with billing records, in accordance with our local rules on or before October 14, 2014.

ENTERED: _____
**Chief Judge Rubén Castillo**
**United States District Court**

**Dated: August 21, 2014**